# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as Trustee for the Benefit of
Holders of J.P. Morgan Chase Commercial
Mortgage Securities Trust 2019-MFP, Commercial
Mortgage Pass-Through Certificates, Series 2019-
MFP,

        Plaintiff,

        v.

BARRINGTON PARK OWNER LLC,
CHATEAU GLEN OAKS OWNER LLC,
MANCHESTER PARK OWNER LLC, VISTA
PLACE OWNER LLC, ATWOOD OWNER LLC,
COLONIAL FOREST OWNER LLC, DAVIS
GARDENS OWNER LLC, NORTHWOOD
OWNER LLC, UNIVERSITY COURTYARD
OWNER LLC, KNOXVILLE POINTE OWNER
LLC, ABINGTON OWNER LLC, CHESWICK
VILLAGE OWNER LLC, COLFAX OWNER
LLC, EDISON POINTE OWNER LLC,
HICKORY RIDGE PROPERTY OWNER LLC,
WINCHESTER VILLAGE OWNER LLC,
WINCHESTER WOODS OWNER LLC,
CHATEAU ROYALE OWNER LLC, EAST
GATE OWNER LLC, HALLMARK GARDENS
OWNER LLC, NORTH GATE OWNER LLC,
PEBBLE CREEK OWNER LLC, SOUTHWIND
OWNER LLC, ADVANTAGES OWNER LLC,
TIMBER RIDGE OWNER LLC, FOX CHASE
APARTMENTS 1 LLC, ROCO – HIGH POINT
IN THE PARK LLC, ROCO–HILLIARD LLC,
QUAIL CREEK INVESTMENTS LLC,
STEEPLECHASE ADVISERS II LLC, LAKES
AT RIDGEWAY OWNER LLC, MORIAH
OWNER LLC, STONEGATE OWNER LLC,
ARLINGTON OWNER LLC, FOREST VIEW
OWNER LLC, RIVERSIDE RANCH OWNER
LLC, SHADOW CREEK OWNER LLC, and
UNIVERSITY HILL OWNER LLC, each a
Delaware limited liability company, and
CALEB'S CREEK HOLDINGS LLC,
GALLOWAY APARTMENTS LLC,
TROTWOOD HOLDINGS LLC, ROCO–
LOGANBERRY LLC, and ROCO–PARKSIDE
LLC, each an Ohio limited liability company,

        Defendants.

Case No. _____

**<u>COMPLAINT</u>**

Plaintiff Wells Fargo Bank, National Association, as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2019-MFP, Commercial Mortgage Pass-Through Certificates, Series 2019-MFP ("<u>Plaintiff</u>"), for its complaint against each of the above-captioned defendants (collectively, and as further identified in Paragraphs 8 through 50 below, "<u>Defendants</u>") alleges as follows:

**Introduction**

1.      Each of the Defendants is a borrower under a defaulted $481 million loan (as more fully described herein, the "<u>Loan</u>") owed to Plaintiff.

2.      The Loan was originally secured by real property owned the respective Defendants located in Alabama, Arkansas, Florida, Mississippi, Louisiana, Ohio, Tennessee, and Texas, as more particularly described in **<u>Schedule 1</u>** (each a "<u>Collateral Property</u>" and collectively, the "<u>Collateral Properties</u>").

3.      Upon information and belief, each of the Defendants listed **<u>in Part A of Schedule 2</u>** holds legal title to its respective Collateral Property (the "<u>Remaining Collateral Properties</u>", and each a "<u>Remaining Collateral Property</u>"). As described more fully herein, the Defendants have sold certain Collateral Properties identified on **<u>Part B of Schedule 2</u>** (the "<u>Released Collateral Properties</u>"), which have been released as security for the Loan.

4.      The Loan has been in default since at least July 2022. In that time, the Defendants have failed to cure the original defaults, triggered additional defaults, and simply refuse to repay the Loan in full.  More acutely, the Defendants have failed to maintain the Collateral Properties as required under the relevant Loan Documents (as defined and more fully described below) and as

reasonably needed to protect the health and safety of their tenants and the general public. Beyond this immediate physical danger, Defendants' failure to maintain the Collateral Properties poses an imminent threat of waste, undermining the value of the Collateral Properties.

### Nature of the Relief Sought

5.    By this complaint, Plaintiff seeks statutory relief and specific performance of the provisions of the Loan Documents entitling Plaintiff to, among other relief, (i) the appointment of a receiver to, amongst other things, take possession, manage, conserve, market, sell, and collect receipts, rents, and income due on each Remaining Collateral Property; (ii) an order directing the Defendants to fund and replenish the Forbearance Reserve Funds (as defined herein) in accordance with the terms of the Forbearance Agreement, and (iii) an accounting from the Defendants with respect to the Collateral Properties and the Defendants' obligations owed to Plaintiff under the Loan and the Loan Documents.

6.    Plaintiff is also entitled to specific performance of the Loan Documents in the form of an injunction (a) prohibiting the Defendants, and their respective agents, partners, servants, employees, and all persons acting under, in concert with, or on behalf of any of them, from and in any manner, directly or indirectly, demanding, collecting, discounting, receiving, or in any way diverting any receipts, rents, income, and profits from the Remaining Collateral Properties and prohibiting them from entering into any new leases or lease extensions; (b) ordering the Defendants to relinquish possession of the Remaining Collateral Properties and the receipts, rents, income, and profits therefrom to the receiver; (c) ordering the Defendants to turn over to the receiver all personal property, fixtures, goods, documents, books, records, papers, and accounts of the Defendants; and (d) enjoining the Defendants from interfering with the receiver.

**Parties**

7.      Plaintiff is a national banking association, with a principal office located in the State of South Dakota.

8.      Defendant Barrington Park Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

9.      Defendant Chateau Glen Oaks Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

10.     Defendant Manchester Park Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

11.     Defendant Vista Place Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

12.     Defendant Atwood Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

13.     Defendant Colonial Forest Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

14.     Defendant Davis Gardens Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

15.     Defendant Northwood Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

16.     Defendant University Courtyard Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

17.     Defendant Knoxville Pointe Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

18.     Defendant Abington Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

19.     Defendant Cheswick Village Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

20.     Defendant Colfax Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

21.     Defendant Edison Pointe Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

22.     Defendant Hickory Ridge Property Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

23.     Defendant Winchester Village Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

24.     Defendant Winchester Woods Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

25.     Defendant Chateau Royale Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

26.     Defendant East Gate Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York and its principal assets are located in the state of Mississippi.

27.     Defendant Hallmark Gardens Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

28.     Defendant North Gate Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

29.     Defendant Pebble Creek Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

30.     Defendant Southwind Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

31.    Defendant Advantages Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

32.    Defendant Timber Ridge Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

33.    Defendant Caleb's Creek Holdings LLC is an Ohio limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

34.    Defendant Fox Chase Apartments 1 LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

35.    Defendant Galloway Apartments LLC is an Ohio limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

36.    Defendant ROCO – High Point in the Park LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

37.     Defendant ROCO–Hilliard LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

38.     Defendant Trotwood Holdings LLC is an Ohio limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

39.     Defendant ROCO–Loganberry LLC is an Ohio limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

40.     Defendant ROCO–Parkside LLC is an Ohio limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

41.     Defendant Quail Creek Investments LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

42.     Defendant Steeplechase Advisers II LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

43.     Defendant Lakes at Ridgeway Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

44.     Defendant Moriah Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

45.     Defendant Stonegate Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

46.     Defendant Arlington Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

47.     Defendant Forest View Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

48.     Defendant Riverside Ranch Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

49.     Defendant Shadow Creek Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

50.     Defendant University Hill Owner LLC is a Delaware limited liability company with a principal place of business in the state of New York. Upon information and belief, this Defendant's direct and indirect members are citizens of New York and no member is a citizen of South Dakota.

### Jurisdiction and Venue

51.     As a national banking association having its principal place of business in South Dakota, Plaintiff is a citizen of South Dakota.

52.     The members of the Defendants listed in **Part A of Schedule 1** are CFR Mezz 5 Holdings LLC ("Mezz 5 Holdings"), a Delaware limited liability company, and CFR Mezz 5 LLC ("Mezz 5"), a Delaware limited liability company. The sole member of Mezz 5 Holdings is Mezz 5. The sole member of Mezz 5 is CFR Mezz 6, LLC ("Mezz 6"), a Delaware limited liability company. The sole member of Mezz 6 is CFR Mezz 7, LLC ("Mezz 7"), a Delaware limited liability company. The sole member of Mezz 7 is CF 1760 LLC ("CF Owner"), a Delaware limited liability company. The members of CF Owner are Joseph Chetrit and Meyer Chetrit, both of whom are, upon information and belief, residents and citizens of the state of New York. Accordingly, each Defendant listed in **Part A of Schedule 1** is a citizen of the state of New York.

53.     Mezz 5 is the sole member of the Defendants listed in **Part B of Schedule 1**. As described in Paragraph 52, above, Mezz 5 is indirectly owned, through Mezz 6, Mezz 7, and CF Owner, by Joseph Chetrit and Meyer Chetrit, both of whom are, upon information and belief,

residents and citizens of the state of New York. Accordingly, each Defendant listed in **Part B of Schedule 1** is a citizen of the state of New York.

54.     The sole member of the Defendants listed in **Part C of Schedule 1** is CFR Mezz 1 LLC ("Mezz 1"), a Delaware limited liability company. The sole member of Mezz 1 is CFR Mezz 2, LLC ("Mezz 2"), a Delaware limited liability company. The sole member of Mezz 2 is CFR Mezz 3, LLC ("Mezz 3"), a Delaware limited liability company. The sole member of Mezz 3 is ROCO Chetrit Entities LLC ("Roco Owner" and together with CF Owner, the "Funds"), a Delaware limited liability company. The members of Roco Owner are Jonathan Chetrit, Meyer Chetrit, Jacob Chetrit, Joseph Chetrit, Daniel Chetrit, Simon Chetrit, and Michael Chetrit, each of whom is, upon information and belief, residents and citizens of the state of New York. Accordingly, each Defendant listed in **Part C of Schedule 1** is a citizen of the state of New York.

55.     The United States District Court for the Southern District of New York (this "Court") has original jurisdiction of this action under 28 U.S.C. § 1332 because it is a civil action between citizens of different states – South Dakota as to Plaintiff, and New York as to the Defendants – and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

56.     Venue is proper in the Southern District of New York because, as described more fully below, each Defendant undertook substantial activities relating to the loan in New York, including negotiating and signing the relevant loan documents and accepting the advance of funds within the state. In addition, each of the Defendants selected and expressly agreed in the Loan documents to venue of litigation in this district. *See* **Exhibit 1** (Loan Agreement) at § 10.3(b) (providing that any action "arising out of or relating to [the Loan Documents] may at Lender's option be instituted in any federal or state court in the City of New York, County of New York.").

### General Allegations

**A.    Defendants Obtained a $481 Million Loan from Plaintiff's Predecessor-in-Interest Secured by the Collateral Properties.**

57.    On June 19, 2019 (the "Loan Origination Date"), JP Morgan Chase Bank, National Association ("JPMCB") made the Loan to the Defendants, individually and collectively, in the original principal amount of $481,000,000.00.

58.    In connection with the Loan, each Defendant and JPMCB executed the *Loan Agreement*, dated as of the Loan Origination Date (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached as **Exhibit 1**.

59.    Each of the Defendants represented and warranted on the Loan Origination Date that it was, and covenanted that it would  be, a "Special Purpose Entity" as defined in the Loan Agreement, each owning in their respective capacity the Collateral Property identified on **Schedule 1**.

60.    Plaintiff is the current owner and holder of the Loan and is the holder of that certain *Promissory Note*, dated as of the Loan Origination Date, executed by each Defendant in accordance with the Loan Agreement and payable in the original principal amount of $481,000,000.00 (the "Note"). A true and correct copy of the Note is attached as **Exhibit 2**.

61.    The respective obligations of each Defendant under the Note and the Loan Agreement are secured by a first priority security instrument including, either a *Mortgage*, *Deed of Trust*, or *Deed to Secure Debt*, executed by the respective Defendant for the benefit of JPMCB and recorded in the county where each Collateral Property is located (collectively, the "Security

Instruments"). The Security Instruments and the date and place of their recording are more specifically described in **Schedule 2**. True and correct copies of the Security Instruments are attached hereto as **Exhibits 3.1** through **3.43**.

62.     Under each of the Security Instruments, the applicable Defendant assigned to JPMCB all of such Defendant's right, title, and interest in and to all leases, rents, and profits of the applicable Collateral Property.

63.     Each of the Security Instruments further provides that if an event of default occurs, JPMCB, either in person, by agent, or through a receiver, shall have the right to take possession of and manage the applicable Collateral Properties and collect the rent, and apply the net proceeds, over and above JPMCB's costs, against the indebtedness, without regard for the adequacy of the security for the debt.

64.     For example, Section 7.1 of the Security Instrument with respect to the Collateral Property known as "Galloway Village" provides

> *Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may* take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions…: …(g) *apply for the appointment of a receiver*…without notice and without regard for the adequacy of the security of or for the Debt and without regard for the solvency of Borrower, any guarantor or any indemnitor with respect to the Loan or of any Person liable for the payment of the Debt[.]

*See* **Exhibit 3.1** (Galloway Village Mortgage)  (emphasis added).

65.     The respective obligations of each Defendant under the Note and the Loan Agreement are also guaranteed by Meyer Chetrit ("Guarantor"), pursuant to a certain *Guaranty Agreement* dated as of the Loan Origination Date (the "Loan Guaranty").  A true and correct copy of the Loan Guaranty is attached hereto as **Exhibit 4**.

66.     In addition to the Note, the Loan Agreement, the Security Instruments, and the Loan Guaranty, each Defendant, as applicable, executed and delivered to JPMCB several other documents and instruments in connection with the origination of the Loan, each dated as of the Loan Origination Date (collectively, and inclusive of the specific documents described in this Paragraph, the "Origination Loan Documents").

67.     The Origination Loan Documents served as consideration for the making of the Loan by JPMCB, and JPMCB so acted in reliance in making the Loan.

**B.     Plaintiff is the Holder of the Loan by Assignment.**

68.     Plaintiff's acquisition of the Note is evidenced by that certain Allonge dated July 18, 2019 (the "Allonge").  A true and correct copy of the Allonge is attached to the Note and included in **Exhibit 2**.

69.     JPMCB made parallel assignments of the Security Instruments in favor of Plaintiff by a distinct series of assignments, which were recorded in the applicable mortgage records as more fully described in **Schedule 2** (collectively, the "Assignments"). True and correct copies of the Assignments are attached hereto as **Exhibit 5.1** through **5.43**.

70.     JPMCB also made an additional parallel assignment of all of the other Origination Loan Documents pursuant to that certain *General Assignment* executed by JPMCB in favor of Plaintiff as of July 18, 2019 (the "General Assignment"). A true and correct copy of the General Assignment is attached hereto as **Exhibit 6**.

71.     Plaintiff, through its custodian, is in possession and holder of original copies of the Origination Loan Documents, the Allonge, and the Assignments, and the General Assignment.

72.     By virtue of the Allonge, the Assignments, and the General Assignment, Plaintiff has been assigned and possesses all rights, title, and interest in the Origination Loan Documents.

**C.       The Parties Amended and Modified the Origination Loan Documents.**

73.       Each Defendant and Plaintiff, as successor-in-interest to JPMCB, executed that certain *First Amendment to Loan Agreement* dated as of July 9, 2019 (the "<u>First Amendment</u>") which made certain technical adjustments to the interest rate spread for the Loan.  A true and correct copy of the First Amendment is attached hereto as <u>**Exhibit 7**</u>.

74.       Thereafter, each Defendant, Plaintiff, and Guarantor executed that certain *Consent and Loan Modification Agreement* dated as of December 23, 2020 (the "<u>First Consent Agreement</u>", and together with the Origination Loan Documents and the First Amendment, the "<u>Pre-Maturity Loan Documents</u>") pursuant to which Plaintiff consented to a temporary waiver of the Defendants' obligation to make monthly replacement reserve deposits in response to the impact of the COVID-19 pandemic.

**D.       Defendants Defaulted Under the Loan Documents By Failing to Repay the Loan at Maturity.**

75.       The Loan matured by its terms on July 9, 2022 (the "<u>Maturity Date</u>").

76.       The balance of the Loan became immediately due and payable in its entirety upon the occurrence of the Maturity Date.

77.       On July 15, 2022, Plaintiff caused a letter to be sent to each Defendant (the "<u>Maturity Default Notice</u>") (i) providing notice of the occurrence of an Event of Default due to Defendants' failure to "pay the entire outstanding principal balance of the Loan, all accrued and unpaid interest, and all other amounts due under the Loan Documents on the Maturity Date of the Loan" (the "<u>Maturity Default</u>"), and (ii) demanding payment in full of the Loan. A true and correct copy of the Maturity Default Notice is attached hereto as <u>**Exhibit 8**</u>.

78.       Presently, Defendants have failed and refused, and continue to fail and refuse, to cure the Maturity Default and pay the Loan in full.

### E.    The Parties Entered into Multiple Post-Maturity Agreements Modifying the Loan and Consenting to the Release of Certain Collateral Properties.

79.    Following the Maturity Default, Defendants, Plaintiff, and Guarantor entered into seven additional consent and modification agreements which, among other things, provided for the release and sale of certain Collateral Properties and payment of such proceeds to Plaintiff on account of the Loan, including:

(i)    that certain *Second Consent and Loan Modification Agreement*, dated as of October 13, 2022 (the "Second Consent Agreement");

(ii)    that certain *Third Consent and Loan Modification Agreement*, dated as of February 28, 2023 (the "Third Consent Agreement");

(iii)    that certain *Fourth Consent and Loan Modification Agreement*, dated as of March 13, 2023 (the "Fourth Consent Agreement");

(iv)    that certain *Fifth Consent and Loan Modification Agreement*, dated as of March 17, 2023 (the "Fifth Consent Agreement");

(v)    that certain *Sixth Consent and Loan Modification Agreement*, dated as of July 18, 2023 (the "Sixth Consent Agreement");

(vi)    that certain *Seventh Consent and Loan Modification Agreement*, dated as of August 29, 2023 (the "Seventh Consent Agreement"); and

(vii)    that certain *Eighth Consent and Loan Modification Agreement*, dated as of September 7, 2023 (the "Eighth Consent Agreement", and together with each of the preceding Consent Agreements, the "Consent Agreements").

True and correct copies of the Consent Agreements (except for the First Consent Agreement) are attached hereto as **Exhibits 9.1** through **9.7**.

80.    Each Defendant listed on **Part B of Schedule 2** has transferred its respective Collateral Property to an arms-length third-party buyer, and, as provided in the Consent Agreements (other than the First Consent Agreement), Plaintiff has released the related liens of the Security Instruments with respect to the Released Collateral Properties.

**F.     The Parties Entered into a Forbearance Agreement Which Expressly Provides for the Appointment of a Receiver.**

81.     Following the Maturity Default and during the course of the Defendants' efforts to sell certain of the Collateral Properties as provided for in the Consent Agreements, each Defendant, Plaintiff, and Guarantor entered into the *Forbearance and Loan Modification Agreement*, dated as of June 5, 2023 (the "Forbearance Agreement", and together with the Consent Agreements (other than the First Consent Agreement), the "Post-Maturity Loan Documents"; the Pre-Maturity Loan Documents and the Post-Maturity Loan Documents, collectively, being the "Loan Documents") pursuant to which, amongst other things, Plaintiff agreed to temporarily refrain from exercising its foreclosure and receivership remedies with respect to the Collateral Properties to allow Defendants to complete their sale efforts and repay the Loan in full. A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit 10**.

82.     In Section 3.11(d) of each of the Post-Maturity Loan Documents, the Defendants and Guarantor irrevocably consented to and agreed that Plaintiff

> *may move or make application* to a court of competent jurisdiction *for the appointment of a receiver* [for the Collateral Property] *and shall be entitled to such appointment, as a matter of strict right*[.]

*See* **Exhibit 10**  (Forbearance Agreement) (emphasis added).

83.     Section 3.11(d) of each of the Post-Maturity Loan Documents further provides that the Defendants and Guarantor agree that they

> (i) *irrevocably consent to such receiver appointment*, (ii) *knowingly and voluntarily waive any and all defenses to*, and any and all rights to enjoin, appeal or otherwise interfere with, hinder or impede, *any such motion, application or receiver appointment*, (iii) knowingly and voluntarily waive any notices of any such motion, application or receiver appointment, (iv) agree not to oppose any motion or application by Lender for such receiver appointment, (v) shall cooperate and take all actions and execute and deliver all documents requested by Lender in order to effectuate such receiver appointment, including any other or further stipulations and/or

consent orders to be filed with the applicable court of competent jurisdiction, and (vi) shall cooperate in connection with such receiver appointment by transitioning management and operational control of the Mortgaged Property to such receiver.

*See, e.g.,* **Exhibit 10** (Forbearance Agreement) (emphasis added).

84.     The Defendants further agreed in Section 3.11(d) of each of the Post-Maturity Loan Documents that any receiver sought by Plaintiff shall be vested with the "usual powers and duties" of receivers, including the ability to exercise control over the Collateral Properties in order to preserve them and prevent waste, whether by possessing, maintaining, operating or selling the Collateral Properties:

> *any order appointing such receiver <u>shall</u> provide receiver with all of the usual powers and duties of receivers* under applicable law and/or pursuant to local custom, *including the full power to take possession of, hold, develop, rent, lease, sell, manage, maintain, operate and otherwise use or permit the use of the Mortgaged Property* upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances. *Such receivership may,* at the option of Lender and unless otherwise limited by any order appointing such receiver, *continue* until full payment and performance of the Obligations *or until title to the Mortgaged Property shall have passed by foreclosure sale, <u>receiver sale</u> or deed in lieu of foreclosure. Lender, in its sole discretion, shall be entitled to prosecute through completion in any Civil Action* one or more causes of action for foreclosure of the Security Instrument, *to have the Mortgaged Property sold by* foreclosure sale or <u>*receiver sale* in accordance with applicable law</u> [and] *to obtain any judicial order confirming or approving any such sale*[.]

*Id*. (emphasis added).

> **G.     Since the Maturity Default, Defendants Committed Numerous Additional Defaults Under the Loan Documents.**
>
> > **1.     Defendants Defaulted Under the Forbearance Agreement by Refusing to Fund Reserve Funds.**

85.     Concurrent with the execution of the Forbearance Agreement, and pursuant to Section 2.3(b) thereof, Plaintiff released, among other funds, $1,700,000.00 in Forbearance

Reserve Funds to itself, to be used for "the payment of any and all costs incurred in connection with the operation, management and/or maintenance of the" Collateral Properties.

86.     Section 2.3(a) of the Forbearance Agreement required Defendants to deposit $1,700,000.00 with Plaintiff to replenish the Forbearance Reserve Funds on or before July 7, 2023 (the "Forbearance Reserve Deficit").

87.     On June 27, 2023, Plaintiff caused a letter to be sent to each Defendant advising that the Defendants must deposit such funds as necessary to bring the amount of Forbearance Reserve Funds to $1,700,000.00 on or before July 7, 2023 (the "Forbearance Reserve Warning Letter").

88.     On July 6, 2023, Plaintiff caused a letter to be sent to each Defendant again reminding Defendants of their obligation to post the required amount of Forbearance Reserve Funds on or before July 7, 2023, and highlighting to Defendants the applicability of Section 1.2(d) of the Forbearance Agreement, which provides for the occurrence of an immediate Event of Default upon any Defendant's failure to meet any of its payment obligations under the terms of the Forbearance Agreement (the "Second Forbearance Reserve Warning Letter").

89.     On July 13, 2023, Plaintiff caused a letter to be sent to each Defendant (generally, the "Forbearance Reserve Default Letter") advising that the Defendants failed to cure the Forbearance Reserve Deficit as required by the Forbearance Agreement and notifying the Defendants of the related Events of Default (generally, the "Forbearance Reserve Default"). A true and correct copy of the Forbearance Reserve Default Letter is attached hereto as **Exhibit 11**.

90.     On August 17, 2023, Plaintiff caused a letter to be sent to each Defendant (generally, the "Second Forbearance Reserve Default Letter") again advising that the Defendants' failure to deposit the $1,700,000.00 required to cure the Forbearance Reserve Deficit and notifying

the Defendants of the occurrence of the related Forbearance Reserve Default. A true and correct copy of the Second Forbearance Reserve Default Letter is attached hereto as **Exhibit 12**.

91.     The Defendants have failed and refused to fully replenish the Forbearance Reserve Funds as required by the Forbearance Agreement.

      **2.    Defendants Defaulted Under the Loan Documents by Failing to Fund the Cash Management Account.**

92.     Section 2.6.1(b) of the Loan Agreement provides that Defendants shall, and shall cause its property manager, to deposit all Rents (as that term is used in the Loan Agreement) in trust for the benefit of Plaintiff within two business days of receipt, as further described in that certain *Deposit Account Control Agreement* dated as of the Loan Origination Date and executed by Defendants, PNC Bank, National Association as bank (together with its successors and assigns, the "Lockbox Bank") and JPMCB (the "Lockbox Agreement"). A true and correct copy of the Lockbox Agreement is attached hereto as **Exhibit 13**.

93.     While the Lockbox Agreement generally provides that all rents on deposit with the Lockbox Bank are to be disbursed to Defendants, during the continuation of a Cash Sweep Period (as defined therein), Lockbox Bank is directed to transfer all such funds on deposit to an account held in trust for the benefit of Plaintiff established pursuant to that certain *Cash Management Agreement* dated as of the Loan Origination Date and executed by Defendants, PNC Bank, National Association as deposit bank, and JPMBC (such account, the "Cash Management Account, and such agreement, the "Cash Management Agreement"). A true and correct copy of the Cash Management Agreement is attached hereto as **Exhibit 14**.

94.     During the continuation of a Cash Sweep Period, Section 3.1(a)(vi) of the Cash Management Agreement authorizes monthly disbursals for Operating Expenses for the Collateral Properties.  The Loan Agreement defines "Operating Expenses" to include "utilities, ordinary repairs and maintenance…management fees…and other similar costs…". *See* **Exhibit 1** at 22-23.

95.     In each of the Post-Maturity Loan Documents, the Defendants and Guarantor acknowledged and agreed that a Cash Sweep Period has occurred and is continuing due to the occurrence of the Maturity Default. *See, e.g.,* **Exhibit 10** (Forbearance Agreement) at 1.4.

96.     Section 1.4 of the Forbearance Agreement provides that if funds on deposit in the Cash Management Account are not sufficient to make all of the disbursals in Section 3.1(a)(i) through (iv) and (vi) of the Cash Management Agreement, Defendants must deposit with Plaintiff funds equal to any such amount within three business days of Plaintiff's written demand. *See id.*

97.     On August 24, 2023, Plaintiff caused a letter to be sent to each Defendant (the "August Shortfall Notice") providing notice that insufficient funds on deposit in the Cash Management Account had created a Shortfall Amount of $495,228.47 for the month of August and demanding payment in three business days.

98.     On September 19, 2023, Plaintiff caused a letter to be sent to each Defendant (the "September Shortfall Notice" and together with the August Shortfall Notice, the "Shortfall Notices") providing notice that insufficient deposits into  the Cash Management Account had increased the Shortfall Amount to $2,232,217.05 for the month of September and demanding payment in three business days.

99.     Presently, the Defendants have failed and refused to fund the Shortfall Amounts noted in the Shortfall Notices.

     **3.**    **Defendants Defaulted Under the Loan Documents by Failing to Maintain the Collateral Properties and Permitting Hazardous Life and Safety Conditions.**

100.    The Loan Agreement generally requires the Defendants to maintain the Collateral Properties in conditions appropriate for their use as multi-family apartment residences and to undertake all necessary actions in furtherance of that requirement, including making adequate payments to vendors and property management.  Multiple provisions of the Loan Agreement establish this requirement.

101.    Specifically, Section 5.1.1 of the Loan Agreement requires  Defendants to

> at all times…keep the Properties in good working order and repair, and from time to time make, or cause to be made, all reasonably necessary repairs, renewals, replacements, betterments, and improvements thereto[.]

**Exhibit 1** at Section 5.1.1.

102.    Section 5.1.12 of the Loan Agreement requires  Defendants to continue to engage in its business as of the Loan Origination Date to the extent necessary for the "ownership, maintenance, management, and operation of the Properties." **Exhibit 1** at Section 5.1.12.

103.    Section 5.1.24 of the Loan Agreement generally provides that the Defendants will pay all of its obligations, which, if not paid, could result in a material adverse effect before delinquency. *See* **Exhibit 1** at Section 5.1.12.

104.    The Defendants' failure and refusal to replenish the Forbearance Reserve Deficit, combined with the Defendants' failure and refusal to fund the Shortfall Amounts, have caused funding at the Collateral Properties to fall far below the level needed to "keep the Properties in good working order and repair, and from time to time make, or cause to be made, all reasonably necessary repairs, renewals, replacements, betterments, and improvements thereto" as required by Section 5.1 of the Loan Agreement.

105.    Throughout September and October of 2023, Plaintiff caused Allegiant Commercial Asset Services Group (the "Inspector") to inspect the Collateral Properties. The Inspector submitted inspection reports, which included both narrative descriptions of the respective Collateral Property's overall condition, as well as a numerical score describing the respective Collateral Property's condition according to definitions established by the Mortgage Bankers Association ("MBA Guidelines").

106.    Five of the Collateral Properties received ratings of "5" out of "5". According to the MBA Guidelines, such properties exhibit inferior conditions, multiple non-functioning building components, severe deferred maintenance items, multiple life/safety and continuing code violations, among other conditions, with no action being taken with respect to deferred maintenance and life/safety issues.

107.    For example, the Inspection Report for the Collateral Property known as "Chateau Glen Oaks" notes that

> the property has several issues of deferred maintenance, including issues of potential life/safety. Life safety concerns include: Dry rot at wood and broken railings at balconies throughout property. Windows throughout property are broken / damaged and have been covered with plastic, these are emergency ingress / egress for units and the improper repair poses a safety concern. Building 448 sustained a fire and does not appear to have any repairs being completed; the building is not secured and is a major life safety concern. The stair support outside of Unit 2 is bent and damaged and one is completely missing. It appears to be the only support for the stairway and should be addressed immediately to prevent a life safety concern.

A true and correct copy of the Inspection Report for Chateau Glen Oaks is attached hereto as **Exhibit 15**.

108.    Seven of the Collateral Properties received ratings of "4" out of "5". According to the MBA Guidelines, such properties exhibit deteriorating conditions, life/safety and continuing

code violations, among other conditions, with deferred maintenance and life/safety issues not being addressed as quickly as required.

109.    For example, the Inspection Report for the Collateral Property known as "Northwood Apartments" notes

> there is deterioration and potholes forming at the asphalt surface of the interior drives and parking lot. There is debris covering the walkway surface at the breezeways. The vegetation throughout the property is overgrown and in need of maintenance. All of the site dumpster areas require maintenance and housekeeping. The pool is currently closed and unmaintained. The common area stairways have peeling paint. Also noted, one of the buildings has a gutter that is detached from the corner and hanging down.

A true and correct copy of the Inspection Report for Northwood Apartments is attached hereto as **Exhibit 16**.

110.    Further, on October 18, 2023, the City of Jacksonville, Florida served Plaintiff with five separate initial notices of condemnation and orders to vacate (the "CF Condemnation Orders") with respect to portions of the Collateral Property known as "Colonial Forest".

111.    One of the CF Condemnation Orders indicates that the entire structure of one building located on the related Collateral Property is "damaged / deteriorated to the extent it is in danger of collapsed & poses and immediate threat to health and safety", while noting that the same structure is "unfit for human habitation and poses a threat to the health and safety of the occupants."

112.    On October 19, 2023, Plaintiff caused a letter to be sent to each Defendant (the "Maintenance Default Notice") providing notice of Defendants' failure to maintain the Collateral Properties in accordance with the terms of Section 5.1 of the Loan Agreement (the "Maintenance Defaults") and demanding the Defendants provide evidence that they are diligently undertaking to

cure the Maintenance Defaults and immediately fund the related Forbearance Reserve Deficit and the outstanding Shortfall Amounts. A true and correct copy of the Maintenance Default Notice is attached hereto as **Exhibit 17**.

113.     As of the date of this Complaint, the Defendants have not satisfied the demands set forth in the Maintenance Default Notice.

**H.     The Unpaid Balance of the Defaulted Loan Exceeds $241 Million.**

114.     As of September 20, 2023, the outstanding principal balance alone due and owing under the Loan Documents was $241,645,523.61.  Interest and other charges due and owing per terms of the Loan Documents have also accrued and continue to accrue as set forth in a letter sent to the Defendants on September 25, 2023 (the "September Interest Accrual Letter"). A true and correct copy of the September Interest Accrual Letter is attached hereto as **Exhibit 18**.

115.     As a further result of the above-described defaults, Plaintiff has incurred costs and attorneys' fees, and will continue to incur costs and attorneys' fees in enforcing its rights under the Loan Documents, in an amount still to be determined at this time.

**First Cause of Action**
**(Appointment of a Receiver)**

116.     Plaintiff realleges and incorporates by this reference Paragraphs 1 through 115 of this Complaint as if set forth in full herein.

117.     Plaintiff is entitled the appointment of a receiver for the Collateral Properties as specific performance of the Loan Documents, including the Security Instruments and the Forbearance Agreement, following Defendants' numerous defaults on the Loan.

118.     Plaintiff is also entitled to the appointment of a receiver for the Collateral Properties pursuant to 28 U.S.C. §§ 959(b) and 3103(a) because there is a substantial danger that the Remaining Collateral Properties will be materially damaged or mismanaged.

119.    Each of the Security Instruments provides that upon an Event of Default (as defined therein), Plaintiff is entitled to seek appointment of a receiver for the Collateral Properties. *See, e.g.,* **Exhibit 3** at Section 7.1.

120.    Likewise, each of the Post-Maturity Loan Documents provides that upon an Event of Default (as defined therein), Plaintiff is entitled to seek appointment of a receiver as a matter of right and in those agreements, the Defendants consented and agreed to such appointment. *See, e.g.,* **Exhibit 10** (Forbearance Agreement) at Section 3.11.

121.    Defendants caused an Event of Default under the Note and the Security Instruments by failing to pay all amounts due under the Note and Loan Agreement by the Maturity Date.

122.    Defendants caused an Event of Default under the Security Instruments by failing to maintain the Collateral Properties in conditions appropriate for their use as multi-family apartment residences and to undertake all necessary actions in furtherance of that requirement, including making adequate payments to vendors and property management.

123.    Defendants caused an Event of Default under the Security Instruments by permitting and failing to remedy the Maintenance Defaults and otherwise failing to maintain the Collateral Properties in accordance with the terms of Section 5.1 of the Loan Agreement.

124.    Defendants caused an Event of Default under the Forbearance Agreement by failing to replenish the Forbearance Reserve Funds and cure the Forbearance Reserve Deficit.

125.    Defendants caused an Event of Default under the Forbearance Agreement by failing to maintain funds in the Cash Management Account sufficient to make all of the disbursals in Section 3.1(a)(i) through (iv) and (vi) of the Cash Management Agreement is an Event of Default under the Forbearance Agreement.

126.     Moreover, the Defendants' failure to fund the Collateral Properties consistent with their obligations under the Loan Documents has already resulted, and will continue to result in, substantial and material damage to the Collateral Properties.

127.     Plaintiff has no plain, adequate, or speedy remedy at law to enforce the provisions of the Loan Documents concerning maintenance and operation of the Collateral Properties and preservation of the revenues therefrom for Plaintiff's benefit, or to compensate Plaintiff for the damages caused by Defendants' refusal to pay the Loan in full or appropriately maintain the Collateral Properties.

128.     Plaintiff therefore seeks the appointment of a receiver who is an able person, capable, experienced, and skilled in the management and control of real property, and is a proper person to be appointed receiver in this matter to take, manage, and control the Collateral Properties; preserve and supervise repairs to the Collateral Properties; market and sell the Collateral Properties; and collect, apply the receipts, rents, income, and profits from the Collateral Properties to curing the defaults (and to prevent the occurrence of further defaults of a like nature) until such time as the defaults no longer exist.

129.     Plaintiff is also entitled to an injunction (a) prohibiting the Defendants, and their respective agents, partners, servants, employees, and all persons acting under, in concert with, or on behalf of any of them, from and in any manner, directly or indirectly, demanding, collecting, discounting, receiving, or in any way diverting any receipts, rents, income, and profits from the Remaining Collateral Properties and prohibiting them from entering into any new leases or lease extensions; (b) ordering the Defendants to relinquish possession of the Remaining Collateral Properties and the receipts, rents, income, and profits therefrom to the receiver; (c) ordering the

Defendants to turn over to the receiver all personal property, fixtures, goods, documents, books, records, papers, and accounts of the Defendants relating thereto; and (d) enjoining the Defendants from interfering with the receiver.

**Second Cause of Action**
**(Cure of the Forbearance Reserve Deficit)**

130.    Plaintiff realleges and incorporates by this reference Paragraphs 1 through 129 of this Complaint as if set forth in full herein.

131.    Section 2.3(a) of the Forbearance Agreement required the Defendants to deposit such amounts with Plaintiff to bring the amount of Forbearance Reserve Funds on deposit to $1,700,000.00 on or before July 7, 2023, and at any other time should the amount of Forbearance Reserve Funds on deposit with Plaintiff fall below $1,000,000.00.

132.    Plaintiff has made numerous demands for the Defendants to replenish the Forbearance Reserve Funds and cure the Forbearance Reserve Deficit, including by the Forbearance Reserve Default Letter and the Second Forbearance Reserve Default Letter.

133.    The Defendants have failed and refused to fully replenish the Forbearance Reserve Funds as required by the Forbearance Agreement.

134.    Plaintiff is thus entitled to specific performance of the Forbearance Agreement, including requiring the Defendants, jointly and severally, to deposit $1,700,000.00 with Plaintiff to replenish the Forbearance Reserve Funds.

**Third Cause of Action**
**(Accounting and Turnover of Receipts)**

135.    Plaintiff realleges and incorporates by this reference Paragraphs 1 through 134 of this Complaint as if set forth in full herein.

136.    The Loan Agreement provides Plaintiff with a broad right to examine the Defendants' books, records, and accounts:

> Lender shall have the right . . . to examine [books, records and accounts reflecting all of the financial affairs of Borrower and all items of income and expense in connection with the operation on an individual basis of the Properties.] After the occurrence and during the continuance of an Event of Default, Borrower shall pay any reasonable out of pocket costs and expenses incurred by Lender to examine Borrower's accounting records with respect to the Properties, as Lender shall determine to be necessary or appropriate in the protection of Lender's interest.

**Exhibit 1** (Loan Agreement) at § 5.1.11(a).

137.    The Loan Agreement also requires the Defendants to provide Plaintiff with "detailed financial information with respect to the operation of the [Collateral] Properties and the financial affairs" of the Defendants" as requested by Plaintiff. *See* **Exhibit 1** (Loan Agreement) at § 5.1.11(f).

138.    Plaintiff is thus entitled to specific performance of the Loan Agreement in the form of an accounting of receipts, rents, income, and profits collected from each Collateral Property from the initial date of default under the Loan Documents to the present.

139.    In addition, the Loan Documents, including the Security Instruments, entitle Plaintiff to turnover of such rents and/or recovery of damages in the amount of those rents which have been diverted and misapplied by the Defendants, if any. *See, e.g.,* **Exhibit 3.1** (Galloway Village Mortgage) at §§ 1.2 and 7.1(h).

### Prayer for Relief

WHEREFORE, Plaintiff prays for entry of judgment against the Defendants, as follows:

(i)    Ordering specific performance of the provisions of each Security Instrument and the Forbearance Agreement relating to the right of Plaintiff to take possession of the applicable Remaining Collateral Properties and all personal property, fixtures, goods, documents, books, records, papers, and accounts of the respective Defendants relating thereto; to care for and operate each Remaining Collateral Property; to market and sell each Collateral Property; and to collect the

receipts, rents, income, and profits from each Collateral Property during the pendency of this action.

(ii)    Appointing a receiver to take possession of the Remaining Collateral Properties and to conserve and manage them and to collect any and all receipts, rents, income, and profits from each Collateral Property during the pendency of this action.

(iii)    Granting a permanent injunction enjoining and restraining the Defendants and their respective agents, partners, servants, employees, and all persons acting under, in concert with, or on behalf of any of them, from and in any manner, directly or indirectly, demanding, collecting, discounting, receiving, or in any way diverting any receipts, rents, income, and profits from each Collateral Property and anyone holding under it.

(iv)    Ordering each Defendant immediately to relinquish possession of each Collateral Property owned by it, and all personal property, fixtures, goods, documents, books, records, papers, and accounts of such Defendant relating thereto, and the receipts, rents, income, and profits from each Collateral Property, to the appointed receiver or his designated agent.

(v)    Entering an appropriate order with respect to the receiver's powers and duties insofar as the collection and application of the funds and personal property coming into his possession may be concerned.

(vi)    Ordering that such receivership be continued until such time as the defaults alleged shall have been fully cured, attorneys' fees awarded in connection herewith paid, and receiver's expenses paid so that no default continues to exist with relation to the obligations owed by the Defendants to Plaintiff.

(vii)    Ordering the Defendants to immediately deposit $1,700,000.00 with Plaintiff to cure the Forbearance Reserve Deficit and to maintain such amounts of Forbearance Reserve Funds on deposit with Plaintiff as is required by the Forbearance Agreement.

(viii)    Ordering the Defendants to account to Plaintiff for all receipts, rents, income and profits collected from the Collateral Properties from the date of initial default, to the present and a judgment for turnover of receipts and/or the payment of damages pursuant to the terms of the applicable Loan Documents.

Dated: November 10, 2023                    BRYAN CAVE LEIGHTON PAISNER LLP

                                    By:    /s/ Noah M. Weissman
                                           Noah M. Weissman
                                           Suzanne M. Berger
                                           Matias R. Gallardo-Manzano
                                           1290 Avenue of the Americas
                                           New York, New York 10104
                                           T: (212) 541-2000
                                           Noah.Weissman@bclplaw.com
                                           suzanne.berger@bclplaw.com
                                           matias.gallegomanzano@bclplaw.com

                                           -and-

                                           Jarret P. Hitchings, Esq. (DE 5564)
                                           One Wells Fargo Center
                                           301 S. College Street, Suite 2150
                                           Charlotte, North Carolina 28202
                                           (704) 749 8965
                                           jarret.hitchings@bclplaw.com

                                           *Attorneys for Plaintiff Wells Fargo Bank,
                                           National Association, as Trustee for the
                                           Benefit of Holders of J.P. Morgan Chase
                                           Commercial Mortgage Securities Trust
                                           2019-MFP, Commercial Mortgage Pass-
                                           Through Certificates, Series 2019-MFP*

## SCHEDULE 1

## Defendant Borrowers and Collateral Properties

| | Defendant/Borrower | Property Location |
|---|---|---|
| **Part A – CF Owner/Mezz 5 Holdings Subsidiaries** | | |
| 1 | Caleb's Creek Holdings LLC | 6300 Caleb's Creek Way, Columbus, Ohio |
| 2 | Galloway Apartments LLC | 133 N Murray Hill Road, Columbus, Ohio |
| 3 | ROCO-Loganberry, LLC | 26680, 26710 and 26720 White Way Drive; 26663, 26670 and 26700 Loganberry Drive, Richmond, Ohio |
| 4 | ROCO-Parkside, LLC | 1556 Knuth Avenue, Euclid, Ohio |
| 5 | Trotwood Holdings LLC | 700 Keswick Circle, Trotwood, Ohio |
| **Part B – CF Owner/Mezz 5 Subsidiaries** | | |
| 6 | Advantages Owner LLC | 4901 McWillie Circle, Jackson, Mississippi |
| 7 | Atwood Owner LLC | 1857 Atwood Drive, Pensacola, Florida |
| 8 | Colonial Forest Owner LLC | 5928 Firestone Road, Jacksonville, Florida |
| 9 | Davis Gardens Owner LLC | 8619 North Davis Highway, Pensacola, Florida |
| 10 | East Gate Owner LLC | 3500 Hwy 39 N, Meridian, Mississippi |
| 11 | Hallmark Gardens Owner LLC | 1501 E Reed Road, Greenville, Mississippi |
| 12 | Knoxville Pointe Owner LLC | 1700 W Hickory Grove, Dunlap, Illinois |
| 13 | North Gate Owner LLC | 1719 MS-19/1719 Highway 19 North, Meridian, Mississippi |
| 14 | Northwood Owner LLC | 1601 Dunn Avenue, 101-116, Jacksonville, Florida |
| 15 | Pebble Creek Owner LLC | 5255 Manhattan Road, Jackson, Mississippi |
| 16 | ROCO – High Point in the Park, LLC | 2425 West River Road, Elyria, Ohio |
| 17 | ROCO-Hilliard, LLC | 3400 Twin Creeks Drive, Columbus, Ohio |
| 18 | Southwind Owner LLC | 1655 and 1667 Irish Hill Drive, Biloxi, Mississippi |
| 19 | Timber Ridge Owner LLC | 3875 I-55 South Frontage Road, Jackson, Mississippi |
| 20 | University Courtyard Owner LLC | 3025 South Adams St., Tallahassee, Florida |
| **Part C – Roco Owner Subsidiaries** | | |

| 21 | Abington Owner LLC | 4656 Edwardian Circle, Indianapolis, Indiana |
| 22 | Arlington Owner LLC | 116 E Edgebrook Drive, Houston, Texas |
| 23 | Barrington Park Owner LLC | 442 Cottage Hill Road, Mobile, Alabama |
| 24 | Chateau Glen Oaks Owner LLC | 408 Fairfax Drive, Fairfield, Alabama |
| 25 | Chateau Royale Owner LLC | 4900 Lisa Street, Alexandria, Louisiana |
| 26 | Cheswick Village Owner LLC | 9201 E. 30th Street, Indianapolis, Indiana |
| 27 | Colfax Owner LLC | 802-810 & 818-840 E Colfax, Mishawka, Indiana |
| 28 | Edison Pointe Owner LLC | 3902 St. Andrews Circle, Mishawka, Indiana |
| 29 | Forest View Owner LLC | 301 Tri City Beach Road, Baytown, Texas |
| 30 | Fox Chase Apartments 1 LLC | 7300 and 7301 Nightingale Drive, Holland, Ohio |
| 31 | Hickory Ridge Property Owner LLC | Cleveland Street and West 57th Avenue, Merrillville, Indiana |
| 32 | Lakes at Ridgeway Owner LLC | 5995 Waterstone Oak Way, Memphis, Tennessee |
| 33 | Manchester Park Owner LLC | 1621 Spring Hill Ave., Mobile, Alabama |
| 34 | Moriah Owner LLC | 2778 Pickering Drive, Memphis, Tennessee |
| 35 | Quail Creek Investments LLC | 67 Hunters Court, Amelia, Ohio |
| 36 | Riverside Ranch Owner LLC | 1805 Aquarena Spring Road, San Marco, Texas |
| 37 | Shadow Creek Owner LLC | 2807 Daniel McCall Drive, Lufkin, Texas |
| 38 | Steeplechase Advisers II LLC | 6790 River Downs Road, Centerville, Ohio |
| 39 | Stonegate Owner LLC | 2791 Coleman Road, Memphis, Tennessee |
| 40 | University Hill Owner LLC | 4704 N. University Drive, Nacogdoches, Texas |
| 41 | Vista Place Owner LLC | 821 E O Street, Russellville, Arkansas |
| 42 | Winchester Village Owner LLC | 8028 Madison Avenue, Indianapolis, Indiana |
| 43 | Winchester Woods Owner LLC | 2008 Woodhaven Drive, Fort Wayne, Indiana |

**SCHEDULE 2**

**Security Instruments**

| | Defendant/Borrower | Security Instrument | Assignment |
|---|---|---|---|
| **Part A – Remaining Collateral Properties** | | | |
| 1 | Advantages Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on June 21, 2019 in Hinds County, Mississippi at Book 7236, Page 539 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on October 4, 2019 in Hinds County, Mississippi at Book 7239, Page 7021 |
| 2 | Arlington Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Harris County, Texas at Clerk's File No. RP-2019-263256 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 27, 2019 in Harris County, Texas at Clerk's File No. RP-2019-428806 |
| 3 | Atwood Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Escambia County, Florida at Official Records Book 8116, Page 705 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 30, 2019 in Escambia County, Florida at Official Records Book 8173, Page 1037 |
| 4 | Barrington Park Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 2, 2019 in Mobile County, Alabama at Instrument No. 2019037581 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded February 11, 2020 in Mobile County, Alabama at Instrument No. 2020008605 |
| 5 | Chateau Glen Oaks Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 3, 2019 in Jefferson County, Alabama at Instrument No. 2019067088 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded February 10, 2020 in Jefferson County, Alabama at Instrument No. 2020013896 |
| 6 | Chateau Royale Owner LLC | Mortgage, Pledge of Leases and Rents and Security Agreement recorded on June 24, 2019 in Rapides Parish, Louisiana at Book 3148, Page 603 | Assignment of Mortgage, Pledge of Leases and Rents and Security Agreement recorded on January 30, 2020 in Rapides Parish, Louisiana at Book 3187, Page 833 |

| | Defendant/Borrower | Security Instrument | Assignment |
|---|---|---|---|
| 7 | Colonial Forest Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 25, 2019 in Duval County, Florida at Official Records Book 18840, Page 1498 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on October 1, 2019 in Duval County, Florida at Official Records Book 18950, Page 1987 |
| 8 | Davis Gardens Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Escambia County, Florida at Official Records Book 8116, Page 833 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 30, 2019 in Escambia County, Florida at Official Records Book 8173, Page 1056 |
| 9 | East Gate Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on June 24, 2019 in Lauderdale County, Mississippi at Book 2989, Page 453 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on January 27, 2020 in Lauderdale County, Mississippi at Book 3023, Page 311 |
| 10 | Forest View Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Harris County, Texas at Clerk's File No. RP-2019-262414 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 20, 2019 in Harris County, Texas at Instrument No. 2019-432178 |
| 11 | Galloway Apartments LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 19, 2019 in Franklin County, Ohio at Instrument No. 201906190073557 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded September 27, 2019 in Franklin County, Ohio at Instrument No. 201909270127115 |
| 12 | Hallmark Gardens Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on June 21, 2019 in Washington County, Mississippi at Book 201902, Page 8919 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded March 6, 2020 in Washington County, Mississippi at Book 202002, Page 3860 |
| 13 | Manchester Park Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 3, 2019 in Mobile County, Alabama at Instrument No. 2019037684 | Assignment Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded February 11, 2020 in Mobile County, Alabama at Instrument No. 2020008606 |

|    | Defendant/Borrower | Security Instrument | Assignment |
|----|--------------------|--------------------|------------|
| 14 | North Gate Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on June 24, 2019 in Lauderdale County, Mississippi at Book 2989, Page 407 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on January 27, 2020 in Lauderdale County, Mississippi at Book 3023, Page 320 |
| 15 | Northwood Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on August 8, 2019 in Duval County, Florida at Official Records Book 18892, Page 1688 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 23, 2020 in Duval County, Florida at Official Records Book 19079, Page 982 |
| 16 | Pebble Creek Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on June 21, 2019 in Hinds County, Mississippi at Book 7236, Page 578 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on October 4, 2019 in Hinds County, Mississippi at Book 7239, Page 7051 |
| 17 | Riverside Ranch Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 2, 2019 in Hays County, Texas at Clerk's File No. 19021902 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 21, 2020 in Hays County, Texas at Clerk's File No. 20002212 |
| 18 | ROCO – High Point in the Park, LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Lorain County, Ohio at Instrument No. 2019-0718950, re-recorded on June 25, 2019 at Instrument No. 2019-0719560 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 30, 2019 in Lorain County, Ohio at Instrument No. 2019-0732363 |
| 19 | ROCO-Hilliard, LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 19, 2019 in Franklin County, Ohio at Instrument No. 201906190073559 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 27, 2019 in Franklin County, Ohio at Instrument No. 201909270127110 |
| 20 | ROCO-Loganberry, LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Cuyahoga County, Ohio at Instrument No. 201906200352 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 30, 2019 in Cuyahoga County, Ohio at Instrument No. 201909300390 |

| | Defendant/Borrower | Security Instrument | Assignment |
|---|---|---|---|
| 21 | ROCO-Parkside, LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Cuyahoga County, Ohio at Instrument No. 201906200345 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on September 30, 2019 in Cuyahoga County, Ohio at Instrument No. 201909300386 |
| 22 | Shadow Creek Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 27, 2019 in Angelina County, Texas at Instrument No. 2019-00383292 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 16, 2020 in Angelina County, Texas at Instrument No. 2020-00390318 |
| 23 | Southwind Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on June 20, 2019 in Harrison County, Mississippi at Instrument No. 2019-1721-T-J2 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on September 27, 2019 in Harrison County, Mississippi at Instrument No. 2019-2940-T-J2 |
| 24 | Timber Ridge Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on June 21, 2019 in Hinds County, Mississippi at Book 7236, Page 499 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing recorded on October 4, 2019 in Hinds County, Mississippi at Book 7239, Page 7029 |
| 25 | University Courtyard Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Leon County, Florida at Official Records Book 5328, Page 936, corrected on October 14, 2020 in Official Records Book 5500, Page 1700 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on November 16, 2020 in Leon County, Florida at Official Records Book 5513, Page 1732 |
| 26 | University Hill Owner LLC | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Nacogdoches County, Texas at Volume 4937, Page 10 | Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 10, 2020 in Nacogdoches County, Texas at Document No. 2020-205 |
| 27 | Vista Place Owner LLC | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 8, 2019 in Pope County, Arkansas at Instrument No. 2019-05390 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on February 10, 2020 in Pope County, Arkansas at Instrument No. 2020-01075 |

| | Defendant/Borrower | Security Instrument | Assignment |
|---|---|---|---|
| **Part B – Released Collateral Properties** | | | |
| 28 | Caleb's Creek Holdings LLC<br><br>*(Released 10/13/2022)* | Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on June 19, 2019 in Franklin County, Ohio at Instrument No. 201906190073556 | Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on September 30, 2019 in Franklin County, Ohio at Instrument No. 201909300128066 |
| 29 | Fox Chase Apartments 1 LLC<br><br>*(Released 10/13/2022)* | Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on June 19, 2019 in Lucas County, Ohio at Instrument No. 20190619-0023382 | Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on October 1, 2019 in Lucas County, Ohio at Instrument No. 20191001-0039521 |
| 30 | Quail Creek Investments LLC<br><br>*(Released 10/13/2022)* | Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on June 20, 2019 in Clermont County, Ohio at OR Book 2810, Page 4329 | Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on September 27, 2019 in Clermont County, Ohio at OR Book 2819, Page 1637 |
| 31 | Steeplechase Advisers II LLC<br><br>*(Released 10/13/2022)* | Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on June 20, 2019 in Montgomery County, Ohio at Instrument No. 2019-00031871 | Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on November 1, 2019 in Montgomery County, Ohio at Instrument No. 2019-00060531 |
| 32 | Stonegate Owner LLC<br><br>*(Released 2/28/2023)* | Deed of Trust, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on July 9, 2019 in Shelby County, Tennessee at Instrument No. 19068252 | Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on September 30, 2019 in Shelby County, Tennessee at Instrument No. 19101435 |
| 33 | Lakes at Ridgeway Owner LLC<br><br>*(Released 3/13/2023)* | Deed of Trust, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on July 8, 2019 in Shelby County, Tennessee at Instrument No. 19067512 | Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on September 27, 2019 in Shelby County, Tennessee at Instrument No. 19100573 |

| | Defendant/Borrower | Security Instrument | Assignment |
|---|---|---|---|
| 34 | Moriah Owner LLC<br><br>*(Released 3/17/2023)* | Deed of Trust, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on July 9, 2019 in Shelby County, Tennessee at Instrument No. 19068262 | Assignment of Deed of Trust, Assignment of Leases and Rents and Security Agreement and Fixture Filing recorded on September 30, 2019 in Shelby County, Tennessee at Instrument No. 19101189 |
| 35 | Cheswick Village Owner LLC<br><br>*(Released 6/23/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 21, 2019 in Marion County, Indiana at Instrument No. A201900056883 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 13, 2020 in Marion County, Indiana at Instrument No. A202000004123 |
| 36 | Abington Owner LLC<br><br>*(Released 7/18/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 5, 2019 in Marion County, Indiana at Instrument No. A201900062477 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 13, 2020 in Marion County, Indiana at Instrument No. A202000004105 |
| 37 | Colfax Owner LLC<br><br>*(Released 7/18/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 16, 2019 in St. Joseph County, Indiana at Instrument No. 2019-16857 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 21, 2020 in St. Joseph County, Indiana at Instrument No. 2020-01844 |
| 38 | Knoxville Pointe Owner LLC<br><br>*(Released 7/18/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 10, 2019 in Peoria County, Illinois at Instrument No. 2019010870 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded September 27, 2019 in Peoria County, Illinois at Instrument No. 2019016277 |
| 39 | Edison Pointe Owner LLC<br><br>*(Released 8/29/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 24, 2019 in St. Joseph County, Indiana at Instrument No. 2019-14547 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 13, 2020 in St. Joseph County, Indiana at Instrument No. 2020-00951 |
| 40 | Trotwood Holdings LLC<br><br>*(Released 8/29/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 20, 2019 in Montgomery County, Ohio at Instrument No. 2019-00031874 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded November 1, 2019 in Montgomery County, Ohio at Instrument No. 2019-00060529 |

| | Defendant/Borrower | Security Instrument | Assignment |
|---|---|---|---|
| 41 | Winchester Village Owner LLC<br><br>*(Released 8/29/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 2, 2019 in Marion County, Indiana at Instrument No. A201900061145 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 21, 2020 in Marion County, Indiana at Instrument No. A202000007234 |
| 42 | Winchester Woods Owner LLC<br><br>*(Released 8/29/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on June 21, 2019 in Allen County, Indiana at Instrument No. 2019028656 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 10, 2020 in Allen County, Indiana at Instrument No. 2020001616 |
| 43 | Hickory Ridge Property Owner LLC<br><br>*(Released 9/7/2023)* | Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on July 16, 2019 in Lake County, Indiana at Instrument No. 2019-043077 | Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on January 24, 2020 in Lake County, Indiana at Instrument No. 2020-006201 |