# EXHIBIT 3.2



Phone 732.905.9400
1.877.4.madison (462.3476)
Fax 732.905.9420
1125 Ocean Avenue
Lakewood NJ 08701
www.madisontitle.com

August 8, 2019

**VIA OVERNIGHT MAIL**

Cadwalader, Wickersham & Taft LLP
200 Liberty Street,
New York, NY 10281
(212) 504-6039
Attn: Erich Weber

**Reference:**      MTAIN-133450-12
4656 Edwardian Circle
Indianapolis, IN 46254
Abington Owner LLC

Dear Sir or Madam,

Enclosed herewith please find the following recorded documents for the above referenced transaction.

( X ) Mortgage

If you have any questions, please do not hesitate to call me.

Very Truly Yours,

Rachel Green
rgreen@madisontitle.com
732.415.3375

Madison Title Agency, LLC

Enclosures

**A201900062477**

**07/05/2019 02:26 PM**
**KATHERINE SWEENEY BELL**
**MARION COUNTY IN RECORDER**
**FEE: $ 65.00**
**PAGES: 33**
**By: ER**

**ABINGTON OWNER LLC**, as mortgagor

(Borrower)

to

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**, as mortgagee

(Lender)

---

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

| | |
|---|---|
| Dated: | As of June 19, 2019 |
| Location: | 4656 Edwardian Circle |
| | Indianapolis, IN 46254 |
| County: | Marion |

PREPARED BY AND UPON
RECORDATION RETURN TO:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention: William P. McInerney, Esq.

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

**THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING,** (this "**Mortgage**") is made as June 19, 2019, by **ABINGTON OWNER LLC,** a Delaware limited liability company, having its principal place of business at 512 Seventh Avenue, 16th Floor, New York, New York 10018, as mortgagor ("**Borrower**") to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,** a banking association chartered under the laws of the United States of America, having an address at 383 Madison Avenue, New York, New York 10179, as mortgagee (together with its successors and assigns, "**Lender**").

## W I T N E S S E T H:

**WHEREAS,** this Mortgage is given to secure a loan (the "**Loan**") in the principal sum of $481,000,000 advanced pursuant to that certain Loan Agreement, dated as of the date hereof, between Borrower and the entities listed on <u>Schedule I</u> hereto ("**Other Borrowers**") and Lender (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower and Other Borrowers in favor of Lender (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Note**");

**WHEREAS,** Borrower desires to secure the payment of the Debt (as defined in the Loan Agreement) and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents (as herein defined); and

**WHEREAS,** this Mortgage is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Mortgage (the Loan Agreement, the Note, this Mortgage, and all other documents evidencing or securing the Debt (including all additional mortgages, deeds to secure debt and assignments of leases and rents) or executed or delivered in connection therewith, are hereinafter referred to collectively as the "**Loan Documents**").

**NOW THEREFORE,** in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Mortgage:

## ARTICLE I - GRANTS OF SECURITY

**Section 1.1    <u>Property Mortgaged</u>.**  Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender and its

successors and assigns the following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "**Property**"):

(a)     Land.  The real property described in Exhibit A attached hereto and made a part hereof (the "**Land**");

(b)     Additional Land.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Mortgage;

(c)     Improvements.     The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d)     Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)     Equipment.  All "goods" and "equipment," as such terms are defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**").  Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under leases except to the extent that Borrower shall have any right or interest therein;

(f)     Fixtures.  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler

systems, fire extinguishing apparatuses and equipment, heating, ventilating, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to leases except to the extent that Borrower shall have any right or interest therein;

(g)    Personal Property. All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of this Mortgage and all proceeds and products of the above;

(h)    Leases and Rents. All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder (to the extent such security deposits may be subjected to the lien of this Mortgage under all applicable Legal Requirements) and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(i)     Condemnation Awards. All awards or payments actually received by or payable to Borrower, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)     Insurance Proceeds. All insurance proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(k)     Tax Certiorari. All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(l)     Conversion. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

(m)     Rights. The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(n)     Agreements. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting or pertaining to any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, during the continuance of any Event of Default hereunder, to receive and collect any sums payable to Borrower thereunder to the extent assignable;

(o)     Trademarks. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property (to the extent assignable). Notwithstanding the foregoing, Trademarks shall not include any intangible property belonging to a tenant under the Leases;

(p)     Accounts. All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including, without limitation, the Lockbox Agreement and the Cash Management Account, together with all deposits or wire transfers made to such accounts, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof;

(q)     Letter of Credit. All letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Borrower now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1;

(r)     Tort Claims. All commercial tort claims Borrower now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1; and

(s)     Other Rights. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (r) above.

AND without limiting any of the other provisions of this Mortgage, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby.

Section 1.2     **Assignment of Rents**. Subject to the terms and provisions of the Loan Agreement, Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Loan Agreement, Cash Management Agreement and Section 7.1(h) of this Mortgage, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3     **Security Agreement**.  This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Mortgage, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment and the Personal Property and other property constituting the Property, whether now owned or hereafter acquired, to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**").  If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem reasonably necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender.  Borrower shall pay to Lender upon ten (10) Business Days written demand therefor, any and all reasonable and actual out-of-pocket expenses, including reasonable legal expenses and attorneys' fees, actually incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral

after the occurrence and during the continuance of an Event of Default.  Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower.  The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.  Borrower's (debtor's) principal place of business is as set forth on page one hereof and the address of Lender (secured party) is as set forth on page one hereof.

Section 1.4    **Fixture Filing**.    Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Mortgage, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

Section 1.5    **Pledges of Monies Held**.  Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender, including, without limitation, any sums deposited in the Lockbox Account, the Cash Management Account, the Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Mortgage or the Loan Agreement.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall pay to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Mortgage, shall perform the Other Obligations as set forth in this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release, except as set forth in Article X hereof.

## ARTICLE II - DEBT AND OBLIGATIONS SECURED

Section 2.1    **Debt**.  This Mortgage and the grants, assignments and transfers made in Article I are given for the purpose of securing the Debt.

Section 2.2    **Other Obligations**.  This Mortgage and the grants, assignments and transfers made in Article I are also given for the purpose of securing the following (the **"Other Obligations"**):

-6-

(a)    the performance of all other obligations of Borrower contained herein;

(b)    the performance of each obligation of Borrower and the Other Borrowers contained in the Loan Agreement and any other Loan Document; and

(c)    the performance of each obligation of Borrower and the Other Borrowers contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.3    **Debt and Other Obligations**.    Borrower's and the Other Borrowers' obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the **"Obligations."**

### ARTICLE III - BORROWER COVENANTS

Borrower covenants and agrees that:

Section 3.1    **Payment of Debt**. Borrower and the Other Borrowers will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

Section 3.2    **Incorporation by Reference**.    All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

Section 3.3    **Insurance**.    Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

Section 3.4    **Maintenance of Property**.    Borrower shall cause the Property to be maintained in a good and safe condition and repair.  The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for (a) normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements and (b) any alterations to the Improvements not prohibited by Section 5.1.21 of the Loan Agreement) without the consent of Lender, not to be unreasonably withheld, conditioned or delayed.  Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land, in all cases to the extent required by Borrower in accordance with the terms of the Loan Agreement.

Section 3.5    **Waste**.    Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security

of this Mortgage. Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 3.6    **Payment for Labor and Materials**. (a)  Subject to Borrower's right to contest in Section 3.6(b), Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances.

(b)    After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Mortgage or any of the other Loan Documents, (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Property or Borrower shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

Section 3.7    **Performance of Other Agreements**. Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

Section 3.8    **Change of Name, Identity or Structure**. Borrower will not cause or permit any change to be made in its name, identity (including its trade name or names), place of organization or formation (as set forth on Schedule I of the Loan Agreement) or Borrower's limited liability company or partnership or other structure (except as permitted pursuant to Section 5.2.10 of the Loan Agreement); provided, that with respect to a change of name only, Borrower shall be permitted to make such change if Borrower shall have first notified Lender in writing of such change at least thirty (30) days prior to the effective date of such change, and shall have first taken all action required by Lender for the purpose of perfecting or protecting the lien and security interests of Lender pursuant to the Loan Agreement and the other Loan Documents. Borrower shall not change its organizational structure or place of organization without first obtaining the prior written consent of Lender, which consent may be given or

denied in Lender's sole discretion and delivery of a Rating Agency Confirmation from the Approved Rating Agencies. Upon Lender's request, Borrower shall, at Borrower's sole cost and expense, execute and deliver additional security agreements and other instruments which may be necessary to effectively evidence or perfect Lender's security interest in the Property as a result of such change of principal place of business or place of organization approved in accordance with the foregoing sentence. Borrower's principal place of business and chief executive office, and the place where Borrower keeps its books and records, including recorded data of any kind or nature, regardless of the medium of recording, including software, writings, plans, specifications and schematics, has been for the preceding four months (or, if less, the entire period of the existence of Borrower) and will continue to be the address of Borrower set forth at the introductory paragraph of this Mortgage. Borrower shall not change its organizational identification number. If Borrower does not now have an organizational identification number and later obtains one, Borrower promptly shall notify Lender of such organizational identification number.

Section 3.9    Title.  Borrower has good, marketable and insurable fee simple title to the real property comprising part of the Property and good title to the balance of such Property, free and clear of all Liens (as defined in the Loan Agreement) whatsoever except the Permitted Encumbrances (as defined in the Loan Agreement), such other Liens as are permitted pursuant to the Loan Documents and the Liens created by the Loan Documents. The Permitted Encumbrances in the aggregate do not materially and adversely affect the value, operation or use of the Property or Borrower's ability to repay the Loan. This Mortgage, when properly recorded in the appropriate records, together with any Uniform Commercial Code financing statements required to be filed in connection therewith, will create (a) a valid, perfected first priority lien on the Property, subject only to Permitted Encumbrances and the Liens created by the Loan Documents and (b) perfected security interests in and to, and perfected collateral assignments of, all personalty (including the Leases), all in accordance with the terms thereof, in each case subject only to any applicable Permitted Encumbrances, such other Liens as are permitted pursuant to the Loan Documents and the Liens created by the Loan Documents. There are no claims for payment for work, labor or materials affecting the Property which are or may become a Lien prior to, or of equal priority with, the Liens created by the Loan Documents.

Section 3.10    Letter of Credit Rights.  If Borrower is at any time a beneficiary under a letter of credit relating to the properties, rights, titles and interests referenced in Section 1.1 of this Mortgage now or hereafter issued in favor of Borrower, Borrower shall promptly notify Lender thereof and, at the request and option of Lender, Borrower shall, pursuant to an agreement in form and substance satisfactory to Lender, either (i) arrange for the issuer and any confirmer of such letter of credit to consent to an assignment to Lender of the proceeds of any drawing under the letter of credit or (ii) arrange for Lender to become the transferee beneficiary of the letter of credit, with Lender agreeing, in each case that the proceeds of any drawing under the letter of credit are to be applied as provided in Section 7.2 of this Mortgage.

ARTICLE IV - OBLIGATIONS AND RELIANCES

Section 4.1    Relationship of Borrower and Lender.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Loan Agreement, the

Note, this Mortgage and the other Loan Documents shall be construed so as to deem the relationship between Borrower and the Other Borrowers and Lender to be other than that of debtor and creditor.

        **Section 4.2**   **No Reliance on Lender**.   The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property.  Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

        **Section 4.3**   **No Lender Obligations**.  (a) Notwithstanding the provisions of Subsections 1.1(h) and (n) or Section 1.2, Lender is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

        (b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

        **Section 4.4**   **Reliance**.    Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Mortgage and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 4.1 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Mortgage in the absence of the warranties and representations as set forth in Section 4.1 of the Loan Agreement.

## ARTICLE V - FURTHER ASSURANCES

        **Section 5.1**   **Recording of Mortgage, Etc.**   Borrower forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and each instrument of further assurance required to be delivered herewith or pursuant to the terms of the Loan Agreement to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property.  Borrower will pay all taxes, filing, registration or recording fees, and all reasonable out-of-pocket expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Mortgage, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents,

and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

Section 5.2    **Further Acts, Etc.**    Borrower will, at the reasonable out-of-pocket cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Legal Requirements, provided, however, that such actions shall not increase the obligations of Borrower under the Loan Documents or decrease Borrower's rights thereunder other than to a de minimus extent. Borrower, within ten (10) Business Days demand therefor, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Property. Such financing statements may describe as the collateral covered thereby "all assets of the debtor, whether now owned or hereafter acquired" or words to that effect. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation, such rights and remedies available to Lender pursuant to this Section 5.2. Notwithstanding the immediately foregoing sentence, Lender shall not execute any documents as attorney-in-fact for Borrower unless Borrower shall have failed or refused to execute the same within five (5) Business Days of Lender's request therefor.

Section 5.3    **Changes in Tax, Debt, Credit and Documentary Stamp Laws.** (a) If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury then Lender shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable without penalty, premium, Breakage Costs or Spread Maintenance Payment, if any, under Section 2.4 of the Loan Agreement.

(b)    Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option,

by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable without penalty, premium, Breakage Costs or Spread Maintenance Payment, if any, under Section 2.4 of the Loan Agreement.

(c)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Mortgage, or any of the other Loan Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

**Section 5.4    Severing of Mortgage**.  The provisions of Section 8.2(c) of the Loan Agreement are hereby incorporated by reference herein.

**Section 5.5    Replacement Documents**.  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower and the Other Borrowers will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE VI - DUE ON SALE/ENCUMBRANCE

**Section 6.1    Lender Reliance**.  Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations.  Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Lender can recover the Debt by a sale of the Property.

**Section 6.2    No Sale/Encumbrance**.  Neither Borrower nor any Restricted Party shall Transfer the Property or any part thereof or any interest therein or permit or suffer the Property or any part thereof or any interest therein to be Transferred other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE VII - RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1    Remedies**.  Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender, subject to, in all cases, the terms of the Loan Agreement:

(a)     declare the entire unpaid Debt to be immediately due and payable;

(b)     institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)     sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

(g)     apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or any indemnitor with respect to the Loan or of any Person liable for the payment of the Debt;

(h)     the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof upon notice to each such lessee for the payment to Lender of all Rents due under its lease; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents,

the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)       exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment, the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Borrower at its expense to assemble the Fixtures, the Equipment and the Personal Property and make it available to Lender at the Land.  Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment and the Personal Property sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)       apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Mortgage or any other Loan Document to the payment of the following items in any order in its sole discretion: (i) Taxes and Other Charges; (ii) Insurance Premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note; and (v) all other sums payable pursuant to the Note, the Loan Agreement, this Mortgage and the other Loan Documents, including without limitation advances made by Lender pursuant to the terms of this Mortgage;

(k)       pursue such other remedies as Lender may have under applicable law; or

(l)       apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as stated in the Loan Agreement.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Section 7.2    **Application of Proceeds**.  Upon the occurrence and during the continuance of an Event of Default, the purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Lender pursuant to the Note, this Mortgage or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

**Section 7.3**   **Right to Cure Defaults.**   Upon the occurrence and during the continuance of any Event of Default, or if Borrower fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Borrower (except as required hereunder or under the Loan Agreement) and without releasing Borrower from any obligation hereunder, make any payment or do any act required of Borrower hereunder in such manner and to such extent as Lender may deem necessary to protect the security hereof.   Upon the occurrence and during the continuance of an Event of Default, Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Mortgage or collect the Debt, and the out-of-pocket cost and expense of Lender (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon ten (10) Business Days written demand therefor from Lender to Borrower.   All such out-of-pocket costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate specified in the Loan Agreement, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender.   All such out-of-pocket costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

**Section 7.4**   **Actions and Proceedings.**   Subject to the terms and provisions of the Loan Agreement, and upon the occurrence and during the continuance of an Event of Default, Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

**Section 7.5**   **Recovery of Sums Required To Be Paid.**   Upon the occurrence and during the continuance of an Event of Default, Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for an Event of Default by Borrower existing at the time such earlier action was commenced.

**Section 7.6**   **Examination of Books and Records**.   At reasonable times during normal business hours and upon reasonable notice, Lender, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Borrower in accordance with the Loan Agreement.

**Section 7.7**   **Other Rights, Etc.**   (a) The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or any indemnitor with respect to the Loan to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or

any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the other Loan Documents.

(b)     It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured until such time as Lender becomes a mortgagee in possession or if title to the Property has transferred to Lender or its designee pursuant to a foreclosure or assignment in lieu of foreclosure.  Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)     Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect.  Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Mortgage.  The rights of Lender under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.  Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 7.8**     **Right to Release Any Portion of the Property**.  Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder.  This Mortgage shall continue as a lien and security interest in the remaining portion of the Property.

**Section 7.9**     **Intentionally Omitted**.

**Section 7.10**   **Recourse and Choice of Remedies**.  Notwithstanding any other provision of this Mortgage or the Loan Agreement, including, without limitation, Section 9.3 of the Loan Agreement, to the fullest extent permitted by applicable law, Lender and other Indemnified Parties (as hereinafter defined) are entitled to enforce the obligations of Borrower contained in Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Lender commences a foreclosure action against the Property, Lender is entitled to pursue a deficiency judgment with respect to such obligations against Borrower. The provisions of Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Mortgage or the other Loan Documents, and Borrower is fully and personally liable for the

obligations pursuant to Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement. The liability of Borrower pursuant to Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Lender from foreclosing or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Mortgage and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower pursuant to Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions. In addition, Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in Article 9 herein.

**Section 7.11**    **Right of Entry**.    Upon reasonable prior written notice to Borrower, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times during business hours, subject to the rights of tenants under Leases.

## ARTICLE VIII - PREPAYMENT

**Section 8.1**    **Prepayment**.    The Debt may not be prepaid in whole or in part except in accordance with the express terms and conditions of the Loan Agreement.

## ARTICLE IX - INDEMNIFICATION

**Section 9.1**    **General Indemnification**.    Borrower shall, at its sole cost and expense, protect (with legal counsel reasonably acceptable to Lender), defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages (except consequential, punitive or special damages unless actually incurred and payable to a third party), losses, reasonable out-of-pocket costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, foreseeable and unforeseeable consequential damages actually incurred and payable to a third party, of whatever kind or nature (including but not limited to reasonable and actual attorneys' fees and other costs of defense) (collectively, the "**Losses**") imposed upon or actually incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) ownership of this Mortgage, the Property or any interest therein or receipt of any Rents; (b) any amendment to, or restructuring of, the Debt, the Note, the Loan Agreement, this Mortgage, or any other Loan Documents; (c) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Mortgage, the Loan Agreement, the Note or any of the other Loan Documents, whether or not suit is filed in connection with same, or in connection with Borrower, any guarantor or any indemnitor and/or any partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (d) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any use, nonuse or condition in, on or about the Property or any part thereof or on

the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (f) any failure on the part of Borrower to perform or be in compliance with any of the terms of this Mortgage, the Note, the Loan Agreement or any of the other Loan Documents; (g) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (h) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (i) any failure of the Property to be in compliance with any Legal Requirements excluding any claims to the extent incurred by reason of fraud, illegal acts, gross negligence or willful misconduct of Lender or any of its agents as determined by a court of competent jurisdiction; (j) the enforcement by any Indemnified Party of the provisions of this <u>Article 9</u>; (k) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (l) the payment of any commission, charge or brokerage fee to anyone claiming through Borrower which may be payable in connection with the funding of the Loan; or (m) any misrepresentation made by Borrower in this Mortgage or any other Loan Document. Any amounts payable to Lender by reason of the application of this <u>Section 9.1</u> shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Lender until paid.

**Section 9.2** <u>**Mortgage and/or Intangible Tax**</u>. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or actually incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Mortgage, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes. Borrower hereby agrees that, in the event that it is determined that any documentary stamp taxes or intangible personal property taxes are due hereon or on any mortgage or promissory note executed in connection herewith (including, without limitation, the Note), Borrower shall indemnify and hold harmless the Indemnified Parties for all such documentary stamp and/or intangible taxes, including all penalties and interest assessed or charged in connection therewith.

**Section 9.3** <u>**ERISA Indemnification**</u>. Borrower shall, at a reasonable sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including, without limitation, reasonable and actual attorneys' fees and costs actually incurred in the investigation, defense, and settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's reasonable discretion) that Lender may incur, as a result of a breach of any of the representations made under Section 4.1.9 of the Loan Agreement or a breach of any negative covenants contained in Section 5.2.9 of the Loan Agreement.

**Section 9.4** <u>**Duty to Defend; Attorneys' Fees and Other Fees and Expenses**</u>. Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and

other professionals approved by the Indemnified Parties.  Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Borrower and any Indemnified Party and Borrower and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or additional to those available to Borrower, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, provided that no compromise or settlement shall be entered without Borrower's consent, which consent shall not be unreasonably withheld.  Upon demand, Borrower shall pay or, in the reasonable discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable out-of-pocket fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

      **Section 9.5**    **Environmental Indemnity**.  Simultaneously with this Mortgage, Borrower, the Other Borrowers and Guarantor have executed that certain Environmental Indemnity.  The obligations of Borrower, the Other Borrowers and Guarantor under the Environmental Indemnity are not part of the Debt and are not secured by this Mortgage.

## ARTICLE X - WAIVERS

      **Section 10.1**    **Waiver of Counterclaim**.  To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Mortgage, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

      **Section 10.2**    **Marshalling and Other Matters**.  To the extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein.  Further, to the extent permitted by law, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

      **Section 10.3**    **Waiver of Notice**.  To the extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Lender to Borrower.

      **Section 10.4**    **Waiver of Statute of Limitations**.  To the extent permitted by applicable law, Borrower hereby expressly waives and releases to the fullest extent permitted by

law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

**Section 10.5    <u>Survival</u>**.  The indemnifications made pursuant to <u>Sections 9.1</u>, <u>9.2</u> and <u>9.3</u> herein shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by any of the following:  any satisfaction or other termination of this Mortgage, any assignment or other transfer of all or any portion of this Mortgage or Lender's interest in the Property (but, in such case, shall benefit both Indemnified Parties and any assignee or transferee), any exercise of Lender's rights and remedies pursuant hereto including, but not limited to, foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any transfer of all or any portion of the Property (whether by Borrower or by Lender following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, and any act or omission that might otherwise be construed as a release or discharge of Borrower from the obligations pursuant hereto.  Notwithstanding the provisions of this Mortgage to the contrary, (a) the liabilities and obligations of Borrower shall not apply to the extent such liability and obligations arose after any Indemnified Party or its nominee acquired title to the Property, whether by foreclosure, exercise of a power of sale, deed in lieu of foreclosure or otherwise and (b) the liabilities and obligations of Borrower in <u>Sections 9.1(a)</u> and <u>9.1(m)</u> shall not survive indefeasible repayment of the Loan.

**Section 10.6  <u>Waiver of Jury Trial</u>.  BORROWER AND LENDER HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  EITHER PARTY LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER PARTY.**

## ARTICLE XI - EXCULPATION

The provisions of Section 9.3 of the Loan Agreement are hereby incorporated by reference into this Mortgage to the same extent and with the same force as if fully set forth herein.

## ARTICLE XII - NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 10.6 of the Loan Agreement.

## ARTICLE XIII- APPLICABLE LAW

**Section 13.1** **Governing Law.** This Mortgage shall be governed in accordance with the terms and provisions of Section 10.3 of the Loan Agreement; provided that the provisions of this Mortgage regarding the creation, perfection and enforcement of the Liens and security interests herein granted shall be governed by and construed under the laws of the State in which the Property is located.

**Section 13.2** **Usury Laws.** Notwithstanding anything to the contrary, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Lender shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower.

**Section 13.3** **Provisions Subject to Applicable Law.** All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of the term shall not be affected thereby.

## ARTICLE XIV - DEFINITIONS

All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "**Borrower**" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "**Lender**" shall mean "Lender and any subsequent holder of the Note," the word "**Note**" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees**", "**legal fees**" and "**counsel fees**" shall include any and all reasonable and actual out-of-pocket attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, reasonable fees and disbursements at the pre-trial, trial and appellate levels actually incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE XV - MISCELLANEOUS PROVISIONS

**Section 15.1    No Oral Change**.  This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 15.2    Successors and Assigns**.  This Mortgage shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**Section 15.3    Inapplicable Provisions**.  If any term, covenant or condition of the Loan Agreement, the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Mortgage shall be construed without such provision.

**Section 15.4    Headings, Etc.**  The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 15.5    Number and Gender**.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 15.6    Subrogation**.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

**Section 15.7    Entire Agreement**.  The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto.  Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and the other Loan Documents, there are not, and were not, and no persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

**Section 15.8    Limitation on Lender's Responsibility**. No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger except to the extent caused by the gross negligence or willful misconduct of Lender or its agents as determined by a court of competent jurisdiction in a final, non-appealable judgment. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" unless Lender elects to be a "mortgagee in possession".

**Section 15.9    Cross Collateralization and Cross Default**.    Borrower acknowledges that in order to induce Lender to make the Loan, (i) this Mortgage and (ii) each other mortgage, deed of trust or deed to secure debt, with respect to each other Individual Property (as such term is defined in the Loan Agreement) (collectively, the "**Other Mortgages**"), are hereby cross-collateralized and cross-defaulted as provided herein.    In accordance with the terms and provisions of the Loan Agreement, without limitation of any other right or remedy provided to Lender in this Mortgage or in any of the other Loan Documents, Borrower agrees that this Mortgage and the Other Mortgages are and will be cross-collateralized and cross-defaulted with each other so that (i) an Event of Default by Borrower under this Mortgage shall constitute an Event of Default under each of the Other Mortgages; (ii) an Event of Default under the Note, the Loan Agreement or this Mortgage shall constitute an Event of Default under this Mortgage and each of the Other Mortgages; and (iii) this Mortgage and each of the Other Mortgages shall constitute security for the Note as if a single blanket lien were placed on all of the Properties (as such term is defined in the Loan Agreement) as security for the Note.

# ARTICLE XVI - STATE-SPECIFIC PROVISIONS

**Section 16.1    Principles of Construction**.  In the event of any inconsistencies between the terms and conditions of this Article 16 and the terms and conditions of this Mortgage, the terms and conditions of this Article 16 shall control and be binding.

**Section 16.2    Maturity**. The obligations under the Note have a maturity date to occur on or before August 9, 2024.

**Section 16.3    Future Advances**.  This Mortgage is intended to secure future advances made under the Note, hereunder, the Loan Agreement and/or under the other Loan Documents, and all modifications, extensions and renewals of any of the foregoing, with the same priority as if made on the day of execution of this Mortgage, up to a maximum amount of $481,000,000, pursuant to Indiana Code § 32-29-1-10.  The maximum amount stated in the preceding sentence does not affect or alter the principal amount that Borrower is entitled to borrow under the Note and/or under any of the Loan Documents, and may be in excess of permitted borrowing to cover expenses, accrued interest, costs of collection and the like. Nothing in this provision requires Lender to make any future advances, and Borrower represents that Lender has not promised to do so.  Pursuant to Ind. Code 32-29-1-10, the lien of this Mortgage with respect to any future advances, modifications, extensions or renewals referred to

in this Mortgage and made from time to time shall have the same priority to which this Mortgage would otherwise be entitled as of the date this Mortgage is executed and recorded without regard to the fact that any such future advance, modification, extension, or renewal may occur after this Mortgage is executed.

        **Section 16.4**   **Financing Statements**.   Lender is hereby authorized to execute and file on behalf of Borrower, without the signature of Borrower, any financing statement deemed necessary or appropriate by Lender in order to further evidence, perfect or continue the security interest granted herein, or in any other Loan Document.

        **Section 16.5**   **Collection Cost Recovery**.   This Mortgage shall secure, and Lender shall be entitled to collect from Borrower and add to the obligations incurred by Borrower all costs and expenses of remedial actions by Lender to the extent provided for and contemplated by this Mortgage, the Loan Agreement and the Environmental Indemnity.

        **Section 16.6**   **Non-Waiver**. Nothing in this Mortgage is intended to constitute a waiver of deficiency under Indiana Code §32-29-7-5 nor a consent by the Lender to such a waiver.

        **Section 16.7**   **Receiver**.   Borrower agrees that Lender shall be entitled to the appointment of a receiver as a matter of right in accordance with Indiana Code § 32-30-5-1(4)(C) in any action by Lender seeking to enforce this Mortgage, including without limitation, by foreclosure.

        **Section 16.8**   **No Joint Venture**.   Nothing contained in this Mortgage or any other Loan Document is intended to create a partnership, joint venture or association between Borrower and Lender or in any way make Lender a co-principal with Borrower with reference to the Property, and any inferences to the contrary are hereby expressly negated.

        **Section 16.9**   **Subrogation; Waiver**.   If any of the proceeds of the Note are utilized to pay off outstanding liens against all or any part of the Property, Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any such outstanding liens and debts, however remote, regardless of whether said liens or debts are acquired by Lender by assignment, or are released by the holder thereof upon payment. Borrower, any guarantors and any endorsers hereof or of the Note jointly and severally waive absolutely and unconditionally any and all rights of subrogation to the rights of Lender hereunder or under any Loan Document. All guaranties and endorsements of any Loan Document shall contain a waiver of subrogation approved by Lender.

        **Section 16.10** **Fixture Filing**. It is intended that as to the fixtures that are or are to become part of the Property hereby mortgaged, this Mortgage shall be effective as a continuously perfected financing statement filed as a fixture filing from the date of the filing of this Mortgage for record with the office of the recorder of the county in which the land is located, pursuant to Ind. Code 26-1-9.1-502 and Ind. Code 26-1-9.1-515. This information is provided in order that this Mortgage shall comply with the requirements of the Uniform Commercial Code, for a mortgage instrument to be filed as a continually perfected financing statement. This Mortgage covers goods which are or are to become fixtures.

(a)     Name of Borrower (debtor): Abington Owner LLC

(b)     Address of Borrower (debtor): 512 Seventh Avenue, 16th Floor, New York, New York 10018

(c)     Type of Organization: Limited liability company

(d)     State of Organization: Delaware

(e)     Name of Record Owner: Abington Owner LLC

(f)     Address of Record Owner: 512 Seventh Avenue, 16th Floor, New York, New York 10018

(g)     Name of Lender (secured party): JPMorgan Chase Bank, National Association

(h)     Address of Lender (secured party): 383 Madison Avenue, New York, New York 10179

(i)     The fee simple interest in the Land is owned by Abington Owner LLC

Borrower hereby acknowledges receipt of a copy of this Mortgage in compliance with Lender's obligation to deliver a copy of the fixture filing to Borrower pursuant to Section 9.1-502(f) of the Uniform Commercial Code.

**Section 16.11 <u>Power of Attorney</u>**.  In no event shall any power of attorney granted herein give to Lender the right or the power of attorney or authority as attorney on behalf of Borrower to: (a) appear in any court of record and waive the service of process in an action to enforce the payment of money claimed to be due on or under this Mortgage; (b) confess judgment on this Mortgage for a sum of money to be ascertained in a manner other than by action of the court upon a hearing after notice to Borrower; or (c) release errors and rights of appeal from a judgment rendered for the matters described in subclause (a) or (b) hereof or to consent to the issue of execution on the judgment or the matters described in subclause (a) or (b) hereof.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, this Mortgage has been executed by Borrower as of the day and year first above written.

BORROWER:

ABINGTON OWNER LLC, a Delaware limited liability company

By: _____
Name: Meyer Chetrit
Title: Authorized Signatory

NOTARY ACKNOWLEDGMENT

STATE OF NEW YORK    )

                                 : ss.:

COUNTY OF NEW YORK )

On the _3_ day of _June_____, 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared Meyer Chetrit, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

LOIS HUTTER SANCHEZ
Notary Public, State of New York
No. 01HU5042516
Qualified in Queens County
Commission Expires April 24, 20__

This instrument was prepared by:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention: William McInerney, Esq.

I affirm under the penalties of perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. William McInerney, Esq.

## <u>SCHEDULE I</u>

## **OTHER BORROWERS**

1.    Barrington Park Owner LLC, a Delaware limited liability company

2.    Chateau Glen Oaks Owner LLC, a Delaware limited liability company

3.    Manchester Park Owner LLC, a Delaware limited liability company

4.    Vista Place Owner LLC, a Delaware limited liability company

5.    Atwood Owner LLC, a Delaware limited liability company

6.    Colonial Forest Owner LLC, a Delaware limited liability company

7.    Davis Gardens Owner LLC, a Delaware limited liability company

8.    Northwood Owner LLC, a Delaware limited liability company

9.    University Courtyard Owner LLC, a Delaware limited liability company

10.    Knoxville Pointe Owner LLC, a Delaware limited liability company

11.    Cheswick Village Owner LLC, a Delaware limited liability company

12.    Colfax Owner LLC, a Delaware limited liability company

13.    Edison Pointe Owner LLC, a Delaware limited liability company

14.    Hickory Ridge Property Owner LLC, a Delaware limited liability company

15.    Winchester Village Owner LLC, a Delaware limited liability company

16.    Winchester Woods Owner LLC, a Delaware limited liability company

17.    Chateau Royale Owner LLC, a Delaware limited liability company

18.    East Gate Owner LLC, a Delaware limited liability company

19.    Hallmark Gardens Owner LLC, a Delaware limited liability company

20.    North Gate Owner LLC, a Delaware limited liability company

21.    Pebble Creek Owner LLC, a Delaware limited liability company

22.    Southwind Owner LLC, a Delaware limited liability company

23.    Advantages Owner LLC, a Delaware limited liability company

24. Timber Ridge Owner LLC, a Delaware limited liability company

25. Caleb's Creek Holdings LLC, an Ohio limited liability company

26. Fox Chase Apartments 1 LLC, a Delaware limited liability company

27. Galloway Apartments LLC, an Ohio limited liability company

28. ROCO – High Point in the Park LLC, a Delaware limited liability company

29. ROCO – Hilliard, LLC, a Delaware limited liability company

30. Trotwood Holdings LLC, an Ohio limited liability company

31. ROCO – Loganberry, LLC, an Ohio limited liability company

32. ROCO – Parkside, LLC, an Ohio limited liability company

33. Quail Creek Investments LLC, a Delaware limited liability company

34. Steeplechase Advisers II LLC, a Delaware limited liability company

35. Lakes at Ridgeway Owner LLC, a Delaware limited liability company

36. Moriah Owner LLC, a Delaware limited liability company

37. Stonegate Owner LLC, a Delaware limited liability company

38. Arlington Owner LLC, a Delaware limited liability company

39. Forest View Owner LLC, a Delaware limited liability company

40. Riverside Ranch Owner LLC, a Delaware limited liability company

41. Shadow Creek Owner LLC, a Delaware limited liability company

42. University Hill Owner LLC, a Delaware limited liability company

## EXHIBIT A

## LEGAL DESCRIPTION

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Indianapolis, County of Marion, State of Indiana.

TRACT 1:

Part of the Southeast Quarter of Section 7 and part of the Northeast Quarter of Section 18, Township 16 North, Range 3 East in Marion County, State of Indiana, more particularly described                                    as                                    follows:

Commencing at the Northeast corner of the Northeast Quarter of Section 18, Township 16 North, Range 3 East; thence North 89 degrees 55 minutes 33 seconds West along the North line thereof 457.126 feet to the Southwest corner of Whitehall Commons, Section One as per plat thereof recorded as Instrument #72-43201 in the Office of the Recorder of Marion County, Indiana; said point being the POINT OF BEGINNING of the real estate described herein: thence North 00 degrees 14 minutes 22 seconds West along the West line of the aforementioned Whitehall Commons, Section One 730.000 feet to a point in the centerline of West 47th Street as granted in Grant of Right-of-Way recorded as Instrument #73-10531 in the Office of the Recorder of Marion County, Indiana; (the following 3 calls being on and along said centerline) thence South 89 degrees 45 minutes 38 seconds West 100.550 feet to the POINT OF CURVATURE of a curve concave northerly, having a radius of 514.38 feet and a central angle of 28 degrees 22 minutes 00 seconds; thence Westerly along the arc of said curve a distance of 254.665 feet to the POINT OF TANGENCY; said arc being subtended by a chord having a bearing of North 76 degrees 03 minutes 22 seconds West and a distance of 252.072 feet; thence North 61 degrees 52 minutes 22 seconds West 78.439 feet; thence South 18 degrees 49 minutes 59 seconds West 35.466 feet, which point is on the South boundary of West 47th Street; thence continuing South 18 degrees 49 minutes 59 seconds West 48.075 feet; thence Southerly 116.064 feet along an arc to the left and having a radius of 350.000 feet and subtended by a long chord having a bearing of South 09 degrees 19 minutes 58 seconds West and a length of 115.533 feet; thence South 00 degrees 10 minutes 01 seconds East 718.733 feet; thence Southeasterly 227.728 feet along an arc to the left and having a radius of 263.074 feet and subtended by a long chord having a bearing of South 24 degrees 57 minutes 57 seconds East and a length of 220.684 feet; thence Southeasterly 67.049 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of South 26 degrees 22 minutes 04 seconds East and a length of 65.509 feet; thence Southeasterly 104.700 feet along an arc to the left, and having a radius of 70.000 feet and subtended by a long chord having a bearing of South 49 degrees 23 minutes 48 seconds East and a length of 95.210 feet; thence Southeasterly 30.998 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of South 82 degrees 22 minutes 43 seconds East and a length of 30.845 feet; thence South 49 degrees 45 minutes 53 seconds East 34.800 feet; thence North 40 degrees 14 minutes 07 seconds East 70.000 feet; thence North 49 degrees 45 minutes 53 seconds West 34.800 feet; thence Northwesterly 30.998 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of North 17 degrees 09 minutes 03 seconds West and a length of 30.845 feet;

thence Northwesterly 62.973 feet along an arc to the left and having a radius of 70.000 feet and subtended by a long chord having a bearing of North 33 degrees 03 minutes 20 seconds West and a length of 60.871 feet; thence North 40 degrees 14 minutes 07 seconds East a distance of 360.742 feet to the POINT OF BEGINNING.

## TRACT 2:

A part of the Southeast Quarter of Section 7 and a part of the Northeast Quarter of Section 18, of Township 16 North, Range 3 East in Marion County, State of Indiana, more particularly described as follows:

Commencing at the Southwest corner of the East half of the Southeast Quarter of said Section 7, thence North 00010'01" West 1040.445 feet along the West line of said Quarter Section, to a point in the centerline of West 47th Street as per Grant of Right-of-Way recorded as Instrument #73-10531 in the Office of the Recorder of Marion County, Indiana, said point being the POINT OF BEGINNING of this description; thence South 79°34'48" East 6.589 feet along said centerline; thence Easterly 178.629 feet along an arc to the right having a radius of 591.41 feet and subtended by a long chord having a bearing of South 70°31'32" East and a length of 177.951 feet along said centerline; thence South 61°52'22" East 326.161 feet along said centerline; thence South 18°49'59" West 35.466 feet, which point is on the South boundary of West 47th Street; thence continuing South 18°49'59" West 48.075 feet; thence Southerly 116.064 feet along an arc to the left and having a radius of 350.000 feet and subtended by a long chord having a bearing of South 09°19'58" West and a length of 115.533 feet; thence South 00°10'01" East 718.733 feet; thence Southeasterly 227.728 feel along an arc to the left and having a radius of 263.074 feet and subtended by a long chord having a bearing of South 24°5757" East and a length of 220.684 feet; thence Southeasterly 67.049 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of South 26°22'04" East and a length of 65.509 feet; thence Southeasterly 47.939 feet along an arc to the left and having a radius of 70.000 feet and subtended by a long chord having a bearing of South 26°10'02" East and a length of 47.007 feet; thence South 40°14'07" West 434.867 feet; thence South 55°24'51" West 120.000 feet to a point on the L.A. R/W and A.C.L of Interstate Highway 65 as per I.S.H.C. plans for Project No. 65-3(28) 120, 1961; (the following 2 calls being on and along said right-of-way) thence North 34°35'09" West 952.081 feet; thence Northwesterly 223.503 feet along an arc to the left and having a radius of 2546.830 feet and subtended by a long chord having a bearing of North 37°06'00" West and a length of 223.432 feet to a point on the Easterly right-of-way line of Georgetown Road as shown on Street Plans Project No. M.T.A C.P.68-28; (the following 4 calls being along said right-of-way) thence North 22°07'06" East 147.709 feet; thence North 07°32'15" East 600.750 feet; thence North 10°24'01" East 175.910 feet; thence Northeasterly 21.942 feet along an arc to the left and having a radius of 1984.860 feet and subtended by a long chord having a bearing of North 10°05'01" East a length of 21.942 feet to a point in the centerline of the aforesaid West 47th Street, as per Grant of Right-Of-Way recorded as Instrument # 73-10530 in the Office of the Recorder of Marion County, Indiana; thence South 79°10'01" East 329.498 feet along said centerline to the POINT OF BEGINNING.

Less and except land lying within West 47th Street.

NOTE: Being Parcel No. 49-06-07-124-003.000-600, 49-06-07-124-001.000-600, 49-06-07-124-002.000-600 and 49-06-18-106-001.000-600, of the City of Indianapolis, County of Marion.

**ABINGTON OWNER LLC**, as mortgagor

(Borrower)

to

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**, as mortgagee

(Lender)

---

**MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

---

| | |
|---|---|
| Dated: | As of June 19, 2019 |
| Location: | 4656 Edwardian Circle |
| | Indianapolis, IN 46254 |
| County: | Marion |

PREPARED BY AND UPON
RECORDATION RETURN TO:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention:  William P. McInerney, Esq.

<u>**MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,**</u>
<u>**SECURITY AGREEMENT AND FIXTURE FILING**</u>

      **THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING,** (this "**Mortgage**") is made as June 19, 2019, by **ABINGTON OWNER LLC,** a Delaware limited liability company, having its principal place of business at 512 Seventh Avenue, 16th Floor, New York, New York 10018, as mortgagor ("**Borrower**") to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,** a banking association chartered under the laws of the United States of America, having an address at 383 Madison Avenue, New York, New York 10179, as mortgagee (together with its successors and assigns, "**Lender**").

<u>**W I T N E S S E T H:**</u>

      **WHEREAS,** this Mortgage is given to secure a loan (the "**Loan**") in the principal sum of $481,000,000 advanced pursuant to that certain Loan Agreement, dated as of the date hereof, between Borrower and the entities listed on <u>Schedule I</u> hereto ("**Other Borrowers**") and Lender (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower and Other Borrowers in favor of Lender (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Note**");

      **WHEREAS,** Borrower desires to secure the payment of the Debt (as defined in the Loan Agreement) and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents (as herein defined); and

      **WHEREAS,** this Mortgage is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Mortgage (the Loan Agreement, the Note, this Mortgage, and all other documents evidencing or securing the Debt (including all additional mortgages, deeds to secure debt and assignments of leases and rents) or executed or delivered in connection therewith, are hereinafter referred to collectively as the "**Loan Documents**").

      **NOW THEREFORE,** in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Mortgage:

**ARTICLE I - GRANTS OF SECURITY**

      **Section 1.1**   <u>**Property Mortgaged**</u>.   Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender and its

successors and assigns the following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "**Property**"):

       (a)   <u>Land</u>.  The real property described in <u>Exhibit A</u> attached hereto and made a part hereof (the "**Land**");

       (b)   <u>Additional Land</u>.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Mortgage;

       (c)   <u>Improvements</u>.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

       (d)   <u>Easements</u>.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

       (e)   <u>Equipment</u>.  All "goods" and "equipment," as such terms are defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**").  Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under leases except to the extent that Borrower shall have any right or interest therein;

       (f)   <u>Fixtures</u>.  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler

systems, fire extinguishing apparatuses and equipment, heating, ventilating, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to leases except to the extent that Borrower shall have any right or interest therein;

(g)    *Personal Property.*  All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of this Mortgage and all proceeds and products of the above;

(h)    *Leases and Rents.*  All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder (to the extent such security deposits may be subjected to the lien of this Mortgage under all applicable Legal Requirements) and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

-3-

(i)    <u>Condemnation Awards</u>.  All awards or payments actually received by or payable to Borrower, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)    <u>Insurance Proceeds</u>.  All insurance proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(k)    <u>Tax Certiorari</u>.  All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(l)    <u>Conversion</u>.  All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

(m)    <u>Rights</u>.  The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(n)    <u>Agreements</u>.  All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting or pertaining to any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, during the continuance of any Event of Default hereunder, to receive and collect any sums payable to Borrower thereunder to the extent assignable;

(o)    <u>Trademarks</u>.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property (to the extent assignable). Notwithstanding the foregoing, Trademarks shall not include any intangible property belonging to a tenant under the Leases;

(p)    <u>Accounts</u>.  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including, without limitation, the Lockbox Agreement and the Cash Management Account, together with all deposits or wire transfers made to such accounts, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof;

(q)    <u>Letter of Credit</u>.  All letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Borrower now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this <u>Section 1.1</u>;

-4-

(r)    <u>Tort Claims</u>.  All commercial tort claims Borrower now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this <u>Section 1.1</u>; and

(s)    <u>Other Rights</u>.  Any and all other rights of Borrower in and to the items set forth in <u>Subsections (a)</u> through <u>(r)</u> above.

AND without limiting any of the other provisions of this Mortgage, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby.

**Section 1.2    Assignment of Rents**.  Subject to the terms and provisions of the Loan Agreement, Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Loan Agreement, Cash Management Agreement and <u>Section 7.1(h)</u> of this Mortgage, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

**Section 1.3    Security Agreement**.  This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Mortgage, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment and the Personal Property and other property constituting the Property, whether now owned or hereafter acquired, to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**").  If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem reasonably necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender.  Borrower shall pay to Lender upon ten (10) Business Days written demand therefor, any and all reasonable and actual out-of-pocket expenses, including reasonable legal expenses and attorneys' fees, actually incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral

after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper. Borrower's (debtor's) principal place of business is as set forth on page one hereof and the address of Lender (secured party) is as set forth on page one hereof.

Section 1.4    **Fixture Filing**.  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Mortgage, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

Section 1.5    **Pledges of Monies Held**.  Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender, including, without limitation, any sums deposited in the Lockbox Account, the Cash Management Account, the Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Mortgage or the Loan Agreement.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall pay to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Mortgage, shall perform the Other Obligations as set forth in this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release, except as set forth in Article X hereof.

## ARTICLE II - DEBT AND OBLIGATIONS SECURED

Section 2.1    **Debt**.  This Mortgage and the grants, assignments and transfers made in Article I are given for the purpose of securing the Debt.

Section 2.2    **Other Obligations**.  This Mortgage and the grants, assignments and transfers made in Article I are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)      the performance of all other obligations of Borrower contained herein;

(b)      the performance of each obligation of Borrower and the Other Borrowers contained in the Loan Agreement and any other Loan Document; and

(c)      the performance of each obligation of Borrower and the Other Borrowers contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

**Section 2.3      Debt and Other Obligations**.      Borrower's and the Other Borrowers' obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations.**"

## ARTICLE III - BORROWER COVENANTS

Borrower covenants and agrees that:

**Section 3.1      Payment of Debt**.  Borrower and the Other Borrowers will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

**Section 3.2      Incorporation by Reference**.  All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

**Section 3.3      Insurance**.  Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

**Section 3.4      Maintenance of Property**.  Borrower shall cause the Property to be maintained in a good and safe condition and repair.  The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for (a) normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements and (b) any alterations to the Improvements not prohibited by Section 5.1.21 of the Loan Agreement) without the consent of Lender, not to be unreasonably withheld, conditioned or delayed.  Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land, in all cases to the extent required by Borrower in accordance with the terms of the Loan Agreement.

**Section 3.5      Waste**.  Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security

of this Mortgage. Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

**Section 3.6** **Payment for Labor and Materials**. (a) Subject to Borrower's right to contest in <u>Section 3.6(b)</u>, Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances.

(b) After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Mortgage or any of the other Loan Documents, (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Property or Borrower shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

**Section 3.7** **Performance of Other Agreements**. Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

**Section 3.8** **Change of Name, Identity or Structure**. Borrower will not cause or permit any change to be made in its name, identity (including its trade name or names), place of organization or formation (as set forth on <u>Schedule I</u> of the Loan Agreement) or Borrower's limited liability company or partnership or other structure (except as permitted pursuant to Section 5.2.10 of the Loan Agreement); <u>provided</u>, that with respect to a change of name only, Borrower shall be permitted to make such change if Borrower shall have first notified Lender in writing of such change at least thirty (30) days prior to the effective date of such change, and shall have first taken all action required by Lender for the purpose of perfecting or protecting the lien and security interests of Lender pursuant to the Loan Agreement and the other Loan Documents. Borrower shall not change its organizational structure or place of organization without first obtaining the prior written consent of Lender, which consent may be given or

-8-

denied in Lender's sole discretion and delivery of a Rating Agency Confirmation from the Approved Rating Agencies. Upon Lender's request, Borrower shall, at Borrower's sole cost and expense, execute and deliver additional security agreements and other instruments which may be necessary to effectively evidence or perfect Lender's security interest in the Property as a result of such change of principal place of business or place of organization approved in accordance with the foregoing sentence. Borrower's principal place of business and chief executive office, and the place where Borrower keeps its books and records, including recorded data of any kind or nature, regardless of the medium of recording, including software, writings, plans, specifications and schematics, has been for the preceding four months (or, if less, the entire period of the existence of Borrower) and will continue to be the address of Borrower set forth at the introductory paragraph of this Mortgage. Borrower shall not change its organizational identification number. If Borrower does not now have an organizational identification number and later obtains one, Borrower promptly shall notify Lender of such organizational identification number.

Section 3.9    **Title**. Borrower has good, marketable and insurable fee simple title to the real property comprising part of the Property and good title to the balance of such Property, free and clear of all Liens (as defined in the Loan Agreement) whatsoever except the Permitted Encumbrances (as defined in the Loan Agreement), such other Liens as are permitted pursuant to the Loan Documents and the Liens created by the Loan Documents. The Permitted Encumbrances in the aggregate do not materially and adversely affect the value, operation or use of the Property or Borrower's ability to repay the Loan. This Mortgage, when properly recorded in the appropriate records, together with any Uniform Commercial Code financing statements required to be filed in connection therewith, will create (a) a valid, perfected first priority lien on the Property, subject only to Permitted Encumbrances and the Liens created by the Loan Documents and (b) perfected security interests in and to, and perfected collateral assignments of, all personalty (including the Leases), all in accordance with the terms thereof, in each case subject only to any applicable Permitted Encumbrances, such other Liens as are permitted pursuant to the Loan Documents and the Liens created by the Loan Documents. There are no claims for payment for work, labor or materials affecting the Property which are or may become a Lien prior to, or of equal priority with, the Liens created by the Loan Documents.

Section 3.10    **Letter of Credit Rights**. If Borrower is at any time a beneficiary under a letter of credit relating to the properties, rights, titles and interests referenced in Section 1.1 of this Mortgage now or hereafter issued in favor of Borrower, Borrower shall promptly notify Lender thereof and, at the request and option of Lender, Borrower shall, pursuant to an agreement in form and substance satisfactory to Lender, either (i) arrange for the issuer and any confirmer of such letter of credit to consent to an assignment to Lender of the proceeds of any drawing under the letter of credit or (ii) arrange for Lender to become the transferee beneficiary of the letter of credit, with Lender agreeing, in each case that the proceeds of any drawing under the letter of credit are to be applied as provided in Section 7.2 of this Mortgage.

## ARTICLE IV - OBLIGATIONS AND RELIANCES

Section 4.1    **Relationship of Borrower and Lender**. The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Loan Agreement, the

Note, this Mortgage and the other Loan Documents shall be construed so as to deem the relationship between Borrower and the Other Borrowers and Lender to be other than that of debtor and creditor.

**Section 4.2    No Reliance on Lender**.    The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property.   Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

**Section 4.3    No Lender Obligations**.   (a) Notwithstanding the provisions of Subsections 1.1(h) and (n) or Section 1.2, Lender is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

**Section 4.4    Reliance**.    Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Mortgage and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 4.1 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Mortgage in the absence of the warranties and representations as set forth in Section 4.1 of the Loan Agreement.

### ARTICLE V - FURTHER ASSURANCES

**Section 5.1    Recording of Mortgage, Etc.**    Borrower forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and each instrument of further assurance required to be delivered herewith or pursuant to the terms of the Loan Agreement to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property.   Borrower will pay all taxes, filing, registration or recording fees, and all reasonable out-of-pocket expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Mortgage, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents,

and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

**Section 5.2    Further Acts, Etc.**  Borrower will, at the reasonable out-of-pocket cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Legal Requirements, provided, however, that such actions shall not increase the obligations of Borrower under the Loan Documents or decrease Borrower's rights thereunder other than to a de minimus extent. Borrower, within ten (10) Business Days demand therefor, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Property. Such financing statements may describe as the collateral covered thereby "all assets of the debtor, whether now owned or hereafter acquired" or words to that effect. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation, such rights and remedies available to Lender pursuant to this Section 5.2. Notwithstanding the immediately foregoing sentence, Lender shall not execute any documents as attorney-in-fact for Borrower unless Borrower shall have failed or refused to execute the same within five (5) Business Days of Lender's request therefor.

**Section 5.3    Changes in Tax, Debt, Credit and Documentary Stamp Laws.** (a) If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury then Lender shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable without penalty, premium, Breakage Costs or Spread Maintenance Payment, if any, under Section 2.4 of the Loan Agreement.

(b)    Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option,

by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable without penalty, premium, Breakage Costs or Spread Maintenance Payment, if any, under Section 2.4 of the Loan Agreement.

(c)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Mortgage, or any of the other Loan Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

**Section 5.4    Severing of Mortgage**.  The provisions of Section 8.2(c) of the Loan Agreement are hereby incorporated by reference herein.

**Section 5.5    Replacement Documents**.  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower and the Other Borrowers will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE VI - DUE ON SALE/ENCUMBRANCE

**Section 6.1    Lender Reliance**.  Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations.  Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Lender can recover the Debt by a sale of the Property.

**Section 6.2    No Sale/Encumbrance**.  Neither Borrower nor any Restricted Party shall Transfer the Property or any part thereof or any interest therein or permit or suffer the Property or any part thereof or any interest therein to be Transferred other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE VII - RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1    Remedies**.  Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender, subject to, in all cases, the terms of the Loan Agreement:

(a)    declare the entire unpaid Debt to be immediately due and payable;

(b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

(g)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or any indemnitor with respect to the Loan or of any Person liable for the payment of the Debt;

(h)    the license granted to Borrower under <u>Section 1.2</u> hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business threat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof upon notice to each such lessee for the payment to Lender of all Rents due under its lease; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents,

the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)      exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing:  (i) the right to take possession of the Fixtures, the Equipment, the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Borrower at its expense to assemble the Fixtures, the Equipment and the Personal Property and make it available to Lender at the Land.  Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment and the Personal Property sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)      apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Mortgage or any other Loan Document to the payment of the following items in any order in its sole discretion: (i) Taxes and Other Charges; (ii) Insurance Premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note; and (v) all other sums payable pursuant to the Note, the Loan Agreement, this Mortgage and the other Loan Documents, including without limitation advances made by Lender pursuant to the terms of this Mortgage;

(k)      pursue such other remedies as Lender may have under applicable law; or

(l)      apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as stated in the Loan Agreement.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

**Section 7.2      Application of Proceeds**.  Upon the occurrence and during the continuance of an Event of Default, the purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Lender pursuant to the Note, this Mortgage or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

Section 7.3    **Right to Cure Defaults**.  Upon the occurrence and during the continuance of any Event of Default, or if Borrower fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Borrower (except as required hereunder or under the Loan Agreement) and without releasing Borrower from any obligation hereunder, make any payment or do any act required of Borrower hereunder in such manner and to such extent as Lender may deem necessary to protect the security hereof.  Upon the occurrence and during the continuance of an Event of Default, Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Mortgage or collect the Debt, and the out-of-pocket cost and expense of Lender (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon ten (10) Business Days written demand therefor from Lender to Borrower.  All such out-of-pocket costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate specified in the Loan Agreement, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender.  All such out-of-pocket costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 7.4    **Actions and Proceedings**.  Subject to the terms and provisions of the Loan Agreement, and upon the occurrence and during the continuance of an Event of Default, Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

Section 7.5    **Recovery of Sums Required To Be Paid**.  Upon the occurrence and during the continuance of an Event of Default, Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for an Event of Default by Borrower existing at the time such earlier action was commenced.

Section 7.6    **Examination of Books and Records**.  At reasonable times during normal business hours and upon reasonable notice, Lender, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Borrower in accordance with the Loan Agreement.

Section 7.7    **Other Rights, Etc.**  (a) The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage.  Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or any indemnitor with respect to the Loan to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or

any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the other Loan Documents.

(b)    It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured until such time as Lender becomes a mortgagee in possession or if title to the Property has transferred to Lender or its designee pursuant to a foreclosure or assignment in lieu of foreclosure.  Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)    Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect.  Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Mortgage.  The rights of Lender under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.  No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.  Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

Section 7.8    **Right to Release Any Portion of the Property**.    Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder.  This Mortgage shall continue as a lien and security interest in the remaining portion of the Property.

Section 7.9    **Intentionally Omitted**.

Section 7.10    **Recourse and Choice of Remedies**.    Notwithstanding any other provision of this Mortgage or the Loan Agreement, including, without limitation, Section 9.3 of the Loan Agreement, to the fullest extent permitted by applicable law, Lender and other Indemnified Parties (as hereinafter defined) are entitled to enforce the obligations of Borrower contained in Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Lender commences a foreclosure action against the Property, Lender is entitled to pursue a deficiency judgment with respect to such obligations against Borrower.  The provisions of Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Mortgage or the other Loan Documents, and Borrower is fully and personally liable for the

obligations pursuant to Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement. The liability of Borrower pursuant to Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Lender from foreclosing or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Mortgage and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower pursuant to Sections 9.1, 9.2 and 9.3 herein and Section 9.3 of the Loan Agreement whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions. In addition, Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in Article 9 herein.

        **Section 7.11  Right of Entry**. Upon reasonable prior written notice to Borrower, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times during business hours, subject to the rights of tenants under Leases.

## ARTICLE VIII - PREPAYMENT

        **Section 8.1  Prepayment**. The Debt may not be prepaid in whole or in part except in accordance with the express terms and conditions of the Loan Agreement.

## ARTICLE IX - INDEMNIFICATION

        **Section 9.1  General Indemnification**. Borrower shall, at its sole cost and expense, protect (with legal counsel reasonably acceptable to Lender), defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages (except consequential, punitive or special damages unless actually incurred and payable to a third party), losses, reasonable out-of-pocket costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, foreseeable and unforeseeable consequential damages actually incurred and payable to a third party, of whatever kind or nature (including but not limited to reasonable and actual attorneys' fees and other costs of defense) (collectively, the "**Losses**") imposed upon or actually incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) ownership of this Mortgage, the Property or any interest therein or receipt of any Rents; (b) any amendment to, or restructuring of, the Debt, the Note, the Loan Agreement, this Mortgage, or any other Loan Documents; (c) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Mortgage, the Loan Agreement, the Note or any of the other Loan Documents, whether or not suit is filed in connection with same, or in connection with Borrower, any guarantor or any indemnitor and/or any partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (d) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any use, nonuse or condition in, on or about the Property or any part thereof or on

the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (f) any failure on the part of Borrower to perform or be in compliance with any of the terms of this Mortgage, the Note, the Loan Agreement or any of the other Loan Documents; (g) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (h) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (i) any failure of the Property to be in compliance with any Legal Requirements excluding any claims to the extent incurred by reason of fraud, illegal acts, gross negligence or willful misconduct of Lender or any of its agents as determined by a court of competent jurisdiction; (j) the enforcement by any Indemnified Party of the provisions of this Article 9; (k) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (l) the payment of any commission, charge or brokerage fee to anyone claiming through Borrower which may be payable in connection with the funding of the Loan; or (m) any misrepresentation made by Borrower in this Mortgage or any other Loan Document. Any amounts payable to Lender by reason of the application of this Section 9.1 shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Lender until paid.

**Section 9.2    Mortgage and/or Intangible Tax**.  Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or actually incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Mortgage, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.  Borrower hereby agrees that, in the event that it is determined that any documentary stamp taxes or intangible personal property taxes are due hereon or on any mortgage or promissory note executed in connection herewith (including, without limitation, the Note), Borrower shall indemnify and hold harmless the Indemnified Parties for all such documentary stamp and/or intangible taxes, including all penalties and interest assessed or charged in connection therewith.

**Section 9.3    ERISA Indemnification**.  Borrower shall, at a reasonable sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including, without limitation, reasonable and actual attorneys' fees and costs actually incurred in the investigation, defense, and settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Lender's reasonable discretion) that Lender may incur, as a result of a breach of any of the representations made under Section 4.1.9 of the Loan Agreement or a breach of any negative covenants contained in Section 5.2.9 of the Loan Agreement.

**Section 9.4    Duty to Defend; Attorneys' Fees and Other Fees and Expenses**. Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and

other professionals approved by the Indemnified Parties.  Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Borrower and any Indemnified Party and Borrower and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or additional to those available to Borrower, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, provided that no compromise or settlement shall be entered without Borrower's consent, which consent shall not be unreasonably withheld.  Upon demand, Borrower shall pay or, in the reasonable discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable out-of-pocket fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

> **Section 9.5    Environmental Indemnity**.  Simultaneously with this Mortgage, Borrower, the Other Borrowers and Guarantor have executed that certain Environmental Indemnity.  The obligations of Borrower, the Other Borrowers and Guarantor under the Environmental Indemnity are not part of the Debt and are not secured by this Mortgage.

## ARTICLE X - WAIVERS

> **Section 10.1    Waiver of Counterclaim**.  To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Mortgage, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

> **Section 10.2    Marshalling and Other Matters**.  To the extent permitted by applicable law, Borrower hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein.  Further, to the extent permitted by law, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

> **Section 10.3    Waiver of Notice**.  To the extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Lender to Borrower.

> **Section 10.4    Waiver of Statute of Limitations**.  To the extent permitted by applicable law, Borrower hereby expressly waives and releases to the fullest extent permitted by

law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

Section 10.5 <u>Survival</u>. The indemnifications made pursuant to <u>Sections 9.1</u>, <u>9.2</u> and <u>9.3</u> herein shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by any of the following: any satisfaction or other termination of this Mortgage, any assignment or other transfer of all or any portion of this Mortgage or Lender's interest in the Property (but, in such case, shall benefit both Indemnified Parties and any assignee or transferee), any exercise of Lender's rights and remedies pursuant hereto including, but not limited to, foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any transfer of all or any portion of the Property (whether by Borrower or by Lender following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, and any act or omission that might otherwise be construed as a release or discharge of Borrower from the obligations pursuant hereto. Notwithstanding the provisions of this Mortgage to the contrary, (a) the liabilities and obligations of Borrower shall not apply to the extent such liability and obligations arose after any Indemnified Party or its nominee acquired title to the Property, whether by foreclosure, exercise of a power of sale, deed in lieu of foreclosure or otherwise and (b) the liabilities and obligations of Borrower in <u>Sections 9.1(a)</u> and <u>9.1(m)</u> shall not survive indefeasible repayment of the Loan.

**Section 10.6 <u>Waiver of Jury Trial</u>. BORROWER AND LENDER HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVE ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EITHER PARTY LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE OTHER PARTY.**

## ARTICLE XI - EXCULPATION

The provisions of Section 9.3 of the Loan Agreement are hereby incorporated by reference into this Mortgage to the same extent and with the same force as if fully set forth herein.

## ARTICLE XII - NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 10.6 of the Loan Agreement.

# ARTICLE XIII- APPLICABLE LAW

**Section 13.1   Governing Law**.  This Mortgage shall be governed in accordance with the terms and provisions of Section 10.3 of the Loan Agreement; provided that the provisions of this Mortgage regarding the creation, perfection and enforcement of the Liens and security interests herein granted shall be governed by and construed under the laws of the State in which the Property is located.

**Section 13.2   Usury Laws**.  Notwithstanding anything to the contrary, (a) all agreements and communications between Borrower and Lender are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Lender shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender, and (c) if through any contingency or event, Lender receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Borrower to Lender, or if there is no such indebtedness, shall immediately be returned to Borrower.

**Section 13.3   Provisions Subject to Applicable Law**.  All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law.  If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of the term shall not be affected thereby.

# ARTICLE XIV - DEFINITIONS

All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "**Borrower**" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "**Lender**" shall mean "Lender and any subsequent holder of the Note," the word "**Note**" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees**", "**legal fees**" and "**counsel fees**" shall include any and all reasonable and actual out-of-pocket attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, reasonable fees and disbursements at the pre-trial, trial and appellate levels actually incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE XV - MISCELLANEOUS PROVISIONS

**Section 15.1    No Oral Change**.  This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 15.2    Successors and Assigns**.  This Mortgage shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**Section 15.3    Inapplicable Provisions**.  If any term, covenant or condition of the Loan Agreement, the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Mortgage shall be construed without such provision.

**Section 15.4    Headings, Etc.**  The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 15.5    Number and Gender**.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 15.6    Subrogation**.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

**Section 15.7    Entire Agreement**.  The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto.  Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and the other Loan Documents, there are not, and were not, and no persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

**Section 15.8    Limitation on Lender's Responsibility**. No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger except to the extent caused by the gross negligence or willful misconduct of Lender or its agents as determined by a court of competent jurisdiction in a final, non-appealable judgment. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" unless Lender elects to be a "mortgagee in possession".

**Section 15.9    Cross Collateralization and Cross Default**. Borrower acknowledges that in order to induce Lender to make the Loan, (i) this Mortgage and (ii) each other mortgage, deed of trust or deed to secure debt, with respect to each other Individual Property (as such term is defined in the Loan Agreement) (collectively, the "**Other Mortgages**"), are hereby cross-collateralized and cross-defaulted as provided herein. In accordance with the terms and provisions of the Loan Agreement, without limitation of any other right or remedy provided to Lender in this Mortgage or in any of the other Loan Documents, Borrower agrees that this Mortgage and the Other Mortgages are and will be cross-collateralized and cross-defaulted with each other so that (i) an Event of Default by Borrower under this Mortgage shall constitute an Event of Default under each of the Other Mortgages; (ii) an Event of Default under the Note, the Loan Agreement or this Mortgage shall constitute an Event of Default under this Mortgage and each of the Other Mortgages; and (iii) this Mortgage and each of the Other Mortgages shall constitute security for the Note as if a single blanket lien were placed on all of the Properties (as such term is defined in the Loan Agreement) as security for the Note.

## ARTICLE XVI - STATE-SPECIFIC PROVISIONS

**Section 16.1    Principles of Construction**. In the event of any inconsistencies between the terms and conditions of this Article 16 and the terms and conditions of this Mortgage, the terms and conditions of this Article 16 shall control and be binding.

**Section 16.2    Maturity**. The obligations under the Note have a maturity date to occur on or before August 9, 2024.

**Section 16.3    Future Advances**. This Mortgage is intended to secure future advances made under the Note, hereunder, the Loan Agreement and/or under the other Loan Documents, and all modifications, extensions and renewals of any of the foregoing, with the same priority as if made on the day of execution of this Mortgage, up to a maximum amount of $481,000,000, pursuant to Indiana Code § 32-29-1-10. The maximum amount stated in the preceding sentence does not affect or alter the principal amount that Borrower is entitled to borrow under the Note and/or under any of the Loan Documents, and may be in excess of permitted borrowing to cover expenses, accrued interest, costs of collection and the like. Nothing in this provision requires Lender to make any future advances, and Borrower represents that Lender has not promised to do so. Pursuant to Ind. Code 32-29-1-10, the lien of this Mortgage with respect to any future advances, modifications, extensions or renewals referred to

in this Mortgage and made from time to time shall have the same priority to which this Mortgage would otherwise be entitled as of the date this Mortgage is executed and recorded without regard to the fact that any such future advance, modification, extension, or renewal may occur after this Mortgage is executed.

Section 16.4    **Financing Statements**.  Lender is hereby authorized to execute and file on behalf of Borrower, without the signature of Borrower, any financing statement deemed necessary or appropriate by Lender in order to further evidence, perfect or continue the security interest granted herein, or in any other Loan Document.

Section 16.5    **Collection Cost Recovery**.  This Mortgage shall secure, and Lender shall be entitled to collect from Borrower and add to the obligations incurred by Borrower all costs and expenses of remedial actions by Lender to the extent provided for and contemplated by this Mortgage, the Loan Agreement and the Environmental Indemnity.

Section 16.6    **Non-Waiver**.  Nothing in this Mortgage is intended to constitute a waiver of deficiency under Indiana Code §32-29-7-5 nor a consent by the Lender to such a waiver.

Section 16.7    **Receiver**.  Borrower agrees that Lender shall be entitled to the appointment of a receiver as a matter of right in accordance with Indiana Code § 32-30-5-1(4)(C) in any action by Lender seeking to enforce this Mortgage, including without limitation, by foreclosure.

Section 16.8    **No Joint Venture**.  Nothing contained in this Mortgage or any other Loan Document is intended to create a partnership, joint venture or association between Borrower and Lender or in any way make Lender a co-principal with Borrower with reference to the Property, and any inferences to the contrary are hereby expressly negated.

Section 16.9    **Subrogation; Waiver**.  If any of the proceeds of the Note are utilized to pay off outstanding liens against all or any part of the Property, Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any such outstanding liens and debts, however remote, regardless of whether said liens or debts are acquired by Lender by assignment, or are released by the holder thereof upon payment. Borrower, any guarantors and any endorsers hereof or of the Note jointly and severally waive absolutely and unconditionally any and all rights of subrogation to the rights of Lender hereunder or under any Loan Document.  All guaranties and endorsements of any Loan Document shall contain a waiver of subrogation approved by Lender.

Section 16.10    **Fixture Filing**.  It is intended that as to the fixtures that are or are to become part of the Property hereby mortgaged, this Mortgage shall be effective as a continuously perfected financing statement filed as a fixture filing from the date of the filing of this Mortgage for record with the office of the recorder of the county in which the land is located, pursuant to Ind. Code 26-1-9.1-502 and Ind. Code 26-1-9.1-515.  This information is provided in order that this Mortgage shall comply with the requirements of the Uniform Commercial Code, for a mortgage instrument to be filed as a continually perfected financing statement.  This Mortgage covers goods which are or are to become fixtures.

(a)     Name of Borrower (debtor): Abington Owner LLC

(b)     Address of Borrower (debtor): 512 Seventh Avenue, 16th Floor, New York, New York 10018

(c)     Type of Organization: Limited liability company

(d)     State of Organization: Delaware

(e)     Name of Record Owner: Abington Owner LLC

(f)     Address of Record Owner: 512 Seventh Avenue, 16th Floor, New York, New York 10018

(g)     Name of Lender (secured party): JPMorgan Chase Bank, National Association

(h)     Address of Lender (secured party): 383 Madison Avenue, New York, New York 10179

(i)     The fee simple interest in the Land is owned by Abington Owner LLC

Borrower hereby acknowledges receipt of a copy of this Mortgage in compliance with Lender's obligation to deliver a copy of the fixture filing to Borrower pursuant to Section 9.1-502(f) of the Uniform Commercial Code.

**Section 16.11 <u>Power of Attorney</u>**.   In no event shall any power of attorney granted herein give to Lender the right or the power of attorney or authority as attorney on behalf of Borrower to: (a) appear in any court of record and waive the service of process in an action to enforce the payment of money claimed to be due on or under this Mortgage; (b) confess judgment on this Mortgage for a sum of money to be ascertained in a manner other than by action of the court upon a hearing after notice to Borrower; or (c) release errors and rights of appeal from a judgment rendered for the matters described in subclause (a) or (b) hereof or to consent to the issue of execution on the judgment or the matters described in subclause (a) or (b) hereof.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, this Mortgage has been executed by Borrower as of the day and year first above written.

BORROWER:

ABINGTON OWNER LLC, a Delaware limited
    liability company

By: _____
    Name: Meyer Chetrit
    Title: Authorized Signatory

NOTARY ACKNOWLEDGMENT

STATE OF NEW YORK    )
                          : ss.:
COUNTY OF NEW YORK  )

On the _3_ day of _June_, 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared Meyer Chetrit, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

LOIS HUTTER SANCHEZ
Notary Public, State of New York
No. 01HU5042516
Qualified in Queens County
Commission Expires April 24, 20_23_

This instrument was prepared by:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention: William McInerney, Esq.

I affirm under the penalties of perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. William McInerney, Esq.

## SCHEDULE I

### OTHER BORROWERS

1.      Barrington Park Owner LLC, a Delaware limited liability company

2.      Chateau Glen Oaks Owner LLC, a Delaware limited liability company

3.      Manchester Park Owner LLC, a Delaware limited liability company

4.      Vista Place Owner LLC, a Delaware limited liability company

5.      Atwood Owner LLC, a Delaware limited liability company

6.      Colonial Forest Owner LLC, a Delaware limited liability company

7.      Davis Gardens Owner LLC, a Delaware limited liability company

8.      Northwood Owner LLC, a Delaware limited liability company

9.      University Courtyard Owner LLC, a Delaware limited liability company

10.     Knoxville Pointe Owner LLC, a Delaware limited liability company

11.     Cheswick Village Owner LLC, a Delaware limited liability company

12.     Colfax Owner LLC, a Delaware limited liability company

13.     Edison Pointe Owner LLC, a Delaware limited liability company

14.     Hickory Ridge Property Owner LLC, a Delaware limited liability company

15.     Winchester Village Owner LLC, a Delaware limited liability company

16.     Winchester Woods Owner LLC, a Delaware limited liability company

17.     Chateau Royale Owner LLC, a Delaware limited liability company

18.     East Gate Owner LLC, a Delaware limited liability company

19.     Hallmark Gardens Owner LLC, a Delaware limited liability company

20.     North Gate Owner LLC, a Delaware limited liability company

21.     Pebble Creek Owner LLC, a Delaware limited liability company

22.     Southwind Owner LLC, a Delaware limited liability company

23.     Advantages Owner LLC, a Delaware limited liability company

24.    Timber Ridge Owner LLC, a Delaware limited liability company

25.    Caleb's Creek Holdings LLC, an Ohio limited liability company

26.    Fox Chase Apartments 1 LLC, a Delaware limited liability company

27.    Galloway Apartments LLC, an Ohio limited liability company

28.    ROCO – High Point in the Park LLC, a Delaware limited liability company

29.    ROCO – Hilliard, LLC, a Delaware limited liability company

30.    Trotwood Holdings LLC, an Ohio limited liability company

31.    ROCO – Loganberry, LLC, an Ohio limited liability company

32.    ROCO – Parkside, LLC, an Ohio limited liability company

33.    Quail Creek Investments LLC, a Delaware limited liability company

34.    Steeplechase Advisers II LLC, a Delaware limited liability company

35.    Lakes at Ridgeway Owner LLC, a Delaware limited liability company

36.    Moriah Owner LLC, a Delaware limited liability company

37.    Stonegate Owner LLC, a Delaware limited liability company

38.    Arlington Owner LLC, a Delaware limited liability company

39.    Forest View Owner LLC, a Delaware limited liability company

40.    Riverside Ranch Owner LLC, a Delaware limited liability company

41.    Shadow Creek Owner LLC, a Delaware limited liability company

42.    University Hill Owner LLC, a Delaware limited liability company

## EXHIBIT A

## LEGAL DESCRIPTION

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Indianapolis, County of Marion, State of Indiana.

TRACT 1:

Part of the Southeast Quarter of Section 7 and part of the Northeast Quarter of Section 18, Township 16 North, Range 3 East in Marion County, State of Indiana, more particularly described                                                    as                                                    follows:

Commencing at the Northeast corner of the Northeast Quarter of Section 18, Township 16 North, Range 3 East; thence North 89 degrees 55 minutes 33 seconds West along the North line thereof 457.126 feet to the Southwest corner of Whitehall Commons, Section One as per plat thereof recorded as Instrument #72-43201 in the Office of the Recorder of Marion County, Indiana; said point being the POINT OF BEGINNING of the real estate described herein: thence North 00 degrees 14 minutes 22 seconds West along the West line of the aforementioned Whitehall Commons, Section One 730.000 feet to a point in the centerline of West 47th Street as granted in Grant of Right-of-Way recorded as Instrument #73-10531 in the Office of the Recorder of Marion County, Indiana; (the following 3 calls being on and along said centerline) thence South 89 degrees 45 minutes 38 seconds West 100.550 feet to the POINT OF CURVATURE of a curve concave northerly, having a radius of 514.38 feet and a central angle of 28 degrees 22 minutes 00 seconds; thence Westerly along the arc of said curve a distance of 254.665 feet to the POINT OF TANGENCY; said arc being subtended by a chord having a bearing of North 76 degrees 03 minutes 22 seconds West and a distance of 252.072 feet; thence North 61 degrees 52 minutes 22 seconds West 78.439 feet; thence South 18 degrees 49 minutes 59 seconds West 35.466 feet, which point is on the South boundary of West 47th Street; thence continuing South 18 degrees 49 minutes 59 seconds West 48.075 feet; thence Southerly 116.064 feet along an arc to the left and having a radius of 350.000 feet and subtended by a long chord having a bearing of South 09 degrees 19 minutes 58 seconds West and a length of 115.533 feet; thence South 00 degrees 10 minutes 01 seconds East 718.733 feet; thence Southeasterly 227.728 feet along an arc to the left and having a radius of 263.074 feet and subtended by a long chord having a bearing of South 24 degrees 57 minutes 57 seconds East and a length of 220.684 feet; thence Southeasterly 67.049 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of South 26 degrees 22 minutes 04 seconds East and a length of 65.509 feet; thence Southeasterly 104.700 feet along an arc to the left, and having a radius of 70.000 feet and subtended by a long chord having a bearing of South 49 degrees 23 minutes 48 seconds East and a length of 95.210 feet; thence Southeasterly 30.998 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of South 82 degrees 22 minutes 43 seconds East and a length of 30.845 feet; thence South 49 degrees 45 minutes 53 seconds East 34.800 feet; thence North 40 degrees 14 minutes 07 seconds East 70.000 feet; thence North 49 degrees 45 minutes 53 seconds West 34.800 feet; thence Northwesterly 30.998 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of North 17 degrees 09 minutes 03 seconds West and a length of 30.845 feet;

thence Northwesterly 62.973 feet along an arc to the left and having a radius of 70.000 feet and subtended by a long chord having a bearing of North 33 degrees 03 minutes 20 seconds West and a length of 60.871 feet; thence North 40 degrees 14 minutes 07 seconds East a distance of 360.742 feet to the POINT OF BEGINNING.

## TRACT 2:

A part of the Southeast Quarter of Section 7 and a part of the Northeast Quarter of Section 18, of Township 16 North, Range 3 East in Marion County, State of Indiana, more particularly described as follows:

Commencing at the Southwest corner of the East half of the Southeast Quarter of said Section 7, thence North 00010'01" West 1040.445 feet along the West line of said Quarter Section, to a point in the centerline of West 47th Street as per Grant of Right-of-Way recorded as Instrument #73-10531 in the Office of the Recorder of Marion County, Indiana, said point being the POINT OF BEGINNING of this description; thence South 79º34'48" East 6.589 feet along said centerline; thence Easterly 178.629 feet along an arc to the right having a radius of 591.41 feet and subtended by a long chord having a bearing of South 70º31'32" East and a length of 177.951 feet along said centerline; thence South 61º52'22" East 326.161 feet along said centerline; thence South 18º49'59" West 35.466 feet, which point is on the South boundary of West 47th Street; thence continuing South 18º49'59" West 48.075 feet; thence Southerly 116.064 feet along an arc to the left and having a radius of 350.000 feet and subtended by a long chord having a bearing of South 09º19'58" West and a length of 115.533 feet; thence South 00º10'01" East 718.733 feet; thence Southeasterly 227.728 feel along an arc to the left and having a radius of 263.074 feet and subtended by a long chord having a bearing of South 24º5757" East and a length of 220.684 feet; thence Southeasterly 67.049 feet along an arc to the right and having a radius of 90.000 feet and subtended by a long chord having a bearing of South 26º22'04" East and a length of 65.509 feet; thence Southeasterly 47.939 feet along an arc to the left and having a radius of 70.000 feet and subtended by a long chord having a bearing of South 26º10'02" East and a length of 47.007 feet; thence South 40º14'07" West 434.867 feet; thence South 55º24'51" West 120.000 feet to a point on the L.A. R/W and A.C.L of Interstate Highway 65 as per I.S.H.C. plans for Project No. 65-3(28) 120, 1961; (the following 2 calls being on and along said right-of-way) thence North 34º35'09" West 952.081 feet; thence Northwesterly 223.503 feet along an arc to the left and having a radius of 2546.830 feet and subtended by a long chord having a bearing of North 37º06'00" West and a length on 223.432 feet to a point on the Easterly right-of-way line of Georgetown Road as shown on Street Plans Project No. M.T.A C.P.68-28; (the following 4 calls being along said right-of-way) thence North 22º07'06" East 147.709 feet; thence North 07º32'15" East 600.750 feet; thence North 10º24'01" East 175.910 feet; thence Northeasterly 21.942 feet along an arc to the left and having a radius of 1984.860 feet and subtended by a long chord having a bearing of North 10º05'01" East a length of 21.942 feet to a point in the centerline of the aforesaid West 47th Street, as per Grant of Right-Of-Way recorded as Instrument # 73-10530 in the Office of the Recorder of Marion County, Indiana; thence South 79º10'01" East 329.498 feet along said centerline to the POINT OF BEGINNING.

Less and except land lying within West 47th Street.

NOTE: Being Parcel No. 49-06-07-124-003.000-600, 49-06-07-124-001.000-600, 49-06-07-124-002.000-600 and 49-06-18-106-001.000-600, of the City of Indianapolis, County of Marion.