**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2019-MFP, Commercial Mortgage Pass-Through Certificates, Series 2019-MFP,<br><br>Wells Fargo,<br><br>v.<br><br>BARRINGTON PARK OWNER LLC, *et al*.,<br><br>Defendants. | Civil Case No. 23-cv-09972 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS APPLICATION FOR APPOINTMENT OF TEMPORARY RECEIVER**

**BRYAN CAVE**
**LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
212-541-2000
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 2

I. Borrower Defendants Irrevocably Consented to a Receiver with Power of Sale ........................................................ 2

II. Courts in this Jurisdiction Have Granted Receivers the Power of Sale. ................ 5

III. Plaintiff's Application is Not Procedurally Improper ........................................ 6

IV. Borrower Defendants Incorrectly Argue that the Collateral Can Be Protected from Waste Without Sale. ................................................ 8

CONCLUSION ........................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of America, N.A. v. BK Inner City Chicken Inc.*,
Case No. 09-06789-LAK (S.D.N.Y. Feb. 5, 2013) ....................................................5

*Bank of New York v. Franklin Advisers*,
726 F.3d 269 (2d Cir. 2013)....................................................................................2

*D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc.*,
550 F. Supp. 2d 481 (S.D.N.Y. 2008)....................................................................7

*In re K-V Discovery Sols., Inc.*,
496 B.R. 330 (Bankr. S.D.N.Y. 2013), *as corrected* (Aug. 28, 2013) ....................................4

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*,
424 F.3d 195 (2d Cir. 2005)....................................................................................2

*Morlee Sales Corp. v. Manufacturers Trust Co.*,
9 N.Y.2d 16 (1961) ................................................................................................2

*Murtha v. New York State Gaming Commn.*,
2022 WL 784756 (S.D.N.Y. Mar. 15, 2022) ......................................................... 7-8

*RSS CSMC2021 – ADV - DE AUR, LLC v. Adventus US Realty #4 LP*,
Case No. 23-0231 (S.D.N.Y. Sep. 22, 2023) ..........................................................5

*Slamow v. Del Col*,
79 N.Y.2d 1016 (1992) ..........................................................................................2

*Slatt v. Slatt*,
64 N.Y.2d 966 (1985) ............................................................................................2

*Teichman by Teichman v. Community Hosp. of W. Suffolk*,
87 N.Y.2d 514 (1996) ............................................................................................2

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
1 N.Y.3d 470 (2004) ..............................................................................................3

## INTRODUCTION

Borrower Defendants' opposition fails to establish that this Court should ignore the parties' express agreement granting Plaintiff the right to a receiver with the authority to market and sell the Collateral Properties upon Borrower Defendants' default. Borrower Defendants attempt to convince this Court that they did not expressly and irrevocably agree to, and that the applicable legal standards do not permit, the appointment of a temporary receiver with the power of sale. The law and the facts are otherwise.

Borrower Defendants do not dispute that the Loan matured on July 9, 2022 and Borrower Defendants failed to repay the Loan resulting in a Maturity Default. With the Loan in default, Borrower Defendants also do not dispute that they have neglected to maintain the Collateral Properties, which has caused and continues to cause their condition to degrade significantly, creating health and safety issues and waste. Municipalities undisputedly have issued condemnation notices and creditors have placed liens on the Collateral Properties. Borrower Defendants also do not contest that all of this poses an imminent threat of waste, undermining the value of the Collateral Properties.

To avoid further diminution in value, after the Maturity Default, the parties agreed that the best path forward for these failing assets would be to sell them on an expedited basis. To that end, Borrower Defendants embarked on a plan to market and sell the Collateral Properties, through a series of sales to third-party buyers, and to remit proceeds in partial repayment of the Loan. The parties acknowledged this plan in the Forbearance Agreement and Borrower Defendants expressly consented and agreed in the Forbearance Agreement to the appointment of a receiver with the power of sale. Furthermore, Borrower Defendants agreed, in the Forbearance Agreement, not to contest or assert any opposition on the rights granted Lender in that agreement.

Given those undisputed facts and the law, Borrower Defendants have not and cannot

contest that appointing a receiver with authority to continue the parties' existing plan to market and sell the Collateral Properties is the best way to realize the value of the collateral and avoid continued waste.

## ARGUMENT

### I. Borrower Defendants Irrevocably Consented to a Receiver with Power of Sale

Borrower Defendants do not dispute that they agreed, in Section 3.11(d) of the Forbearance Agreement, that any receiver sought by Lender would be vested with "the full power to … *sell* ... the Mortgaged Property upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances." (Wheeler Decl., Ex. 9 (Forbearance Agreement), § 3.11(d) (emphasis added).) Despite this explicit language and grant of authority, Borrower Defendants argue that the Court should rewrite the provision to remove the "full power to … sell…." (Opp., 4, 5.) Borrower's argument is contrary to fundamental law on contract construction and the provision's plain language.

In New York, contracts are to be construed in accordance with the parties' intent. *See, e.g., Slatt v. Slatt*, 64 N.Y.2d 966 (1985). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (1992). In that regard, words and phrases are to be given their plain reading. *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005). Significantly, a court may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used to make a new contract for the parties. *Teichman by Teichman v. Community Hosp. of W. Suffolk*, 87 N.Y.2d 514, 520 (1996); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19 (1961); *Bank of New York v. Franklin Advisers*, 726 F.3d 269, 278 (2d Cir. 2013) ("when interpreting a contract the entire contract must be considered so as to give each part meaning") (quotations omitted). The New York Court of Appeals has stressed that it is particularly important

that a written agreement "be enforced according to its terms" where the agreement concerns real property and "was negotiated between sophisticated, counseled business people negotiating at arm's length." *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (internal citations and quotations omitted).

Here, Borrower Defendants argue that this Court should excise out the term "sell" and ignore that sophisticated business people, when addressing a loan of nearly $500,000,000 and the sale of real property, did not intend what they expressly drafted into their agreement: the "full power to … sell…." (Opp., 4.) Borrower Defendants ask this Court to do exactly what the New York Court of Appeals admonished against: "in the guise of interpreting a contract … excise terms or distort the meaning of those used to make a new contract for the parties." In particular, Borrower Defendants urge the Court to remove that term and rewrite the provision because the power to sell supposedly is not a "usual" power. The parties, however, provided otherwise and explicitly included it among the power granted.

Again, a review of the plain and clear language of the provision is helpful:

> **any order appointing such receiver <u>shall</u> provide receiver with all of the usual powers and duties of receivers** under applicable law and/or pursuant to local custom, **including the full power to take possession of, hold, develop, rent, lease, sell, manage, maintain, operate and otherwise use or permit the use of the Mortgaged Property** upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances. **Such receivership may**, at the option of Lender and unless otherwise limited by any order appointing such receiver, **continue until full payment and performance of the Obligations or until title to the Mortgaged Property shall have passed by foreclosure sale, receiver sale or deed in lieu of foreclosure. Lender**….

(Forbearance Agreement § 3.11(d).)

The parties, in this provision, agreed that "any order appointing a receiver shall provide…" the receiver with all the "usual powers and duties of receivers…" and then chose to dispel any

ambiguity over what that entailed by expressly defining what powers were included. The use of an "including" clause is to specify the parties' agreement about what powers they agreed should be granted the receiver among the "usual powers and duties." *In re K-V Discovery Sols., Inc.*, 496 B.R. 330, 339 (Bankr. S.D.N.Y. 2013), *as corrected* (Aug. 28, 2013). Accordingly, Borrower Defendants have no basis to request that the Court ignore the express language, rewrite the provision to excise the "sell" term, and refer to extrinsic parole evidence, which Borrower Defendants do not submit.

Further dispelling any doubt that the parties intended the receiver order to grant a power of sale, the Forbearance Agreement contains other provisions reinforcing the grant of this right. In particular, the next sentence in Section 3.11(d) provides that "[s]uch receivership may … continue until … title to the Mortgaged Property shall have **passed by … receiver sale**…." The next sentence continues this theme, granting Lender the right to have the Mortgaged Property sold by the receiver: "Lender, in its sole discretion, shall be entitled … to have the Mortgaged Property sold by … **receiver sale** in accordance with applicable law [and] to **obtain any judicial order confirming or approving any such sale**[.]" (Forbearance Agreement § 3.11(d).)

Finally, Borrower Defendants cannot and do not contest that they consented to and waived any right to challenge the Plaintiff's right to seek the appointment of a receiver with the power of sale:

> (i) **irrevocably consent to such receiver appointment**, (ii) **knowingly and voluntarily waive any and all defenses to**, and any and all rights to enjoin, appeal or otherwise interfere with, hinder or impede, **any such motion, application or receiver appointment**, … (iv) agree **not to oppose** any motion or application by Lender for such receiver appointment….

(*Id.* (emphasis added).)

The parties' post-Maturity Default plan for the Collateral Properties – which Defendant

Borrowers also do not contest – further demonstrates the parties' intent that the Collateral Properties be sold to avoid waste continued waste, realized the value of the collateral, and pay off the loan. The parties acknowledged this plan in the Forbearance Agreement, providing that they proceed to "complete the Sale of each Individual Property and deliver to Lender all proceeds from such Sales (to the extent such proceeds do not exceed the full payment of the Obligations)…." (*Id.*, § 1.3.) The plan to market and sell the Collateral Properties has continued. (Wheeler Decl. at ¶ 24; Ex. 10.1-10.7.) Indeed, as of the filing of the receiver motion, the Collateral Properties commonly known as Colonial Forest, Northwood, Galloway Village, Hilliard Village, Riverside Ranch, Shadow Creek, and University Hill had been under contract or in negotiation to be sold. (Reply Wheeler Decl. at ¶ 7.)

Simply put, basic principles of contract construction, the plain language of the parties' Forbearance Agreement, and the parties' actions all demonstrate that the parties agreed that the receiver is to be granted the power to sell the Collateral Properties to realize their value, avoid further deterioration, and pay off the Loan. Borrower Defendants have no basis to ask the Court to rewrite the Forbearance Agreement, which was crafted by sophisticated parties and counsel.

## II. Courts in this Jurisdiction Have Granted Receivers the Power of Sale.

Borrower Defendants agree that Courts in this jurisdiction have authorized receivers to sell collateral property. (Opp., 3.) *See e.g., RSS CSMC2021 – ADV - DE AUR, LLC v. Adventus US Realty #4 LP*, Case No. 23-0231 (S.D.N.Y. Sep. 22, 2023) at Docket No. 37 at 4 (empowering receiver to sell property of the Receivership Estate) and 12 (authorizing the receiver to engage a real estate broker to market estate property for sale); *Bank of America, N.A. v. BK Inner City Chicken Inc.*, Case No. 09-06789-LAK (S.D.N.Y. Feb. 5, 2013) at Docket No. 60 at 2 (authorizing

temporary receiver to sell and convey assets of the receivership defendants).[1]

Attempting to distinguish Plaintiff's cases, Borrower Defendants argue that in each of these cases the receiver with the power to sell the property was granted on consent. (Opp., 3, 4.) Borrower Defendants, however, ignore that in this case they *did consent* and agree and even promised not to oppose any motion for a receiver with the powers set forth in the Forbearance Agreement, which includes the power to sell. While Borrower Defendants now argue otherwise, they cannot alter their unequivocal agreement that Plaintiff has the right to make a motion for a receiver with the power to sell – just as Plaintiff has done so in this motion.

## III. <u>Plaintiff's Application is Not Procedurally Improper</u>

Borrower Defendants incorrectly argue that it is premature to grant the temporary receiver the power of sale because Plaintiff seeks the appointment of a permanent receiver in its complaint, and Borrower Defendants have not served an answer or asserted any defenses or counterclaims, which might reflect on the propriety of that relief. (Opp., 5.) Borrower Defendants' argument is again contrary to their agreement in the Forbearance Agreement and their recent actions and stipulations.

First, Borrower Defendants' argument again seeks to have this Court rewrite the parties' Forbearance Agreement. Borrower Defendants agreed in the Forbearance Agreement that Plaintiff could make a motion for appointment of a receiver with the power to sell – not simply prosecute

---

[1] Borrower Defendants also incorrectly argue that there are no federal statutes that permit the Court to authorize a receiver to sell the Collateral Properties. Each of 28 U.S.C. § 754 (receivers of property in different districts), 28 U.S.C. § 2001(a) (addressing how a receiver appointed by a federal court should sell property), and 28 U.S.C. § 3103(b) (a receiver may be authorized "to administer, collect, improve, lease, report or sell pursuant to section 3007 such real and personal property as the court shall direct") is relevant. Collectively, they address the fact that federal courts may empower receivers to sell property located in multiples states, as is the case here. Regardless of whether there is an independent statutory basis, the parties expressly agreed that the receiver should have that authority.

an entire action over many months or longer to get a receiver in place with these power pursuant to a cause of action in their complaint.

Second, Borrower Defendants now have responded to the complaint and sought to dismiss a single cause of action – which has nothing to do with the propriety of having a receiver appointed with the power of sale. Rather than contest their Maturity Default, that they entered into and are bound by the Forbearance Agreement, or that selling the Collateral Properties is not the best way to avoid continued waste, Borrower Defendants only challenge whether the claim to require them to replenish a reserve account should be phrased as a "specific performance claim" or a "damage claim." Their motion has nothing to do with the relief sought in Plaintiff's instant motion.

Third, Borrower Defendants have now stipulated that Plaintiff is entitled to a receiver to protect the value of the collateral, which is subject to continued waste given its degrading condition and Borrower Defendants' undisputed refusal to maintain it. (Dkt # 62.) Plaintiff's right to protect this collateral from further waste by appointment of a receiver is especially critical where there has been an undisputed Maturity Default. *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008) (where it is undisputed that several events of default had occurred, a contractual provision allowing for the appointment of a receiver strongly supports the appointment of a receiver).

Critically, Borrower Defendants do not dispute Plaintiff's evidence submitted in support of its motion that (1) there is imminent danger that the Collateral Properties will decline in value; (2) there is a risk of fraudulent conduct by Borrower Defendants; (3) the Collateral Properties are inadequate security for the outstanding debt under the Loan; and (4) Borrower Defendants appear to be financially distressed. Having failed to challenge these assertions, Borrower Defendants waive any argument to the contrary. *Murtha v. New York State Gaming Commn.*, 2022 WL

784756, at *7 n.7 (S.D.N.Y. Mar. 15, 2022) (holding that party waives opposition to positions raised in moving papers but not contested).

As the parties recognized when they entered into and expressly provided for in the Forbearance Agreement, the best way to avoid continued waste of the collateral is to sell it. Borrower Defendants have no legal basis to escape their agreement that the receiver should have the power of sale. Nor do they have a right now to oppose this relief having consented to it and waived any right to oppose it in the Forbearance Agreement. Granting the temporary receiver authority to continue to sell the Collateral Properties is necessary to continue the plan that the parties have already set in motion. Failure to do so would risk further harm to Lender's collateral.

## IV. Borrower Defendants Incorrectly Argue that the Collateral Can Be Protected from Waste Without Sale.

Borrower Defendants incorrectly argue that protecting the value of the collateral can be best achieved without sale. (Opp., 6.) As explained above, however, Borrower Defendants and Lender acknowledged and agreed otherwise in the Forbearance Agreement. In fact, they memorialized a plan to begin selling individual properties and remitting those proceeds to Lender because they recognized that Borrower Defendants have no money or are unwilling to provide funds to preserve and maintain these properties. (Wheeler Decl., Ex. 9 (Forbearance Agreement), § 1.3(a).) For that very reason, they granted the receiver the power to sell the collateral and continue the sale of these properties.

If the receiver does not have this power, the collateral will continue to degrade, as evidenced by the material decline in the proposed purchase price for certain properties that had been under contract or in negotiation to be sold as of the filing of Plaintiff's motion to appoint a receiver. For example, for University Hill, Shadow Creek and Riverside Ranch, collectively, the original proposed purchase price was $51 million. (Reply Wheeler Decl. at ¶ 9.) That price was

reduced first to $47 million and was made subject to a proposed ten percent (10%) holdback from the sales proceeds otherwise due to Lender as part of a seller financing mechanism. (*Id.*) Thereafter, the parties again proposed to adjust the purchase price to $46.2 million, as part of an all-cash transaction. (*Id.*) The proposed buyer has since withdrawn its interest in the related properties. (*Id.*) Further, for Galloway Village and Hilliard Village, the initial aggregate purchase price presented by Borrower Defendants was $42.6 million. (*Id.* at ¶ 10.) In November 2023, the parties proposed a reduction in the aggregate sale price to $39 million. (*Id.*) The Borrower Defendants have since proposed to sell these properties collectively or individually. In either case, the aggregate proposed purchase price has been reduced to $38 million. (*Id.*)

Borrower Defendants cannot simply chalk these problems up to "mismanagement" of the Collateral Properties. Borrower Defendants do not dispute that they are not providing funds to the property manager to maintain these properties, despite repeated requests, and the Collateral Properties continue to degrade. (Reply Wheeler Decl. at ¶ 11.) Although Plaintiff can provide additional loans to fund the property, Plaintiff is not obligated to do so and should not be blamed for not wanting to sink more money into a loan that it may never collect. It was for that very reason that they sought and obtained the power to sell for a receiver and embarked on a sale plan with Borrower Defendants.

Borrower Defendants' argument that the sale of these properties will alter the nature of the collateral – from real property to cash – was waived when it agreed to exactly that in the Forbearance Agreement. Borrower Defendants agreed that the receiver should have the power to sell. They cannot now complain about or oppose the very relief they consented to and agreed should be provided for following their undisputed Maturity Default.

Accordingly, the Court should grant the very relief provided for by the parties in the Forbearance Agreement and empower the receiver to market and sell the Collateral Properties.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion should be granted.

Dated: January 29, 2024

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Noah M. Weissman*

Noah M. Weissman
Matias R. Gallego-Manzano
1290 Avenue of the Americas
New York, New York 10104
T: (212) 541-2000
noah.weissman@bclplaw.com
matias.gallegomanzano@bclplaw.com

*Attorneys for Wells Fargo Bank, National Association, as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2019-MFP, Commercial Mortgage Pass-Through Certificates, Series 2019-MFP*