**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2019-MFP, Commercial Mortgage Pass-Through Certificates, Series 2019-MFP,<br><br>Plaintiff,<br><br>v.<br><br>BARRINGTON PARK OWNER LLC, *et al*.,<br><br>Defendants. | Civil Case No. 23-cv-09972 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**AND**
**OPPOSITION OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**BRYAN CAVE LEIGHTON PAISNER LLP**

1290 Avenue of the Americas
New York, New York 10104
212-541-2000

*Attorneys for Plaintiff*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................................... 1

UNDISPUTED FACTS .............................................................................................. 1

ARGUMENT ........................................................................................................... 3

I. Defendants Unambiguously and Unconditionally Agreed to a Receiver with Power of Sale ................................................................................ 3

II. Defendants Have an Contractual Obligation to Deposit Funds, on an Ongoing Basis, to Address Any Forbearance Reserve Funds' Deficit ....................................... 8

III. Defendants Are Contractually Obligated to Provide Plaintiff the Right to Examine their Books and Records ................................................................ 10

IV. Defendants Cross Motion for Summary Judgment Lacks Merit ............................... 11

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of America, N.A. v. BK Inner City Chicken Inc.*,
No. 09-06789- LAK (S.D.N.Y. Feb. 5, 2013) ........ 7

*Bank of N.Y. Mellon v. WMC Mortg., LLC*,
136 A.D.3d 1 (1st Dept. 2015), *aff'd sub nom. Bank of New York Mellon v. WMC Mortg., LLC*, 28 NY3d 1039 (2016) ........ 3

*Bank of New York v. Franklin Advisers, Inc.*,
726 F.3d 269 (2d Cir. 2013) ........ 3, 5

*EMI Catlogue P'ship v. CBS/FOX Co.*,
No. 86 CIV 1149 (PKL), 1994 WL 163700 (S.D.N.Y. Apr. 28, 1994) ........ 5

*Lama v. 3681 Broadway Hous. Dev. Fund Corp.*,
67 Misc.3d 1209(A) (Sup. Ct. 2020) ........ 10

*Leasco Corp. v. Taussig*,
473 F.2d 777 (2d Cir.1972) ........ 9

*Morlee Sales Corp. v. Manufacturers Trust Co.*,
9 N.Y.2d 16 (1961) ........ 3

*Nobel Ins. Co. v. City of New York*,
00-CV-1328 KMK, 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) ........ 9

*Retirement Plan for General Employees v. McGraw-Hill Companies, Inc.*,
120 A.D.3d 1052 (1st Dept. 2014) ........ 10

*RSS CSMC2021 – ADV - DE AUR, LLC v. Adventus US Realty #4 LP*,
Case No. 23-0231 (S.D.N.Y. Sep. 22, 2023) ........ 7

*Sokoloff v Harriman Estates Dev. Corp.*,
96 N.Y.2d 409 (2001) ........ 9

*Teichman by Teichman v. Community Hosp. of W. Suffolk*,
87 N.Y.2d 514 (1996) ........ 3

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*,
866 F. Supp. 2d 247 (S.D.N.Y. 2012) ........ 6

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
1 N.Y.3d 470 (2004) ........ 4

*Wilmington Trust, National Association v. Bricks & Timber Residential LLC et al.*,
Case No. 7:24-cv-06353-CS (S.D.N.Y. Aug. 22, 2024) .......................................................... 6

**Other Authorities**

Restatement (Second) of Contracts § 360 (1981) ............................................................................ 9

## PRELIMINARY STATEMENT

Defendants' Opposition to Plaintiff's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgment ("Brief") fails to identify any material issues of fact or legal basis to either deny Plaintiff's motion for summary judgment or grant Defendant's cross-motion for summary judgment. Instead, Defendants attempt to convince this Court that (i) contrary to the plain language in the Forbearance Agreement, the Court may rewrite that provision to eliminate Defendants' agreement and consent to the appointment of a receiver with power of sale; (ii) despite acknowledging their refusal to replenish Forbearance Reserve Funds in breach of the Forbearance Agreement, Defendants cannot be directed to specifically perform their obligation on an ongoing basis; and (iii) despite acknowledging that they are contractually obligated to provide Plaintiff with books and records on the operation of the Properties, Plaintiff should be limited to its procedural right to discovery in this action as a substitute. Defendants' arguments are contrary to law, the undisputed facts, and a plain reading of the parties' agreements.

## UNDISPUTED FACTS

Defendants do not dispute that:

- When Plaintiff commenced this action, it was and still is the owner and holder of the Note and Security Instruments. (*See* Declaration of Whitney B. Wheeler in Support of Plaintiff's Motion for Summary Judgment (Doc. No. 140, "Wheeler Decl."), ¶¶ 23, 24; Doc. No. 156, Defendants' Responses to Plaintiff's Rule 56.1 Statement ("Defendants' 56.1 Statement Response"), ¶ 5.)

- The Loan matured on July 9, 2022 (Answer, ¶ 75; Defendants' 56.1 Statement Response, ¶ 11), and Defendants failed to repay the Loan in full resulting in a Maturity Default (Defendants' 56.1 Statement Response, ¶ 12), which Defendants acknowledged in the Forbearance Agreement. (Doc. No. 140-103, Forbearance Agreement, Ex. 13 to Wheeler Decl., Recital G.) The Loan has not been repaid in full by Defendants and remains in default. (Wheeler Decl., ¶ 40; Defendants' 56.1 Statement Response, ¶ 14.)

- With the Loan in default, Defendants neglected to maintain the Collateral Properties, which caused their condition to degrade significantly. (*Declaration of Tina Walters in Support of Plaintiff's Request for Appointment of Receiver* (Doc. No. 53, "Walters Decl.") (Dkt. No. 53), Exs. A-AA; Defendants' 56.1 Statement Response, ¶ 25.)

- To avoid further diminution in value and maximize the funds available to pay off the Loan following the Maturity Default, the parties entered into various Consent Agreements, which provided for the sale of particular Collateral Properties and use of those funds to repay the Loan, and the Forbearance Agreement, where Defendants agreed to continue selling Collateral Properties, maintain a reserve fund, and allow the appointment of a receiver that would have the power to continue selling the Collateral Properties. (Wheeler Decl., Exs. 13 (Forbearance Agreement) and 12.1-12.7 (Consent Agreements); Defendants' 56.1 Statement Response, ¶ 15-16.)

- Accordingly, Defendants expressly consented and agreed, in the Forbearance Agreement, to the appointment of a receiver, which expressly provides, in part, that any receiver sought by Plaintiff have "full power to … sell … the Mortgaged Property upon such terms and conditions as said receiver may deem to be prudent under the circumstances." (Wheeler Decl., Ex. 13 (Forbearance Agreement), § 3.11(d); Defendants' 56.1 Statement Response, ¶ 18-19.)

- Defendants agreed to "pay to Lender a deposit of $1,700,000.00 (the "Forbearance Reserve Funds"), which amounts shall be deposited into the Debt Service Account … and held by Lender as additional collateral for the Loan and for the payment of Shortfall Amounts …" and "[i]n the event the amount of the Forbearance Reserve Funds on deposit with Lender falls below $1,000,000.00 (a "Forbearance Reserve Deficit") … Borrower shall deposit with Lenders such amount so that the amount of the Forbearance Reserve Funds equals $1,700,000.00…." (*Id.*, § 2.3(a); Defendants' 56.1 Statement Response, ¶ 42.)

- In accordance with the Forbearance Agreement, Plaintiff released $1,700,000.00 in Forbearance Reserve Funds on June 5, 2023. (Wheeler Decl., ¶ 50; Defendants' 56.1 Statement Response, ¶ 41.)

- Defendants, however, have not deposited and have repudiated their ongoing obligation to deposit funds sufficient to maintain the Forbearance Reserve Fund at $1,700,000. (Wheeler Decl., ¶ 54; *see also Declaration of Seth A. Smith*, dated February 21, 2025 (Doc. No. 141 "Smith Decl."), ¶¶ 5-7; Defendants' 56.1 Statement Response, ¶¶ 45-49.)

- The Loan Agreement provides Plaintiff the right to examine the books, records and accounts of all the financial affairs of the Defendants and all items of income and expense in connection with the operation of each of the Collateral Properties (Wheeler Decl., Ex. 2 (Loan Agreement), § 5.1.11; Defendants' 56.1 Statement Response, ¶¶ 22-23.)

Given the undisputed facts and the law, Plaintiff's motion for summary judgment should be granted, and Defendants' cross-motion for summary judgment should be denied.

## ARGUMENT

### I. **Defendants Unambiguously and Unconditionally Agreed to a Receiver with Power of Sale**

Defendants do not dispute that the Forbearance Agreement plainly and unambiguously provides that any receiver sought by Plaintiff would be vested with "the usual powers and duties of receivers … **including the full power to** take possession of, hold, develop, rent, lease, **sell,** manage, maintain, operate and otherwise use or permit the use of **the Mortgaged Property upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances**." (Forbearance Agreement (emphasis added), Ex. 13 to Wheeler Decl.) Instead, Defendants argue that this list is "qualified in a crucial way" that allows the Court to rewrite the parties' agreement and excise "the full power to … sell" from the parties' agreement. In essence, Defendants ask this Court to render this entire provision malleable, requiring the Court to evaluate every express grant of authority as subject to being negated depending on whether the Court subsequently determines it is not one of the "usual powers and duties of receivers…" Defendants' argument is contrary to both the plain intent of the parties, the express language of the provision, and New York law.

Defendants do not contest that New York law indisputably provides that a "contractual provision that is clear on its face must be enforced according to the plain meaning of its terms," and that courts may not "add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Bank of N.Y. Mellon v. WMC Mortg., LLC*, 136 A.D.3d 1, 6 (1st Dept. 2015), *aff'd sub nom.* Bank of New York Mellon v. WMC Mortg., LLC, 28 NY3d 1039 (2016) (citation and quotations omitted; *see also Teichman by Teichman v. Community Hosp. of W. Suffolk*, 87 N.Y.2d 514, 520 (1996); *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19 (1961); *Bank of New York v. Franklin Advisers, Inc.*, 726 F.3d 269, 278

(2d Cir. 2013) ("when interpreting a contract the entire contract must be considered so as to give each part meaning") (quotations omitted). Nor do Defendants challenge, in their Brief, that this is especially true where the agreement concerns real property and "was negotiated between sophisticated, counseled business people negotiating at arm's length." *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (internal citations and quotations omitted).

Yet, Defendants' Brief argues that the Court should rewrite the Forbearance Agreement to remove the phrase "full power to … sell…" and invites the Court to adopt a reading of the agreement that would make it malleable depending on whether the Court finds any enumerated power a "usual" power granted to receivers "under applicable law and/or pursuant to local custom." (Brief, 4.) Nothing in the Forbearance Agreement, however, provides that the power of sale is qualified or is a potential power. Instead, the parties explicitly included a minimum list of the powers they intended the receiver to have along with the more general mandate of the usual powers and duties of a receiver under applicable law or pursuant to local custom:

> **any order appointing such receiver shall provide receiver with all of the usual powers and duties of receivers** under applicable law and/or pursuant to local custom, **<u>including</u> the full power to take possession of, hold, develop, rent, lease, sell, manage, maintain, operate and otherwise use or permit the use of the Mortgaged Property** upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances. **Such receivership may, at the option of Lender** and unless otherwise limited by any order appointing such receiver, **continue** until full payment and performance of the Obligations or **until title to the Mortgaged Property shall have passed by** foreclosure sale, **receiver sale** or deed in lieu of foreclosure…."

(*See* Wheeler Decl., Ex. 13 (Forbearance Agreement), § 3.11(d) (emphasis added).)

As a plain reading of this provision makes clear, the parties expressed their clear intent that, in their view, each of the expressly enumerated powers are included among the usual powers and duties of the receiver to be appointed. By providing a list following the term "including", the parties plainly intended to dispel any ambiguity, not create it, and to ensure that there would be no question

that the receiver would have these powers. *See EMI Catlogue P'ship v. CBS/FOX Co.*, No. 86 CIV 1149 (PKL), 1994 WL 163700, at *14 (S.D.N.Y. Apr. 28, 1994) ("The most natural reading of the term 'including' is simply that the broad reservation of rights expressed in the first clause … 'includes' those rights thereafter specified rather than is limited by those specified rights."). Adopting an interpretation of this language that allows the Court to rewrite the parties' agreement to excise these terms or transform the term "including" into a limiting qualifier is contrary to a plain reading of the provision and well-accepted principles of contract interpretation.

Defendants' argument also impermissibly ignores the remainder of the language in that provision and other provisions within the Forbearance Agreement. *See Bank of New York*, 726 F.3d at 278 (precluding an interpretation of a contract that ignores or would render terms meaningless). In that regard, Defendants ignore that the parties included a qualifier on the listed powers granting discretion to the appointed receiver – *i.e.*, "the full power to … sell … **upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances**." (Wheeler Decl., Ex. 13 (Forbearance Agreement), § 3.11(d) (emphasis added).) Plainly, the parties knew how to draft a qualifier to the power and did so, granting discretion to the receiver, not requiring the Court to subsequently rewrite the parties' agreement. Where the parties expressly provided for a qualifier, the Court should not otherwise imply a different one.

Furthermore, Defendants do not dispute or even address that the remainder of Section 3.11(d) underscores the power of the receiver to sell the Collateral Properties. Specifically, Section 3.11(d) provides that the receivership may continue until title to the Collateral Properties "shall have passed by … receiver sale …" (*Id.*) And the following sentence grants Plaintiff the right to have the Mortgaged Property "sold by … receiver sale in accordance with applicable law [and] to obtain any

judicial order confirming or approving any such sale[.]" (*Id.*) Defendants' argument would impermissibly negate these provisions.

Even if the receiver's power of sale was subject to being excised from the parties' agreement based on Defendants' argument that the parties intended the Court to evaluate whether it falls within the powers and duties of receivers under applicable law or local custom, Courts in this jurisdiction have granted receivers the right to sell collateral property. *See e.g., Wilmington Trust, National Association v. Bricks & Timber Residential LLC et al.*, Case No. 7:24-cv-06353-CS (S.D.N.Y. Aug. 22, 2024) at Doc. No. 23 at ¶ 16 (authorizing temporary receiver "to list or otherwise advertise all or any portion of the Properties for sale" and "to execute contracts to sell the Properties … by way of public or private sale[.]"); *see also U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC,* 866 F. Supp. 2d 247, 257 (S.D.N.Y. 2012) (upholding the right of receiver to sell collateral property "to avoid a substantial and preventable decline in the value of its collateral").

Defendants ineffectively attempt to distinguish *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop,* arguing that the plaintiff in *Nesbitt* sought foreclosure. (Brief, 7.) Yet, Defendants' argument fails to explain why seeking foreclosure somehow makes it more appropriate for the receiver to have the power of sale, instead of the opposite. Furthermore, in *Nesbitt,* the Court appointed a receiver despite finding that "no immediate relief other than the appointment of a receiver [was] sought directly from the Court," *id.* at 255, and explaining that the plaintiff there intended to commence "foreclosure proceedings in the various states where the hotels are located." *Id.* at 256. The same undisputed fact pattern exists here. There is no dispute that Plaintiff has already commenced foreclosure proceedings in the various states where most of the remaining Collateral Properties are located.

Attempting to distinguish other cases where courts appointed a receiver with power of sale, Defendants argue that those receiver orders were consensual. (Brief, 8.) For example, Defendants

note that *RSS CSMC2021 – ADV - DE AUR, LLC v. Adventus US Realty #4 LP*, Case No. 23-0231 (S.D.N.Y. Sep. 22, 2023), which empowered the receiver to sell receivership property and to engage a real estate broker to market the property for sale, was entered on consent. Yet Defendants argument ignores a fundamental, undisputed fact in this case. Defendants unequivocally and irrevocably consented in the Forbearance Agreement to the appointment of a receiver with power of sale and expressly "agree[d] not to oppose any application by [Plaintiff] for such receiver appointment." (Forbearance Agreement, § 3.11(d).)

Defendants next challenge Plaintiff's reliance on *Bank of America, N.A. v. BK Inner City Chicken Inc.*, Case No. 09-06789- LAK (S.D.N.Y. Feb. 5, 2013), which authorized a temporary receiver to sell and convey receivership assets, noting that "the Court was enforcing a settlement agreement between the parties" and "such application was unopposed." (Brief, 8.) Again, Defendants ignore that the Forbearance Agreement was a partial settlement agreement between the parties, whereby Plaintiff agreed to temporarily refrain from exercising its foreclosure and receivership remedies with respect to the Collateral Properties to allow the Defendants to sell the Collateral Properties and, upon an Event of Default, to vest the power in a receiver to sell the Collateral Properties. Simply put, each of these cases establish that it is within the law and local custom for courts to appoint a receiver with the power of sale where the borrower has consented and agreed to it – just as Defendants did in the Forbearance Agreement.

For all these reasons, this Court should grant summary judgment for Plaintiff and authorize the receiver, in accordance with the express terms of the Forbearance Agreement, to sell the Remaining Collateral Properties upon such terms and conditions as the receiver may deem to be prudent and reasonable under the circumstances.

## II. Defendants Have an Contractual Obligation to Deposit Funds, on an Ongoing Basis, to Address Any Forbearance Reserve Funds' Deficit

Defendants do not dispute that they have breached and repudiated their ongoing obligation, under Section 2.3(a) of the Forbearance Agreement, to make the full initial "deposit of $1,700,000.00 (the "Forbearance Reserve Funds") … into the Debt Service Account…" or "[i]n the event the amount of the Forbearance Reserve Funds on deposit with Lender falls below $1,000,000.00 (a "Forbearance Reserve Deficit") … deposit with Lenders such amount so that the amount of the Forbearance Reserve Funds equals $1,700,000.00…." (Wheeler Decl., Ex. 13 (Forbearance Agreement), § 2.3(a).) Nor do Defendants dispute that these funds are subject to draw down on an ongoing basis by the Plaintiff. (*Id.*)

Instead, Defendants attempt to avoid their obligation and dismiss this claim based on an argument that Plaintiff's should have sought a single, fixed money judgment, not specific performance requiring ongoing compliance with this obligation. The Court, however, has already addressed this argument and rejected it. (Doc. No. 111.) As Defendants acknowledge in their Brief, this Court denied Defendants' motion to dismiss Plaintiff's second cause of action and rejected this very argument. (Brief, 10-11; Doc. No. 111.) This Court held that specific performance may be an appropriate remedy where damages for Defendants' breach cannot be determined "with reasonable certainty." (*Id.*, at 3-4.) Then and now, Defendants claim that a payment of a sum certain would suffice to make the Plaintiff whole for repudiating their ongoing obligation to replenish and maintain sufficient funds in the reserve. (Brief, 11-12.) Yet, the Court made clear in its Opinion denying Defendants' motion to dismiss that "such an amount [was] not clear at present and may not be at the time of judgment." (Doc. No. 111, at 4-5.)

By their nature, the amount of the funds to be deposited are always subject to change. As the Court previously held and as is law of the case, a specific performance order is appropriate to address

this ongoing obligation. *Nobel Ins. Co. v. City of New York*, 00-CV-1328 KMK, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) (although the law of the case doctrine does not always preclude a court from reconsidering issues on summary judgment that have been raised in the context of a motion to dismiss, the court would not reconsider prior rulings that were not altered by discovery, as is the case here.)

Defendants also do not dispute that the existence of a remedy at law does not preclude the granting of specific performance. (Brief, 10-11.) *See Leasco Corp. v. Taussig*, 473 F.2d 777, 786 (2d Cir.1972). Specific performance is appropriate where, for example, "the subject matter of the particular contract … has no established market value." *Sokoloff v Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 415 (2001) (quotations omitted). The decision whether "to award specific performance is one that rests in the sound discretion of the trial court." *Id.* In determining whether money damages are an adequate remedy, "a trial court must consider, among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award." *Id.* (citing Restatement (Second) of Contracts § 360 (1981)).

Furthermore, Defendants' argument ignores that these funds are not "damages" that Plaintiff is entitled to stick in its pocket and keep without restriction. Rather, they are funds that are to be deposited into a reserve account for particular uses, including addressing ongoing repair and maintenance needs at the Collateral Properties. In other words, these funds do not belong to Plaintiff without condition, as would be the case with a simple damage award. A simple money judgment does not address this issue or this limitation. A specific performance judgment requiring Defendants to replenish the Forbearance Reserve Funds on an ongoing basis is the most appropriate way to address Defendants' refusal to meet their ongoing obligation to fund the reserve.

## III. Defendants Are Contractually Obligated to Provide Plaintiff the Right to Examine their Books and Records

There is no dispute that the Loan Agreement entitles Plaintiff to receive all books and records related to the financial operations of the Properties. Defendants unequivocally agreed in the Loan Agreement to provide Plaintiff the right to examine "books, records and accounts [reflecting all the financial affairs of Borrower and all items of income and expense in connection with the operation on an individual basis of the Properties.]" (Wheeler Decl., Ex. 2 (Loan Agreement), § 5.1.11(a).)

Defendants argue that the court-appointed receiver "presumably" has access to some financial information relating to the ongoing operation of the Collateral Properties and that Defendants have produced some documents during discovery. (Brief, 12-13.) Yet, turning over records to the Receiver is not the same as turning them over to Plaintiff. The order appointing the receiver granted the Receiver access to all Defendants books and records, not Plaintiff.

Furthermore, even if Plaintiff may have access to *some* financial information relating to the operation of the Collateral Properties from discovery, Defendants do not claim that they have produced in discovery all books and records required by the Loan Agreement. Nor does the law provide that discovery in litigation negates a claim for an accounting or a books and records request under contract or in equity. *Retirement Plan for General Employees v. McGraw-Hill Companies, Inc.*, 120 A.D.3d 1052, 1056 (1st Dept. 2014) (recognizing that the right to books and records is separate and may be broader than right to discovery); *Lama v. 3681 Broadway Hous. Dev. Fund Corp*., 67 Misc.3d 1209(A) (Sup. Ct. 2020)).

Having failed to refute Plaintiff's evidence that they have not provided such information (Wheeler Decl., ¶ 60), Plaintiff is entitled to summary judgment.

## IV. Defendants Cross Motion for Summary Judgment Lacks Merit

By cross-moving for summary judgment, Defendants concede that there remains no genuine dispute of material fact. For the reasons stated above and in Plaintiff's moving brief, Defendants' cross-motion is without merit. Plaintiff is entitled to judgment as a matter of law and under the undisputed facts.

## CONCLUSION

For all of these reasons, Plaintiff's motion for summary judgment should be granted and Defendants' cross-motion for summary judgment should be denied.

Dated: April 25, 2025

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Noah M. Weissman*
Noah M. Weissman
Matias R. Gallego-Manzano
Anoop Sadanandan
1290 Avenue of the Americas
New York, New York 10104
T: (212) 541-2000
noah.weissman@bclplaw.com
matias.gallegomanzano@bclplaw.com
anoop.sadanandan@bclplaw.com

*Attorneys for Wells Fargo Bank, National Association, as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2019-MFP, Commercial Mortgage Pass-Through Certificates, Series 2019-MFP*