UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wells Fargo Bank, National Association,<br><br>                            Plaintiff,<br><br>        v.<br><br>Barrington Park Owner LLC, et al.,<br><br>                            Defendants. | 23 Civ. 9972 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

      Plaintiff Wells Fargo Bank, N.A., as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2019-MFP, Commercial Mortgage Pass-Through Certificates, Series 2019-MFP ("Plaintiff" or "Lender"), brings this action against forty-three borrowers ("Defendants," "Borrower Defendants," or "Borrowers") who defaulted under a $481 million loan secured by real property (the "Collateral Properties") in Alabama, Arkansas, Florida, Mississippi, Louisiana, Ohio, Tennessee, and Texas. *See* Compl., ECF No. 1. Plaintiff brings three causes of action: (1) appointment of a receiver to, *inter alia*, manage, repair, market, and sell the Collateral Properties; (2) specific performance of Defendants' agreement to maintain $1.7 million in a reserve fund for the operational expenses of the Collateral Properties; and (3) specific performance of Defendants' agreement to provide an accounting of receipts, rents, income, and profits collected from each Collateral Property from the initial date of default to the present. *Id.* ¶¶ 116-139. Before the Court are the parties' cross-motions for summary judgment on all claims. *See* ECF Nos. 139, 151. For the reasons stated below, Plaintiff's motion is **GRANTED**, and Defendants' motion is **DENIED**.

## BACKGROUND[1]

### A. The Loan Agreement

On June 19, 2019, JP Morgan Chase Bank, National Association ("JPMCB") made a loan to Defendants, individually and collectively, in the original principal amount of $481,000,000.00 (the "Loan"). Pl.'s Rule 56.1 Statement ("Pl.'s SOF") ¶ 1, ECF No. 144. In connection with the Loan, each Defendant and JPMCB executed the Loan Agreement, dated as of the loan origination date. *Id.* ¶ 2; *see* Wheeler Decl. Ex. 2 ("Loan Agreement"), ECF No. 140-2. In accordance with the Loan Agreement, each Defendant also executed a promissory note payable in the original principal amount of $481,000,000.00 (the "Note"). *Id.* ¶ 3.

The respective obligations of each Borrower Defendant under the Note and the Loan Agreement are secured by a first-priority security instrument—either a mortgage, deed of trust, or deed to secure debt—executed by the respective Borrower Defendant for the benefit of JPMCB and recorded in the county where each Collateral Property is located (collectively, the "Security Instruments"). *Id.* ¶ 4.

Plaintiff is the current owner of the Loan and is the holder of the Note. *Id.* ¶ 5. Plaintiff's acquisition of the Note is evidenced by an Allonge, dated July 18, 2019, which was firmly affixed to the Note (the "Allonge"). *Id.* ¶ 6. JPMCB made parallel assignments of the Security Instruments in favor of Plaintiff (collectively, "Assignments"). *Id.* ¶ 7. JPMCB also made an additional parallel assignment of all of the other loan documents executed at origination (the "Loan

---

[1] The principal facts of this case are not in dispute and are set forth in Plaintiff's Rule 56.1 Statement (Pl.'s SOF"), ECF No. 144; *see also* Defs.' Resp. to Pl.'s Rule 56.1 Statement, ECF No. 156. The facts recited herein are undisputed except where otherwise noted. Where Defendants object to a statement on the grounds that it is immaterial, without citing to evidence specifically refuting the fact, the Court treats that fact as undisputed. All citations to a party's Local Civil Rule 56.1 statement incorporate by reference the declarations and exhibits cited therein.

Documents") pursuant to a General Assignment executed by JPMCB in favor of Plaintiff, dated as of July 18, 2019. *Id.* ¶ 8. Situs Holdings, LLC, as special servicer for this Loan, has been in physical possession of the Loan file, which contains the originals of the Loan Documents, including the Note and Allonge, since July 18, 2019. *Id.* ¶ 9. By virtue of the Allonge, the Assignments, and the General Assignment, Plaintiff possesses all rights, title, and interest in the Loan. *Id.* ¶ 10.

The Loan matured by its terms on July 9, 2022, and the Loan balance became immediately due and payable on that date. *Id.* ¶ 11. Defendants, however, failed to repay the Loan. *Id.* ¶ 12. Accordingly, on July 15, 2022, Plaintiff had a letter sent to each Defendant: (i) providing notice of an Event of Default for failure to "pay the entire outstanding principal balance of the Loan, all accrued and unpaid interest, and all other amounts due under the Loan Documents on the Maturity Date of the Loan" (i.e., the Maturity Default), and (ii) demanding repayment of the Loan (the "Maturity Default Notice"). *Id.* ¶ 13. Defendants still have not repaid the Loan in full. *Id.* ¶ 14.

### B. The Forbearance Agreement

Following the Maturity Default, Defendants entered into a Forbearance and Loan Modification Agreement with Plaintiff, in which Borrower Defendants acknowledged the Maturity Default. *Id.* ¶ 15; Wheeler Decl. Ex. 13 ("Forbearance Agreement"), ECF No. 140-103. Specifically, Borrower Defendants acknowledged in the Recitals, which were incorporated as a substantive part of the agreement, that:

> Defaults and Events of Default have occurred and are continuing under the Loan Documents as a result of (i) Borrower's failure to pay the entire outstanding principal balance of the Loan, all accrued and unpaid interest, and all other amounts due under the Loan Documents on the Maturity Date of the Loan … ("Current Defaults").

Forbearance Agreement at Recitals G.

After the Maturity Default, Defendants embarked on a plan to market and sell the Collateral Properties, through a series of sales to third-party buyers, and remit proceeds in partial repayment of the Loan. Pl.'s SOF ¶ 16. The parties acknowledged this plan in the Forbearance Agreement:

> Borrower has requested that Lender temporarily refrain from exercising its foreclosure and receivership remedies with respect to the Mortgaged Property as a result of the Current Defaults, as more specifically set forth herein, in order for the Borrower to complete the sale of the Individual Properties (each, a "Sale") and pay the Obligations in full, and Lender is willing to agree to the same subject to the terms and conditions of this Agreement.

Forbearance Agreement at Recitals L; *see also id.* § 1.3 ("The foregoing recitals are incorporated herein as a substantive, contractual part of this Agreement. This Agreement constitutes one of the Loan Documents."). As of the filing of the Complaint, Defendants had sold 16 of the Collateral Properties. Pl.'s SOF ¶ 17.

Under each of the Security Instruments, the respective Defendant agreed to the appointment of a receiver upon the occurrence and during the continuance of an Event of Default:

> Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions…: …(g) apply for the appointment of a receiver…without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or any indemnitor with respect to the Loan or of any Person liable for the payment of the Debt[.]

*Id.* ¶ 18; *see, e.g.*, Wheeler Decl. Ex. 5.5, ECF No. 140-9.

Defendants further consented to the appointment of a receiver in Section 3.11(d) of the Forbearance Agreement:

> Lender may move or make application to a court of competent jurisdiction for the appointment of a receiver for the Mortgaged [i.e., Collateral] Property, and shall be entitled to such appointment, as a matter of strict right, and . . . Borrower Parties hereby (i) irrevocably consent to such receiver appointment, (ii) knowingly and voluntarily waive any and all defenses to, and any and all rights to enjoin, appeal or otherwise interfere with, hinder or impede, any such motion, application or receiver appointment, (iii) knowingly and voluntarily waive any notices of any such

> motion, application or receiver appointment, (iv) agree not to oppose any motion or application by Lender for such receiver appointment, (v) shall cooperate and take all actions and execute and deliver all documents requested by Lender in order to effectuate such receiver appointment, including any other or further stipulations and/or consent orders to be filed with the applicable court of competent jurisdiction, and (vi) shall cooperate in connection with such receiver appointment by transitioning management and operational control of the Mortgaged Property to such receiver.

Pl.'s SOF ¶¶ 19-20; Forbearance Agreement § 3.11(d). Defendants further agreed that:

> any order appointing such receiver shall provide receiver with all of the usual powers and duties of receivers under applicable law and/or pursuant to local custom, including the full power to take possession of, hold, develop, rent, lease, sell, manage, maintain, operate and otherwise use or permit the use of the Mortgaged Property upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances. Such receivership may, at the option of Lender and unless otherwise limited by any order appointing such receiver, continue until full payment and performance of the Obligations or until title to the Mortgaged Property shall have passed by foreclosure sale, receiver sale or deed in lieu of foreclosure. Lender, in its sole discretion, shall be entitled to prosecute through completion in any Civil Action one or more causes of action for foreclosure of the Security Instrument, to have the Mortgaged Property sold by foreclosure sale or receiver sale in accordance with applicable law, [and] to obtain any judicial order confirming or approving any such sale . . . .

Pl.'s SOF ¶ 21; Forbearance Agreement § 3.11(d).

### C. Accounting and Turnover of Receipts

The Loan Agreement provides Plaintiff with a right to examine the Defendants' books, records, and accounts:

> Borrower will keep and maintain . . . books, records and accounts reflecting all of the financial affairs of Borrower and all items of income and expense in connection with the operation on an individual basis of the Properties. Lender shall have the right from time to time at all times during normal business hours upon reasonable written notice to examine such books, records and accounts at the office of Borrower or any other Person maintaining such books, records and accounts and to make such copies or extracts thereof as Lender shall desire. After the occurrence and during the continuance of an Event of Default, Borrower shall pay any reasonable out of pocket costs and expenses incurred by Lender to examine Borrower's accounting records with respect to the Properties, as Lender shall determine to be necessary or appropriate in the protection of Lender's interest.

Loan Agreement § 5.1.11(a), ECF No. 140-2; *see* Pl.'s SOF ¶ 22. The Loan Agreement also requires Defendants to provide Plaintiff with "detailed financial information with respect to the operation of the [Collateral] Properties and the financial affairs of the Borrower" Defendants as requested by Plaintiff. Loan Agreement § 5.1.11(f); Pl.'s SOF ¶ 23. Plaintiff contends that despite repeated demands, Defendants have not provided such information; Defendants counter that they have produced 22,633 distinct documents in discovery in this action. Pl.'s SOF ¶ 24; Defs.' Rule 56.1 Statement ("Defs.' SOF") ¶ 24, ECF No. 156.

      **D.**    **Condition of the Collateral Properties**

Prior to this Court's appointment of a temporary receiver in this action, Defendants failed to maintain the Collateral Properties in good working order and repair. Pl.'s SOF ¶ 25. Between September 6, 2023 and September 18, 2023, Allegiant Commercial Asset Services Group, LLC ("Inspectors") inspected the Collateral Properties and issued inspection reports, which included narrative descriptions and a numerical score reflective of each Collateral Property's condition according to definitions established by the Mortgage Bankers Association ("MBA Guidelines"). *Id.* ¶ 26. Five of the Collateral Properties received the worst rating, 5 out of 5. *Id.* ¶ 27. According to the MBA Guidelines, properties that score 5 exhibit inferior conditions, multiple non-functioning building components, severe deferred maintenance items, and multiple life/safety and code violations. *Id.* ¶ 28. Seven of the Collateral Properties received the second worst ratings, 4 out of 5. *Id.* ¶ 29. According to the MBA Guidelines, properties that score 4 exhibit deteriorating conditions and some life/safety or code violations, among other conditions, with deferred maintenance and life/safety issues not being addressed as quickly as required. *Id.* ¶ 30.

Defendants' failure to adequately maintain the Collateral Properties resulted in tenants vacating apartments, in several cases following condemnation by local authorities. *Id.* ¶ 31. The deteriorating conditions of the Collateral Properties were not attracting replacement tenants,

resulting in decreased occupancy. *Id.* ¶ 32. Decreasing occupancy, in turn, led to a further drop in revenue, which impaired the ability to maintain the Collateral Properties. *Id.* ¶ 33. Rent collections at the Collateral Properties had been dropping monthly and became insufficient to satisfy Defendants' operational expenses and debt service obligations. *Id.* ¶ 34. In August and September 2023, Defendants' cash management account maintained by Plaintiff contained insufficient funds to make required disbursements. *Id.* ¶ 35. As of August 24, 2023, Defendants' cash management shortfall was $495,228.47 and as of September 19, 2023, it was $2,232,217.05. *Id.* ¶ 36.

Generally, when Defendants' cash management account experienced a shortfall, the following month's collections were applied to satisfy amounts that had not been paid. *Id.* ¶ 37. Through September 2023, the cash management account had sufficient funds to cure the prior-month's shortfall. *Id.* ¶ 38. However, due to the declining revenue of the Collateral Properties, Defendants' cash management shortfalls had been increasing and it was taking more than one month's rent collection to cover one month's debt service and operational expenses. *Id.* ¶ 39. As of November 9, 2023, funds on deposit in the cash management account were insufficient by $1,656,04.09 to satisfy Defendants' October 2023 disbursement obligations. *Id.* ¶ 40.

On June 5, 2023, Plaintiff released $1,700,000.00 in Forbearance Reserve Funds (as defined in the Forbearance Agreement) for "the payment of any and all costs incurred in connection with the operation, management and/or maintenance of the" Collateral Properties, as provided for in the Forbearance Agreement. *Id.* ¶ 41. Section 2.3(a) of the Forbearance Agreement required Borrowers to deposit $1,700,000.00 with Plaintiff to replenish the Forbearance Reserve Funds on or before July 7, 2023. *Id.* ¶ 42. Defendants made a payment of $600,000.00 to partially replenish the Forbearance Reserve Funds on or about July 13, 2023. *Id.* ¶ 46. Despite repeated

7

written demands, Defendants have not paid the remaining $1,100,000.00 to replenish the Forbearance Reserve Funds. *Id.* ¶¶ 43-49.

### E. Procedural History and Appointment of Receiver

Plaintiff commenced this action on November 10, 2023. *See* ECF No. 1. On December 14, 2023, Plaintiff filed a motion for the appointment of a receiver during the pendency of this action. *See* ECF. Nos. 51-56. On January 23, 2024, this Court so-ordered a stipulation by the parties, in which Defendants consented to the appointment of a receiver during the pendency of this action but reserved their right to contest whether the receiver may be authorized to sell any property of the receivership estate. *See* So-Ordered Stipulation, ECF No. 62. The Court subsequently entered an order appointing Chris Neilson as the temporary Receiver to, among other things, take possession of, preserve, protect, administer, and collect on, improve, lease or repair the property of, the Collateral Property, i.e., the "Receivership Estate." *See* Interim Order Appointing Receiver, ECF No. 71. The order provides that the receivership shall continue until "judicial or non-judicial foreclosure proceedings against the entire Receivership Estate shall have been consummated, or upon payment of the Loan in full." *Id.* at 12.

On September 13, 2024, this Court denied Defendants' motion to dismiss Plaintiff's second cause of action. *See* ECF No. 111.

On February 21, 2025, Plaintiff moved for summary judgment. *See* ECF No. 139. On April 8, 2025, Defendants opposed Plaintiff's motion and cross-moved for summary judgment. *See* ECF Nos. 151-52.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute is genuine "if the evidence is such

8

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e) (amended to Fed. R. Civ. P. 56(c)(4) in 2010)).

---

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

## DISCUSSION

Plaintiff seeks summary judgment summary judgment against Defendants for all the relief requested in its Complaint, including judgment, as a matter of law: (1) maintaining the Receiver's appointment until the sale or foreclosure of all the Collateral Properties and granting Receiver the authority to market and sell the remaining Collateral Properties; (2) directing that Defendants fully fund the Forbearance Reserve Funds by depositing $1,100,000.00 with Plaintiff; and (3) directing that Defendants provide an accounting with respect to the Collateral Properties. *See* Pl.'s Mem. Supp. Summ. J. ("Pl.'s Mem.") at 1, ECF No. 143. Defendants do not dispute that they breached the Loan Agreement, but they argue that they are entitled to summary judgment because (1) neither the Forbearance Agreement nor applicable law contemplates the Receiver's power to *sell* the Collateral Properties; (2) the remedy of specific performance for the replenishment of the Forbearance Reserve Funds is inappropriate when a money judgment would suffice; and (3) Plaintiff has already obtained all the information it needs with respect to the Collateral Properties. *See* Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. & Supp. Cross-Mot ("Defs.' Mem.") at 1, ECF No. 152. The Court addresses each issue in turn.

I.     **The Receiver's Power to Sell**

In Section 3.11(d) of the Forbearance Agreement, Defendants "irrevocably consent[ed]" to the appointment of a receiver. Forbearance Agreement § 3.11(d). Specifically, Defendants agreed that:

> any order appointing such receiver shall provide receiver with **all of the usual powers and duties of receivers under applicable law and/or pursuant to local custom**, **including the full power to** take possession of, hold, develop, rent, lease, **sell**, manage, maintain, operate and otherwise use or permit the use of the Mortgaged Property upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances. Such receivership may, at the option of Lender and unless otherwise limited by any order appointing such receiver, continue until full payment and performance of the Obligations or until title to the Mortgaged Property shall have passed by foreclosure sale, **receiver sale**

10

> or deed in lieu of foreclosure. Lender, in its sole discretion, shall be entitled to prosecute through completion in any Civil Action one or more causes of action for foreclosure of the Security Instrument, to have the Mortgaged Property sold by foreclosure sale or ***receiver sale*** in accordance with applicable law, [and] to obtain any judicial order confirming or approving any such sale . . . .

*Id.* (emphasis added). The crux of the parties' disagreement is as follows. Plaintiff argues that "including the full power to . . . sell" means that any appointed receiver will have, *inter alia*, the power to sell the Collateral Property. *See* Pl.'s Mem. at 17. Defendants counter that "all of the usual powers and duties of receivers under applicable law and/or pursuant to local custom" limits the powers of the receiver to those authorized by applicable law and custom, which according to Defendants do not include the power to sell. *See* Defs.' Mem. at 4.

Under New York law, contracts are to be construed in accordance with the parties' intent. *See, e.g.*, *Slatt v. Slatt*, 477 N.E.2d 1099 (N.Y. 1985). "Where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used." *Id.* at 1100. Courts may not "add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Bank of N.Y. Mellon v. WMC Mortg., LLC*, 22 N.Y.S.3d 3, 6 (App. Div. 2015), *aff'd*, 28 65 N.E.3d 1275 (N.Y. 2016). Moreover, "when interpreting a contract, the entire contract must be considered so as to give each part meaning." *Brooke Grp. Ltd. v. JCH Syndicate 488*, 663 N.E.2d 635, 637 (N.Y. 1996).

Here, the contract is clear on its face. The plain language of the Forbearance Agreement demonstrates that the parties intended the powers of a court-appointed receiver to include the power of sale. The contract's use of the word "including" places that beyond any doubt. *See Include*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/include ("to take in or comprise as a part of a whole or group"). Clearly, the powers of a receiver encompass but are not limited to the enumerated powers in the list: the power to "take possession of, hold,

11

develop, rent, lease, sell," and so on. Forbearance Agreement § 3.11(d). Moreover, the references to "receiver sale" elsewhere in the same provision confirm that the parties intended the power of sale to be among the powers of a court-appointed receiver. *See* Forbearance Agreement § 3.11(d) (providing that the receivership may continue until title to the Collateral Properties "shall have passed by foreclosure sale, *receiver sale* or deed in lieu of foreclosure" and that Plaintiff may bring causes of action to have the Collateral Properties "sold by foreclosure sale *or receiver sale* in accordance with applicable law" (emphasis added)).

Defendants argue that the phrase "all of the usual powers and duties of receivers under applicable law and/or pursuant to local custom" limits the powers of any appointed receiver to those specifically authorized by law or custom, notwithstanding the powers enumerated in the next clause. Defs.' Mem. at 4. This reading is at odds with the plain language of the contract, which states that the powers of the receiver shall "includ[e] the full power to . . . sell" the Collateral Properties. Forbearance Agreement § 3.11(d). But even if the text were ambiguous, Defendants have not shown that the power of sale exceeds the usual powers and duties of court-appointed receivers. To the contrary, as another court in this District has explained:

> The Court's equitable power to appoint a receiver extends to situations where a plaintiff who is a secured creditor seeks the appointment of a receiver to avoid a substantial and preventable decline in the value of its collateral, where . . . an explicitly stated and contemplated end of the receivership is the sale of the properties.

*U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 257 (S.D.N.Y. 2012). Here, the parties' explicit agreement that any receiver would have the power of sale is consistent with the Court's equitable power to appoint such a receiver.[3]

---

[3] Defendants seem to suggest that appointment of a receiver in this action at all is inappropriate because "the appointment of a receiver in equity is not a substantive right but is a remedy that is ancillary to the primary relief prayed for in the suit." Defs.' Mem. at 7 (quoting *U.S. Bank Nat.*

II.     **The Forbearance Reserve Funds**

Plaintiff next argues that it is entitled to summary judgment on its second cause of action, for specific performance of Defendants' agreement to replenish the Forbearance Reserve Funds. *See* Pl.'s Mem. at 22. Defendants argue that it would be inappropriate to order specific performance where a money judgment would suffice. *See* Defs.' Mem. at 10.

"In general, specific performance will not be ordered where money damages 'would be adequate to protect the expectation interest of the injured party.'" *Sokoloff v. Harriman Ests. Dev. Corp.*, 754 N.E.2d 184, 188 (N.Y. 2001) (quoting Restatement (Second) of Contracts § 359). But specific performance is appropriate where, for example, "the subject matter of the particular contract is unique and has no established market value." *Id.* "In determining whether money damages would be an adequate remedy, a trial court must consider, among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award." *Id.* In denying Defendants' motion to dismiss, this Court previously held:

> It may ultimately be the case that the total amounts Defendants owe Plaintiff on the Forbearance Agreement can be reduced to a sum certain that can easily be translated to a simple money damages award. But such an amount is not clear at present, and may not be at the time of judgment, if judgment is eventually issued in Plaintiff's favor.

---

*Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 254 (S.D.N.Y. 2012)). But because Defendants have already stipulated to the appointment of a receiver in this action, albeit reserving the right to contest whether the receiver may be given the power of sale, this argument falls flat. In any event, here, as in *Nesbitt*, "the appointment of a receiver is necessary to preserve the property for the secured lender and to effectuate the foreclosure and liquidation of the properties that are spread over [multiple] states." *Nesbitt*, 866 F. Supp. 2d at 256.

*Wells Fargo Bank, Nat'l Ass'n v. Barrington Park Owner LLC*, No. 23 Civ. 9972, 2024 WL 4188668, at *2 (S.D.N.Y. Sept. 13, 2024). Accordingly, the Court denied Defendants' motion to dismiss on this ground, but without prejudice to renewal of the argument.

Now, Defendants argue that a money judgment would be adequate because Plaintiffs seek a sum certain of $1,100,000. Defs.' Mem. at 12. Admittedly, Plaintiff's opening brief could be read to suggest that it seeks only a one-time payment. *See* Pl.'s Mem. at 1 (seeking an order "directing that Defendants meet their obligation under the Forbearance Agreement to fund fully the Forbearance Reserve Funds . . . by depositing $1,100,000.00 with Lender"). But Plaintiff's reply brief makes clear that the maintenance of the Forbearance Reserve Fund is an ongoing obligation and "the amount of the funds to be deposited [is] always subject to change." Pl.'s Reply Mem. Supp. Summ. J. ("Pl.'s Reply") at 8, ECF No. 157. The Forbearance Agreement itself confirms that this is not a one-time obligation, providing that any time the funds fall below $1,000,000, "Borrower shall deposit with Lender such amount so that the amount of Forbearance Reserve Funds equals $1,700,000.00." Forbearance Agreement § 2.3(a). Moreover, the relief sought in the Complaint is "specific performance of the Forbearance Agreement," Compl. ¶ 134, which encompasses that ongoing obligation. Plaintiff has established, beyond any genuine issue of material fact, that Defendants have breached that obligation. Accordingly, summary judgment is granted to Plaintiff on the claim for specific performance as to the Forbearance Reserve Funds.

### III. The Inspection of Defendants' Accounts

Finally, Plaintiff seeks specific performance of Defendants' agreement to allow Plaintiff to provide Plaintiff the right to examine "books, records and accounts . . . in connection with the operation" of the Collateral Properties. Pl.'s Mem. at 23. Defendants do not deny that Plaintiff has this right under the terms of the Loan Agreement. Nor do they deny that, other than through document production in this action, they have not provided such "detailed financial information"

14

with respect to the Collateral Properties as has been repeatedly requested by Plaintiff. Pl.'s SOF ¶¶ 23-24; Defs.' SOF ¶¶ 23-24. Defendants "deny the assertion that they have not provided financial information" because they have produced "22,633 distinct documents" in this litigation, but they do not claim to have produced in discovery *all* the financial information requested by Plaintiff. Defs.' SOF ¶ 24. While there has been extensive discovery in this case, the right to books and records under a contract is separate from the right to obtain discovery in litigation.

Defendants also argue that the "receiver has had control of the Properties for more than a year" and "presumably has access to whatever documents pertaining to the Properties which are in the possession of such property manager." Defs.' Mem. at 12. The Court agrees with Plaintiff that turning records over to the Receiver is not the same as turning them over to Plaintiff, and that the Receiver's access to those records does not negate Plaintiff's claim for an accounting under the contract. *See* Pl.'s Reply at 10. Accordingly, Plaintiff's motion is granted on this claim.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (ECF No. 139) is **GRANTED** and Defendants' motion for summary judgment (ECF No 151) is **DENIED.**

By **October 14, 2025**, Plaintiff shall file a proposed judgment in this case, along with a proposed Schedule of the categories of documents subject to Plaintiff's third cause of action. Prior to that date, the parties are directed to meet-and-confer as to the categories of documents properly subject to Plaintiff's third cause of action. If the parties cannot agree as to the scope of the Schedule of documents, they shall, on the same date, each submit letter briefs not to exceed three (3) pages as to their respective positions. Defendants may attach to their letter brief their own proposed Schedule of documents subject to Plaintiff's third cause of action.

15

The Clerk of Court is respectfully requested to terminate ECF Nos. 139 and 151.

SO ORDERED.

Dated: September 30, 2025

      New York, New York

DALE E. HO
United States District Judge
