**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2019-MFP, Commercial Mortgage Pass-Through Certificates, Series 2019-MFP,

Plaintiff,

v.

BARRINGTON PARK OWNER LLC, *et al*.,

Defendants.

Civil Case No. 23-cv-09972-DEH

~~[PROPOSED]~~ **JUDGMENT**

**JUDGMENT IN A CIVIL CASE**

**DECISION BY COURT.**

**IT IS ORDERED AND ADJUDGED** that, as set forth in the Opinion and Order dated September 30, 2025 (ECF Doc. No. 162), judgment is hereby entered in favor of Plaintiff and against Defendants on Defendants' motion for summary judgment (ECF Doc. No. 151).[1]

---

[1] For clarity, the following entities are "Defendants": Barrington Park Owner LLC, Chateau Glen Oaks Owner LLC, Manchester Park Owner LLC, Vista Place Owner LLC, Atwood Owner LLC, Colonial Forest Owner LLC, Davis Gardens Owner LLC, Northwood Owner LLC, University Courtyard Owner LLC, Knoxville Pointe Owner LLC, Abington Owner LLC, Cheswick Village Owner LLC, Colfax Owner LLC, Edison Pointe Owner LLC, Hickory Ridge Property Owner LLC, Winchester Village Owner LLC, Winchester Woods Owner LLC, Chateau Royale Owner LLC, East Gate Owner LLC, Hallmark Gardens Owner LLC, North Gate Owner LLC, Pebble Creek Owner LLC, Southwind Owner LLC, Advantages Owner LLC, Timber Ridge Owner LLC, Fox Chase Apartments 1 LLC, Roco – High Point in The Park LLC, Roco–Hilliard LLC, Quail Creek Investments LLC, Steeplechase Advisers II LLC, Lakes At Ridgeway Owner LLC, Moriah Owner LLC, Stonegate Owner LLC, Arlington Owner LLC, Forest View Owner LLC, Riverside Ranch Owner LLC, Shadow Creek Owner LLC, And University Hill Owner LLC, Caleb's Creek Holdings LLC, Galloway Apartments LLC, Trotwood Holdings LLC, Roco–Loganberry LLC, and Roco–Parkside LLC

Judgment also is entered in favor of Plaintiff and against Defendants on Plaintiff's motion for summary judgment (ECF Doc. No. 139) as follows (the "Judgment"):

**FIRST CAUSE OF ACTION**
**APPOINTMENT OF RECEIVER AND AUTHORIZATION OF RECEIVER TO SELL PROPERTY IN RECEIVERSHIP ESTATE**

1. The Court's Interim Order Appointing Receiver, dated February 6, 2024 (ECF Doc. No. 71) (the "Interim Order") appointed Mr. Chris Neilson (the "Receiver"), who is a Managing Partner of Trigild, Inc., as the receiver of Defendants' assets in this matter, including all improvements, leases, equipment, fixtures, personal property, rent, intellectual property and trade names associated therewith, and all other collateral of Plaintiff other than funds in cash management, escrow, or reserve accounts in the possession of Plaintiff or controlled by Plaintiff in respect of that certain loan in the original principal amount of $481,000,000.00 made by Plaintiff to Defendant on or about June 19, 2019 (the "Loan", and such assets, collectively, the "Receivership Estate"). The Receivership Estate includes "the real property listed on Ex. 1" to the Interim Order, (collectively, the "Real Property").

2. The Real Property is "located in the Eastern District of Arkansas, Eastern District of Texas, Middle District of Florida, Northern District of Alabama, Northern District of Florida, Northern District of Mississippi, Northern District of Ohio, Southern District of Alabama, Southern District of Mississippi, Southern District of Ohio, Southern District of Texas, Western District of Louisiana, and Western District of Texas."

3. The terms of the Interim Order are hereby incorporated by reference as if set forth in their entirety in this Judgment, and the Receiver is granted all powers and duties in that Interim Order, except as modified as follows in this Judgment:

a. In addition to the Receiver's powers in the Interim Order, the Receiver has the power to market, list, and sell the remaining Real Property and

assets in the Receivership Estate, subject to obtaining Plaintiff's prior written approval of the terms of such marketing, listings and sales. This authority shall not limit or restrict Plaintiff's ability to conduct and consummate either a judicial or non-judicial foreclosure of the remaining Real Property and other assets in the Receivership Estate or exercise its other rights and remedies regarding the Receivership Estate whether under Loan Agreement (defined below) and the other documents and instruments evidencing the Loan (the "Loan Documents") or under applicable law.

b. The Receiver is authorized and empowered to execute, assign, issue, bills of sale, contracts, deeds, or exchange any other documents necessary or convenient for any purpose pursuant to this Judgment.

c. The Receiver is authorized to engage a real estate broker to market the properties in the Receivership Estate for sale (which may be subject to an assumption of the Loan Documents and the Loan).

d. Any sale, whether in the ordinary course of business, at public auction, by public tender, or private sale (conducted in accordance with 28 U.S.C. § 2001(b)), or on such other terms or conditions as the Receiver deems prudent and reasonable under the circumstances, subject to Plaintiff's written approval of such terms, shall be free and clear of all liens, claims, encumbrances, and interests; all valid security interests, liens, claims, and other interests, if any, shall attach to the proceeds of such sale(s) and shall further be subject to approval of the Court.

e. For clarity and to the extent not otherwise provided, the Receiver is further authorized to execute any documentation on behalf of the applicable Defendants as their respective attorney-in-fact to effectuate such sale(s).

f. For any sale of the Receivership Estate property, the Receiver shall receive a disposition fee equal to 0.25% of the gross sales price in addition to any commission that may be payable to a real estate broker engaged by the Receiver or by any buyer.

g. Any motion by the Receiver for specific relief or for Court approval of any act of the Receiver that requires such approval (including the proposed sale of Receivership Estate property, for disposition of claims, lawsuits or proceedings, for modification of this Judgment, or requests for instructions) shall be served on counsel for Plaintiff, the Defendants, and any party affected by the proposed sale or disposition of claims, lawsuits or proceedings, and all other interested parties that have filed and served on the Receiver a request for such notice of service.

h. Notice to Plaintiff and other parties-in-interest shall be provided no more than one (1) business day after filing the motion or as otherwise provided by the Court. Notice may be served by mail, express/overnight mail, personal service, or electronic mail.

i. The Receiver shall be deemed to have provided adequate notice if it complies with this paragraph and files a certificate of service.

j. The Receiver may consider various approaches for disposing of the collateral in the Receivership Estate in a manner that maximizes the value received for such assets.

k. Based on the Receiver's familiarity with the properties in the Receivership Estate and his prior experiences with online auctions, if the Receiver determines that an online auction is the strategy most likely to yield the best return for the Receivership Estate, subject to the terms of this Judgment, the Receiver may engage Auction.com or another online auctioneer to conduct the auctions as a "public sale" under 28 U.S.C. § 2001(a).

l. If the Receiver should elect to market and sell the Real Property via online auction, it is specifically ORDERED and ADJUDGED that online auctions will satisfy the statutory requirements for public sales by receivers. *See, e.g., Huntington Nat'l Bank v. Buccaroo LLC*, No. 22-11290, 2024 WL 2701614, at *10 (E.D. Mich. May 24, 2024) (approving online marketing and sales procedures and finding that such procedures comply with and satisfy the sale and notice requirements in 28 U.S.C. § 2001(a)); *Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2019 WL 3387760, at *2 (N.D. Tex. July 26, 2019) (concluding that "the text of the statute, interpreted literally, allows for the sale of receivership assets" from broker/auctioneer's website); *United States v. One 2005 Lagoon 440 Sailing Catamaran Named Bohemian Rhapsody*, No. CV 13-9262-DMG (JCX), 2017 WL 10573808, at *3 (C.D. Cal. Sept. 22, 2017) (analyzing § 2001(a) requirements in context of a "public sale via an online auction" of personal property and observing that "the online auction would likely attract more potential buyers . . . because they will have the convenience of submitting their bids online rather than having to travel to a courthouse or to the location in which it happens to be stored").

m. It is specifically ORDERED and ADJUDGED that online advertising "substantially complies with [28 U.S.C.] § 2002." *Faulkner*, No. 3:16-CV-1735-D, 2019 WL 3387760, at *2 (listing cases where courts approved of "notice procedures that deviated from the text of § 2002 in non-substantial ways").

n. It is specifically ORDERED and ADJUDGED that the procedures for marketing and selling the properties as set forth in this Judgment, substantially comply with the statutory requirements for advertising and selling real property under 28 U.S.C. §§ 2001 and 2002.

o. The Receiver is authorized, in his discretion, and subject to Plaintiff's prior written approval to set the sale terms and specify a "Contract Reserve Price" for each of the properties in the Receivership Estate, whether sold individually or in bulk lots. The "Contract Reserve Price" is defined as the gross contract price determined by the Receiver and approved by Plaintiff in advance of

the sale, and not the "Net Cash" received by the seller (after expenses) listed on the settlement statement.

p. The properties for auction shall be advertised on a rolling basis, and the auctions may begin on the later of (i) the date hereof or (ii) the date on which all statutory requirements under 28 U.S.C. § 2002 have been satisfied.

q. Auction.com or the online auctioneer shall advertise the auction through such auctioneer's website for four weeks immediately preceding each auction and also may use direct target marketing with email redirecting interested parties to the online portal landing pages.

r. Outreach marketing calls may also be made to prospective buyers and to prior buyers and users of the auction platform.

s. If a valid bid at an auction is equal to or greater than the "Contract Reserve Price," or is otherwise in price and terms acceptable to the Receiver in the Receiver's discretion and subject to Plaintiff's prior written approval, the highest bidder (auction purchaser) will enter into a Sale Procedures Agreement ("SPA").

t. The terms and conditions of the auction require the successful bidder to purchase the property, and the SPA establishes the conditions, terms, and procedures for closing the transaction, subject to the Court's approval.

u. Auctions that do not result in an approved buyer purchasing the property for an amount equal to or greater than the "Contract Reserve Price" will be suspended and then re-advertised, and the property or properties will be marketed for sale at another auction on a later date.

v. The receivership shall continue until the remaining properties in the Receivership Estate are sold or Plaintiff has consummated judicial or non-judicial foreclosure proceedings against the entire Receivership Estate.

w. The Receiver shall continue to make reports in accordance with the Court's Interim Order until Plaintiff forecloses on such properties or the properties are otherwise disposed of through deeds in lieu or sales by the Receiver. However, the reports shall include fulsome disclosure of the material terms of any receiver sale. Thereafter, the Receiver shall file a final report within 45 days of the final transaction and move to be discharged from his duties. The parties shall have ~~15~~ 30 days to object to the Receiver's report or motion.

**SECOND CAUSE OF ACTION**
**SPECIFIC PERFORMANCE TO CURE**
**FORBEARANCE RESERVE DEFICIT**

4. As set forth in the Opinion and Order dated September 30, 2025 (ECF Doc. No. 162), judgment is hereby entered in favor of Plaintiff on its claim seeking specific performance of

Defendants' agreement under Section 2.3(a) of the parties' June 5, 2023 Forbearance Agreement (ECF Doc. 140-103) (the "Forbearance Agreement"), which requires Defendants to deposit such amounts with Plaintiff to bring the amount of "Forbearance Reserve Funds" on deposit to $1,700,000.00 should the amount of Forbearance Reserve Funds on deposit with Plaintiff fall below $1,000,000.00.

5. As of the date of this Judgment, the balance of the Forbearance Reserve Funds is $0.00. Therefore, Defendants are ordered to deliver to Plaintiff $1,700,000.00 to replenish the Forbearance Reserve Funds as required by the Forbearance Agreement within 14 days of the date of the Judgment.

6. It is specifically ORDERED and ADJUDGED that the Defendant's obligation to replenish the Forbearance Reserve Funds is an ongoing obligation which existed from the execution date of the Forbearance Agreement, and which requires Defendants to periodically replenish the Forbearance Reserve Funds as such funds are drawn to pay operating shortfalls (or reimburse advances for the payment of operating shortfalls) or any for any other permissible use of reserve funds under the Loan Documents (the "Permitted Uses"). As the Forbearance Reserve Funds are drawn to fund Permitted Uses from the date hereof, if the amount of Forbearance Reserve Funds on deposit with Lender falls below $1,000,000.00, Defendants shall deliver within 10 calendar days of receipt of written demand from Plaintiff such amount so that the amount of Forbearance Reserve Funds equals $1,700,000.00.

**THIRD CAUSE OF ACTION**
**SPECIFIC PERFORMANCE REGARDING**
**CONTRACTUAL ACCOUNTING**

7. As set forth in the Opinion and Order dated September 30, 2025 (ECF Doc. No. 162), judgment is hereby entered in favor of Plaintiff on its claim seeking specific performance of

Defendants' agreement to provide Plaintiff with an accounting as required by Section 5.1.11 of the June 19, 2019 Loan Agreement (the "Loan Agreement") attached as Exhibit 1 to the Complaint in this Lawsuit.

~~8. In accordance with Section 5.1.11 of the Loan Agreement, Defendants are hereby ordered to provide within 60 days of the date of this Judgment annual financial statements audited by an independent certified public accountant for each of the Defendants and covering the following years in accordance with the formats required in Section 5.1.11 of the Loan Agreement:~~

~~a. 2019;~~
~~b. 2020;~~
~~c. 2021;~~
~~d. 2022;~~
~~e. 2023; and~~
~~f. 2024.~~

~~9. If Defendants fail to provide the required accounting within 60 days from the entry of this Judgment, Plaintiff may engage an independent certified public accountant to complete such an audit. Plaintiff shall notify the Court within 145 days of this Judgment whether Plaintiff intends to engage an accountant to conduct such an audit. If so, Plaintiff shall direct its accountant to complete the audit within 270 days of this Judgment. Thereafter, Plaintiff shall have 30 days to submit evidence to this Court showing the expense incurred in connection with such accounting. Defendants shall have 15 days to object to such expenses. The Court shall review the motion and enter a supplemental judgment for the expenses of the accounting.~~

Dated: New York, New York

July 7, 2026

*SO ORDERED,*

UNITED STATES DISTRICT JUDGE